**E-Filed 09/29/2010**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUIFU LI, MENG WANG, FANG DAI, LIN CUI, and ZHONG YU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>A PERFECT DAY FRANCHISE, INC., a California Corporation, et al.,<br><br>Defendants. | Case No.: 10-CV-01189-LHK<br><br>ORDER GRANTING REQUESTS FOR CURATIVE NOTICE AND INVALIDATION OF OPT-OUT FORMS, DENYING REQUEST FOR ANONYMITY, AND ORDERING DEFENDANTS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED |

**I.     BACKGROUND**

Named Plaintiffs in this putative class action are former workers for A Perfect Day Franchise, Inc. ("Perfect Day"). Perfect Day owns and operates spas in Fremont, Santa Clara, and Millbrae, California. Named Plaintiffs describe themselves and the majority of the putative class as being native Chinese speakers, with limited English proficiency and little or no formal education. Plaintiffs claim that they paid for a massage training course offered by an entity related to Perfect Day, the Minjian Hand Healing Institute (together with Perfect Day and individuals, collectively "Defendants"). Dkt. No. 6 (FAC) at 5. Plaintiffs claim they paid for the course based on promises, contained in advertisements for the training program, that they would be employed by

Perfect Day and would earn a minimum income once it was completed. *Id*. at 8. Plaintiffs claim that these promises were not honored by Perfect Day, and further that Perfect Day has mis-categorized them as independent contractors rather than employees. According to Plaintiffs, Perfect Day failed to pay them and other putative class members minimum wages and overtime, wrongly subtracted materials costs from Plaintiffs' wages, wrongly took Plaintiffs' tips, and committed other violations of California wage and hour laws. Based on these allegations, Plaintiffs claim violations of both the Fair Labor Standards Act (FLSA, 29 U.S.C. §§ 201-19) and California law. Defendants deny any unlawful conduct.

The parties dispute many of the facts relevant to the underlying motions; therefore, the Court will first recite the undisputed facts and then the relevant factual disputes.

### a. Undisputed Facts

Plaintiffs filed the first complaint in this action on March 22, 2010. After this, Plaintiffs contacted putative class members to communicate with them about the suit. In response to the suit and Plaintiffs' communications with the putative class, Perfect Day held individual meetings with each massage therapist "in May 2010" at each of the three Perfect Day locations, during business hours. *See* Dkt. No. 44 (Opp. to 23(d) mot.) at 3. At these meetings, Perfect Day admits that it presented "opt-out" forms to its workers, which "allowed putative class members to opt-out of participating in the lawsuit." *Id*. Perfect Day admitted at the hearing on these motions that it did not provide workers with copies of the form to take away from these meetings.

At the hearing, the Court ordered Defendants to submit all signed opt-out forms to the Court the following day (September 3, 2010). On that day, counsel for Defendants submitted a declaration stating that it would be "impossible to comply" with the Court's order because the only person with access to the forms, Jun Ma, was on family vacation until September 7, 2010. *See* Dkt. No. 74 (Wahng Decl.). On September 7, Defendants submitted 38 signed opt-out forms. Subsequently, Plaintiffs filed a statement that one of the named Plaintiffs had seen Mr. Ma working at a booth for Perfect Day on Saturday, September 4, 2010 in Millbrae, California. Plaintiffs stated that they would file photographs and videos showing Mr. Ma working at the fair by September 17,

2

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

2010, but failed to do so. In response, Defendants filed another declaration stating that, while Mr. Ma admits that he was at a fair in Millbrae on Saturday, September 4, he was there for leisure purposes only and not for work. *See* Dkt. No. 82. Defendants do not deny that Perfect Day operated a booth at this fair. *Id*.

At the hearing on the underlying motions, counsel for Defendants stated that he had "no idea" how many massage therapists are currently working for Perfect Day; counsel for Plaintiffs estimated that there are currently about 40 workers at all locations. Plaintiffs filed 38 signed forms; it therefore appears that through the workday meetings, Defendants obtained signed opt-out forms from a substantial majority of the current Perfect Day workers.

### b. Plaintiffs' Allegations

Plaintiffs claim that Perfect Day has held multiple, mandatory group meetings as well as one-on-one meetings during the workday at Perfect Day's three locations. Plaintiffs claim that at these meetings, Perfect Day managers threatened workers with retaliation if they participate in the class action. Plaintiffs claim the following threats were made. First, workers were told not to participate in the lawsuit, and that Perfect Day would find out immediately if they disobeyed. Second, workers were threatened that even if Plaintiffs were successful in the suit, workers participating in the case would not receive any money, but instead would be fired and would owe attorney's fees to Perfect Day. Third, workers were threatened that participation in the case would result in a "permanent record" which would prevent the worker from being hired anywhere else. Fourth, manager Jun Ma promised to call any future employer to ensure that class participants could never get another job. Fifth and finally, workers were warned that if they participate in the case, Perfect Day would report them to the IRS for failure to report wages earned as tips, and that this could lead to problems with the workers' immigration status. The managers then offered to protect workers from any possible IRS inquiry if they agreed not to participate in the case. *See*

3
Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

First Anonymous Decl. ISO Mot. for 23(d) Order at 1; Second Anonymous Decl. ISO Mot. for 23(d) Order at 1.[1]

Plaintiffs submitted anonymous declarations from three individuals claiming to have worked for Perfect Day in May 2010.  *See* First Anonymous Decl. ISO Mot. for 23(d) Order at 2; Second Anonymous Decl. ISO Mot. for 23(d) Order at 2; Second Anonymous Decl. ISO 23(d) Reply at 1.  These declarants say that in addition to the group meetings, described above, they were called to individual meetings by Perfect Day managers where they were presented with an opt-out form.  *Id*.  According to these witnesses, the form was written in English, with a Chinese translation.  *Id*.  The form stated that they objected to the release of their name and address to counsel for Plaintiffs, that they did not consent to be represented by counsel for Plaintiffs, that they did not agree to participate in the class action, and that by signing the form they withdrew any consent to participate in the case.  *Id*.  Two of the anonymous declarants state that they signed the form even though they did not want to.  A third states that soon after refusing to sign the form, Perfect Day terminated that individual on a pretense.  *See* First and Second Anonymous Decl. ISO Mot. for 23(d) Order at 2; First, Second and Third Anonymous Decls. ISO 23(d) Reply at 2.

### c. Defendants' Allegations

As outlined above, the parties agree that meetings were held at Perfect Day and that opt-out forms were presented to workers at these meetings, that copies of the opt-out forms were not provided for workers to take with them, and that many workers signed the opt-out forms at these meetings.  Regarding almost every other detail about the opt-out meetings, however, Defendants deny the facts alleged by Plaintiffs, and argue that it is Plaintiffs rather than Defendants who have been intimidating Perfect Day workers in connection with this case.  Specifically, Defendants have

---

[1] Regarding Plaintiffs' requests for Rule 23(d) curative measures, the Court bases its findings and conclusions solely on undisputed facts and admissions made by Defendants, thus both parties' objections to evidence are moot.  Regarding Plaintiffs' request to proceed anonymously, Defendants' evidentiary objections to the redacted materials are moot as the Court denies Plaintiffs' request and requires that the Plaintiffs either file non-redacted documents, or withdraw the filings.  While the Court considered the evidence submitted by Defendants in connection with this determination, the Court did not rely on this evidence in determining this issue, so Plaintiffs' objections are moot as well.

4

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

submitted declarations from two workers stating that named Plaintiffs called them and threatened that if they did not join the suit, they would be out of work as the lawsuit will result in Perfect Day shutting down, or that the named Plaintiffs will report the workers for working without a permit. *See* Sun Decl. in Opp. to Mot. for 23(d) Order (Opp.) at 2; Li Decl. to Opp. at 2.  Defendants also submitted identical or nearly-identical declarations from eleven workers, stating that they signed the opt-out forms, but felt no pressure to do so, and were not threatened or intimidated at the opt-out meetings.  *See* Jing Wu, Xu, Zhou, Liu, Sun, Yang, Chen, Jinzhen Wu, Tao, Wang, and Niu Decl.s to Opp.  Perfect Day claims the forms they presented to workers were in English only (without a Chinese translation).  Perfect Day submitted declarations from spa managers saying that the opt-out forms were "read verbatim" to workers, and that workers were told they "could, but need not" sign the document.  *See*, *e.g*., Dkt. No. 44, Ex. 9 (Jun Ma Decl. ISO Opp. To R. 23(d) Mot., "Ma Decl.") at 2.  At the hearing, counsel for Defendants argued that, contrary to its plain meaning, "read verbatim" meant "translated to Chinese."   A subsequent declaration submitted by Mr. Ma states that he "translated [the opt-out forms] verbatim" to workers.  *See* Dkt. No. 77 at 1.

Defendants submitted declarations by Mr. Ma and another manager, Jade Li, in which both declared an attached opt-out form to be "Defendant's opt out notice."   *See* Dkt. Nos. 44-9 and 44-12 (Ma and Li Decls. ISO Opp. to 23(d) Mot., Exs. A.)  Notably, the exemplar forms attached to the Li and Ma declarations differ in several respects from the signed opt-out notices Defendants filed with the Court on September 7, 2010.  First, the forms are formatted differently.  Second, the signed forms contain Chinese translations of the English instructions to "print your name here" and "sign here," as opposed to the unsigned forms that contain no Chinese.  Third, the signed forms are undated and contain no date field, while the unsigned exemplar forms specifically state "I signed this Request on: _____ (*date*)."  *See* Ma Decl. ISO Opp. to 23(d) Mot., Ex. A at 2.  It appears that no signed forms were submitted to the Court for three of the eleven Perfect Day workers who provided declarations stating that they had signed the opt-out forms, though the lack of clearly-typed names on the signed forms makes this difficult to determine.

5

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

## II.   LEGAL STANDARDS AND APPLICATION

Plaintiffs have submitted two motions for relief relating to the admitted and disputed activities of Defendants, as outlined above. First, Plaintiffs seek anonymity for declarants who are current or former workers and who fear retaliation by Perfect Day if their participation in the case becomes known. There is a "general presumption that parties' identities are public information." This presumption can be overcome under special circumstances. In *Doe v. Advanced Textile*, the Ninth Circuit found that workers fearing retaliation for participating in a class action against their employer may be entitled to anonymity, if they fear extraordinarily severe harm such as deportation and possible imprisonment. *Doe v. Advanced Textile*, 214 F.3d 1058, 1070-71 (9th Cir. 2000). Under *Advanced Textile*, in weighing the need for anonymity against the interests of the opposing party and the public, the Court must consider (1) the severity of the threatened harm (2) the reasonableness of the anonymous party's fears and (3) the anonymous party's vulnerability to such retaliation. *Id.*

Second, Plaintiffs move for a number of curative measures pursuant to Fed. R. Civ. P. 23(d), to remedy alleged harm caused by Perfect Day's communications with its workers and its success in obtaining signed opt-out forms from substantially all of its current massage therapists. Courts have issued orders restricting parties' communications with a putative or certified class when there is "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Any order restricting the parties' speech must be "carefully drawn" and limit speech "as little as possible." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-102 (1981).

Plaintiffs' claims contemplate two classes, one under Fed. R. Civ. Proc. 23(b)(3), and another class under the FLSA. The rules governing these two types of classes impose different methods for noticing the class about the action. Fed. R. Civ. Proc. 23 assumes that all class members will remain in the class unless they affirmatively opt out. Once a Rule 23(b)(3) class is certified, Rule 23 requires the Court to direct notice of the case to the class. The notice must inform class members of their right to opt out of the class, and the method for doing so. Fed. R.

6

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

Civ. Proc. 23(c)(2). In contrast, the FLSA provides that individual class members must affirmatively opt into the class to become members. "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b).

### a. Plaintiffs' Request for Anonymity

#### i. Severity of the Threatened Harm

The first *Advanced Textile* factors evaluate the "severity of the threatened harm," the "reasonableness of the Plaintiffs' fears" and the "anonymous party's vulnerability to retaliation." These must be weighed against the prejudice to the defendant if anonymity is granted. *Advanced Textile*, 214 F.3d at 1068.

The Court first considers the severity of harm. The Ninth Circuit has held that that when a plaintiff faces economic rather than physical harm, the harm must be "extraordinary" to justify granting anonymity. *Id.*, 214 F.3d at 1070-71. The Ninth Circuit distinguished "perhaps typical" fears of termination and blacklisting, which many FLSA plaintiffs face, from the "extraordinary" harm required to justify granting anonymity. *Id.* In *Advanced Textile*, the Ninth Circuit overturned the lower court's refusal to grant plaintiffs' request to proceed anonymously. The plaintiffs, Chinese garment workers working on the island of Saipan, feared that if their employers discovered their participation in the suit, they would be terminated. *Id.* Once terminated, they were likely to be deported to China, where they or their family could be imprisoned for failure to pay punitive debts imposed by the employers. *Id.* The Ninth Circuit found that these workers' fears of potential deportation, arrest, and imprisonment constituted "extraordinary" retaliation, meriting an anonymity order. *Id.* The court distinguished a Fifth Circuit case holding that plaintiff attorneys in a Title VII action had no right to anonymity, because their fears of being fired or otherwise retaliated against by their employers for asserting their claims were "typical." *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). The Ninth Circuit noted that the Fifth Circuit had "simply held that it was not faced with a

7

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

case meriting anonymity because the threatened retaliation was not extraordinary." *Advanced Textile*, 214 F.3d at 1070.

Here, putative class members face much less severe harm than the *Advanced Textile* plaintiffs. Perfect Day workers state that if Defendants learn of their participation in the case, they fear their work assignments will be reduced or they will be terminated outright. *See* First and Second Anonymous Decls. ISO Rule 23(d) Mot. Plaintiffs' attorneys also argue that because workers report that they have been threatened with reporting to the IRS, potential resulting immigration status consequences, and blacklisting, these retaliations are feared as well. While none of the workers who submitted declarations state that they have fears beyond being fired or having work reduced, the Court recognizes that workers might be reluctant to submit declarations identifying themselves as having IRS reporting problems or immigration problems. Overall, the fears expressed by the putative plaintiffs in this case are the "typical" FLSA plaintiff fears described by the Ninth Circuit in *Advanced Textile*. There are no factors, such as a high risk of deportation or imprisonment, elevating these to the level of "extraordinary" fear.

### ii. Reasonableness of Fear and Vulnerability to Retaliation

Regarding the next two factors, reasonableness of fear and vulnerability to retaliation, the Ninth Circuit found that the *Advanced Textile* plaintiffs' fears were reasonable based on the workers' declarations repeating the threats of their employers, and based on the fact that they knew other people who had been imprisoned in China for failure to pay debts. The Ninth Circuit further found that the workers were very vulnerable to retaliation because their employment contracts prevented them from seeking any other work on Saipan. *Id*., 214 F.3d at 1065. The Court noted that the District Court could not rely on the anti-retaliation provisions of FLSA to protect the plaintiffs because, once they were deported to China, these provisions would be effectively impossible to enforce. *Id*., 214 F.3d at 1071.

The Court finds that Plaintiffs' fears are credible and reasonable, based on the declarations submitted by workers who attended the meetings at Perfect Day, recounting threats made by

8

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

Perfect Day managers.[2]  The Court finds that the Perfect Day workers are vulnerable to retaliation, given the assertion by Plaintiffs' counsel that most of them are not very highly-educated and possess limited English skills.  These facts severely limit the workers' ability to find other employment.  However, at the hearing on this motion, the Court admonished Defendants' counsel regarding the various anti-retaliation provisions protecting the putative class members in this case.  The Court ordered that Defendants comply with the law and advised that failure to do so would be sanctioned.  Unlike the defendants in *Advanced Textile*, Defendants here do not have the option to deport their workers and thus take the matter outside the Court's jurisdiction.  Thus, the Court has attempted to reduce the vulnerability of the putative class in this case.  The curative notice to be sent to the class, advising them of the anti-retaliation laws, should also advance this goal.  Therefore, the Court finds that Plaintiffs' fears are reasonable, but that Plaintiffs' vulnerability to retaliation has been substantially mitigated by the Court's admonitions to Defendants.

### iii. Prejudice to Defendants

The harm faced by Plaintiffs must be weighed against the prejudice claimed by Defendants, and the public interest.  Defendants' primary claim of prejudice is that Plaintiffs' redaction of declarants' names and other identifying information has hampered their ability to defend against Plaintiffs' Rule 23(d) Motion and the request for anonymity itself.  Defendants argue that permitting Plaintiffs to further proceed anonymously would violate Defendants' due process rights.  Although the Court finds that some of the material redacted from Plaintiffs' declarations was improperly submitted (for example, because it is hearsay), the Court does not rely on this evidence in ruling on this motion, and thus Defendants' objection is moot.  However, by having access to only a portion of Plaintiffs' declarations, Defendants are prohibited from seeing the full record of allegations and perhaps from making the most vigorous possible defense.  Defendants argued at the hearing that the redactions of manager's names from accounts of the meetings at Perfect Day prohibited them from fully investigating or defending against those allegations.  However, given

---

[2] The Court does not find Defendants' submission of nearly-identical declarations by current workers, stating that workers were not threatened, to be credible.

9

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

the small number of managers, the Court is not persuaded that Defendants' investigation was inhibited by these redactions. Overall, Defendants have not made a convincing showing of prejudice based on the requested anonymity to date. However, the Court has issued an Order to Show Cause herein, to which Defendants must respond or be sanctioned. Given this, and the outstanding Order that the Defendants not retaliate against workers for bringing protected claims, the Court finds that going forward, the Defendants will need to know the identity of persons making statements on Plaintiffs' behalf, and the content of those statements. Moreover, Defendants must have a full opportunity to defend themselves against potential sanctions. Therefore, the Court finds that Defendants face prejudice if the Plaintiffs were permitted to proceed anonymously beyond this point.

### iv. The Public Interest

Finally, regarding the public interest, the *Advanced Textile* decision lays out a number of reasons why the public interest is served when workers can safely bring FLSA claims and have them determined "on the merits." *Advanced Textile*, 214 F.3d at 1073. The Court believes this case can proceed on the merits without anonymity, and has admonished the Defendants regarding the illegality of retaliation. The Court finds that the overall public interest is in openness, and disclosure of the parties and claims in the case.

### v. Weighing and Conclusion

In weighing these factors, the Court concludes that the retaliation Plaintiffs fear is not sufficiently severe to justify anonymity. The Ninth Circuit distinguished the threats facing the workers in *Advanced Textile* from "threats of termination and blacklisting [that] are perhaps typical methods by which employers retaliate . . . ." *Id*. The Ninth Circuit also held that if plaintiffs cannot show a danger of physical injury, only a reasonable fear of "extraordinary retaliation, such as deportation, arrest, and imprisonment" can justify an order granting anonymity. *Id*. 214 F.3d at 1071. Therefore, the severity of harm factor is a gating issue under *Advanced Textile*; if the harm feared is economic, and less than "extraordinary," no anonymity order can issue.

10
Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

Cases applying *Advanced Textile* support this finding.  For example, plaintiff exotic dancers asserting FLSA claims expressed fears of termination if their identities became known to their employer; the court held that even though their fears were likely reasonable and the plaintiffs were likely vulnerable to the retaliation, a threat of termination did not rise to the level of "extraordinary" injury and therefore anonymity could not be granted.  *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08-4038 ABC (SSx), 2009 WL 250054 at *2 (C.D. Cal., Jan. 29, 2009). Likewise, a criminal sex offender was not granted the right to proceed anonymously despite his fear of physical retaliation in prison, because his fears would be "equally present for all similarly situated sex offenders who face prison sentences" and therefore not extraordinary.  *United States v. Stoterau*, 534 F.3d 988, 1012-13 (9th Cir. 2008).

Proceeding anonymously is the exception to the rule.  *Advanced Textile*, 214 F.3d at 1067. A finding that the "perhaps typical" retaliations of FLSA defendants, such as termination, blacklisting, or even threatened IRS reporting constitute "extraordinary" harm would permit plaintiffs in many FLSA actions the right to proceed anonymously.  Such a rule would be inconsistent with the *Advanced Textile* analysis, which held that anonymity may only be granted in the "unusual case."  *Id*.  As a result, the threatened reprisals do not meet the high standard of "extraordinary harm," and the Court must deny Plaintiffs' request to proceed anonymously.

### b. Plaintiffs' Request for 23(d) Order

Plaintiffs request a number of corrective measures to remedy alleged harm caused by Defendants' presentation of opt-out forms to current Perfect Day workers.  Before a class is certified in a class action, counsel for both plaintiffs and defendants may communicate with the putative class, *ex parte*, about the lawsuit.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). "Because of the potential for abuse [in the class action context], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Id*.  Rule 23 (d) of the Federal Rules of Civil Procedure provides: "d) ORDERS IN CONDUCT OF ACTIONS.  In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (3) imposing conditions on the

11
Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

representative parties or on intervenors . . . [and] (5) dealing with similar procedural matters." The Supreme Court has found that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*., 452 U.S. 102.

Courts applying the *Gulf Oil* standard have found that *ex parte* communications soliciting opt-outs, or even simply discouraging participation in a case, undermine the purposes of Rule 23 and require curative action by the court. For example, the Eleventh Circuit upheld the district court's invalidation of opt-out forms obtained through *ex parte* telephone calls to a defendant bank's customers. *Kleiner v*. *First Nat'l Bank*, 751 F.2d 1193, 1202-03 (11th Cir. 1985). The Eleventh Circuit noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." *Kleiner*, 751 F.2d at 1202-03. Likewise, in a case relied upon by both parties, the district court issued a total ban on defendant hardware supplier's communications with its member stores after the defendant sent letters stating that the class action against it was improper and that, by joining the suit, the members would be "suing themselves." *Hampton Hardware*, *Inc*. *v*. *Cotter & Co*., *Inc*., 156 F.R.D. 630, 634 (N.D. Tex. 1994).

Courts have also recognized that in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when the employer solicits opt-outs from its workers. "Unsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. [citation to *Kleiner*]. This is especially true when the parties are engaged in an ongoing employer-employee relationship." *Wang v*. *Chinese Daily News*, *Inc*., 236 F.R.D. 485, 490 (C.D. Cal. 2006). In *Wang*, the district court restricted communications between the defendants and the plaintiff class, and invalidated signed opt-out forms obtained by the defendant employer during workplace

12

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

meetings. *Id.* In finding the workplace meetings coercive, the district court relied, in part, on the "exceedingly high opt-out rate." *Wang*, 236 F.R.D. at 489.

Defendants admit that they presented opt-out forms to workers during required, one-on-one meetings with managers during work hours and at the workplace. Defendants further admit that they failed to provide copies of the opt-out forms to workers to take away with them, or to provide a written translation of the form in the workers' primary language. Finally, Defendants' filing of 38 signed opt-out forms indicates that these meetings secured signed forms from a substantial number of the current workers. Based on these undisputed facts, the Court concludes that these meetings were inherently coercive. *Wang*, 236 F.R.D. at 490. Obtaining opt-out forms *ex parte* at this stage of the litigation—before a class has been certified by the Court—unquestionably frustrates the purposes of Rule 23. When and if a class is certified, the Court will approve a class notice and means for members to opt out, per Rule 23.

Defendants attempt to distinguish the cases relied upon, above, because they involve communications between certified classes and defense counsel, while in this case no class has been certified. While it is true that *Kleiner*, *Hampton Hardware* and *Wang* involved certified classes, the underlying rationale of these cases does not depend on the certification of the class but instead on the inherent undermining of the class action process when opt-outs are solicited *ex parte*. *See*, *e.g.*, *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 U.S. Dist. LEXIS 78312 at *22-23 (N.D. Cal. July 8, 2010) (invalidating releases obtained through misleading *ex parte* communications with putative class members, before class certification). Defendants have cited no case, and the Court is aware of none, where a defendant employer's *ex parte* solicitation of opt outs from its workers was upheld as a proper communication, regardless of whether the class was certified or not.

Having determined that the opt-out forms were obtained through coercion, the Court finds they must be invalidated. Moreover, given that workers may now believe they are prohibited from participating in the case by having signed the opt-out forms, the Court finds that corrective notice is required. Therefore, the Court proposes notice to the putative class members as set forth below.

13

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

Counsel for either party may object to this language or propose additional language, stating the reason for their suggested edits and any relevant authority, within seven calendar days of the date of this order. The Court will issue a revised notice if necessary. Upon finalization of the notice (either by the Court or if no party objects or proposes edits by the stated deadline), Counsel for Plaintiffs shall prepare a Chinese translation of the attached notice, to be filed with the Court within five days of the finalization of the notice. Counsel for Defendants shall then mail the notice, in both English and Chinese, to the residences of all workers who have worked at any Perfect Day location since March, 2010. Notice must be mailed within five days of Plaintiffs' provision of the translated notice. Mailing of the notice may not be delegated to Defendants themselves, but shall be at Defendants' expense. Counsel for Defendants shall serve a copy of the final notice on Plaintiffs and file it with the Court, along with a certification that notice was mailed to all workers who have worked at any Perfect Day location since March, 2010.

> Notice
>
> As a worker for A Perfect Day Spa, you may be part of a class of workers asserting California and federal employment law rights against A Perfect Day in a class action filed in the Northern District of California District Court, case number 10-cv-01189 LHK PVT. If you signed an opt-out form regarding this class action, please be aware that the Court has invalidated all such opt-outs. If the Court certifies a class of plaintiffs for this lawsuit, you will have an opportunity to opt out of the litigation later, and the Court will notify you of this at the appropriate time.
>
> You are also notified that A Perfect Day Spa is prohibited by law from retaliating against you for participating in this class action. This means that A Perfect Day Spa may not reduce your work, fire you, report you to the IRS or immigration authorities, or otherwise threaten you in retaliation for participating in the case. If you believe you have been retaliated against in connection with this lawsuit, you should contact a lawyer. If you choose, you may contact attorneys for Plaintiffs in the class action.
>
> Plaintiffs' attorney contact information is:
>
> Adam Wang, 12 S. First St., Ste. 708, San Jose, CA  95113
>      telephone: 408-292-1040
>
> Monique Olivier, 235 Montgomery St., Ste. 1010, San Francisco, CA, 94104
>      telephone: 415-433-0333

In addition to invalidation of the opt-out forms and curative notice, Plaintiffs also request that the Court ban all communications between Defendants and the putative class regarding this

14
Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

case; compel disclosure of all communications between potential class members and Defendants or their counsel; compel an opportunity to meet with the class on paid time at A Perfect Day's three locations; and impose sanctions against Defendants. These requests are addressed in order.

Regarding the request for a communications ban, although the Court is troubled by Defendants' actions encouraging putative plaintiffs to opt out before the class has even been certified, the Court believes the remedial measures ordered herein should be sufficient to eliminate future coercive communications regarding this case. The Court reiterates the warning it gave to Defendants at the hearing that any retaliation against workers for participating in this case would constitute a violation of this Court's order and could lead to the imposition of sanctions. Perfect Day cannot force its workers to choose between continuing to work and participating in this case. Defendants are further advised that the Court will not recognize any additional opt-out forms obtained *ex parte* by Defendants. Pursuant to Rule 23, the Court will communicate with the class regarding opt-out procedures when and if a class is certified.

Regarding the request for disclosure of all communications between Defendants and putative class members, the Court finds that it is not necessary to order such disclosure at this time. The parties have presented their conflicting accounts of oral statements about the case made by Perfect Day at the worksite meetings, and Defendants maintain that there are no written communications beyond the opt-out form itself. Therefore, it appears there is nothing for Defendants to produce at this time.

Regarding Plaintiffs' request for an opportunity to meet with workers at A Perfect Day, on paid time, the Court finds that this is not necessary at this time, and that the relief granted herein is sufficient to remedy the harm caused by Defendants' *ex parte* solicitation of opt-outs from its workers.

Finally, regarding Plaintiffs' request for sanctions, such requests must be made by separate motion. L.R. 7-8. Plaintiffs did not separately move for sanctions. Therefore, the Court will not consider Plaintiffs' request.

15

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

### c. Defendants' Request to Invalidate Opt Ins

In their Opposition to Plaintiffs' 23(d) Motion, Defendants argue that it is Plaintiffs, not Defendants, who have abused the right to communicate with putative class members, and that any opt-in forms obtained by Plaintiffs must be invalidated. First, Defendants must make a motion if they wish to ask the Court to constrain Plaintiffs' counsel from communicating with the class or to invalidate any opt-in forms obtained by Plaintiffs. *See* Fed. R. Civ. P. 7(b). But, even if the Court were to consider Defendants' request on the basis of the arguments in their Opposition, Defendants have not sufficiently established that Plaintiffs or their attorneys have abused their right to communicate with the putative class. Defendants' only evidence of abuse is submitted in two declarations by current Perfect Day workers, who state that they received harassing phone calls from named plaintiffs. In light of the Court's concern over the apparent misrepresentations contained in the declarations submitted by both Perfect Day managers and its attorneys (discussed further below in the Order to Show Cause), the Court does not credit these accounts. If Defendants obtain credible evidence of abusive communications from Plaintiffs' counsel or named plaintiffs to putative class members, they may move for corrective action by the Court at that time.

### d. Plaintiffs' Motions to Seal

The Court has denied Plaintiffs' request to proceed anonymously. Therefore, the Court must also deny Plaintiffs' administrative motions to seal the unredacted versions of documents filed in connection with the motions discussed herein. Without an anonymity order, there is no basis to seal these documents. Accordingly, Plaintiffs may either resubmit these documents unredacted, or withdraw the unredacted versions.

### e. Order to Show Cause Why Sanctions Should Not Issue

Based on the record, it appears likely to the Court that the opt-out forms submitted by Defendants on September 7, 2010 were fraudulently created after the September 2, 2010 hearing on the underlying motions. Contrary to the declaration submitted by Defendants' attorney, it seems it was not "impossible" for Perfect Day to comply with the Court's order to submit the forms by September 3, 2010. *See* Dkt. No. 74 (Wahng Decl.) at 2. This declaration stated that because Mr.

16

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ma was on "a family vacation for the Labor Day Weekend" and "would not return to work until Tuesday, September 7, 2010," there was no way for Perfect Day to file the forms by September 3, 2010, as the Court ordered it to do. *Id*. However, Mr. Ma's later declaration reveals that he was in Millbrae, where one of the Perfect Day branches is located, on at least Saturday, September 3, 2010. *See* Dkt. No. 82 (Ma. Decl.) at 2. If Mr. Ma had the forms in his personal possession in the Bay Area, Defendants' attorneys could have sent a messenger to pick them up from him without disturbing his family vacation, or he could have dropped them off at the Perfect Day booth at the Millbrae fair. If the forms were at one of the Perfect Day locations, another manager could have provided them to attorney Wahng. Assuming that the forms originally signed by workers were not the exemplar forms submitted with the declarations of Mr. Ma and Ms. Li, evading the Court's Order on a pretense would have given Defendants four additional days to create new forms to match the exemplar forms submitted.

Moreover, the signed opt-out forms submitted do not exactly match the exemplar opt-out forms, further suggesting an after-the-fact falsification of the submitted forms. The exemplar contained a line for the signor to date, while the signed forms contain no date field and are undated. The exemplar was only in English, while the signed forms contain Chinese instructions. There also are a number of significant formatting changes between the two forms. Finally, several individuals who submitted declarations on Defendants' behalf, stating that they signed the forms, do not appear to have submitted signed forms (though, as previously noted, the lack of clearly-typed names on the signed forms makes it difficult to assess this). Overall, the Court has serious doubts about the veracity of the submitted forms.

The Court's decision to invalidate the submitted forms does not depend on whether the forms submitted were those originally signed or not. However, Defendants will not be permitted to defraud this Court by submitting false testimony. Counsel for Defendants are hereby ordered to show cause why they should not be sanctioned for violating Rule 11 by:

a) Submitting declarations by Jade Li and Jun Ma falsely declaring that the attached Exhibit A was the form provided to workers

17
Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS

    b) Submitting a declaration by attorney Wahng falsely stating that it would be impossible to comply with the Court's order to submit forms by September 3, 2010

    c) Submitting falsified opt-out forms on September 7, 2010 that were signed by workers only after the September 2, 2010 Order to submit signed forms, with a declaration by Jun Ma falsely stating that these forms were read to workers in "May 2010"

The Court hereby sets a special evidentiary hearing to decide whether sanctions should be imposed for October 22, 2010 at 2 p.m. in Courtroom 4, 5th Floor of the San Jose District Court. Defendants may file a brief regarding whether sanctions should be imposed, not to exceed fifteen pages, on or before October 8, 2010.  Plaintiffs may file an opposition of no more than ten pages by October 13, 2010, submitting costs incurred by Plaintiffs in bringing their Motion for 23(d) Order as a possible sanction.  Defendants may file a reply of no more than five pages by October 18, 2010.  Defendants are ordered to bring Mr. Ma and Ms. Li to the hearing for questioning.

### III.    CONCLUSION

Plaintiffs' request to proceed anonymously is DENIED.  Plaintiffs' request for curative measures under Rule 23(d) is GRANTED as to invalidation of signed opt-out forms and notice to the putative class; otherwise, it is DENIED.  Plaintiffs' request to file redacted documents under seal is DENIED.  Defendants are ORDERED TO SHOW CAUSE why sanctions should not be imposed.

**IT IS SO ORDERED.**

Dated: September 29, 2010

                                                                _____
LUCY H. KOH
United States District Judge