1
2
3
4
5
6
7

8       UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11  GUIFU LI, MENG WANG, FANG DAI, LIN     )   Case No.: 10-CV-01189-LHK
    CUI, and ZHONG YU, on behalf of themselves  )
12  and all others similarly situated,          )   ORDER DENYING DEFENDANTS'
                                            )   REQUEST TO DISMISS CASE AND
13              Plaintiffs,                 )   COMPEL ARBITRATION; DENYING
            v.                              )   PLAINTIFFS' REQUEST FOR
14                                          )   DISCOVERY SANCTIONS
    A PERFECT DAY FRANCHISE, INC., a        )
15  California Corporation, et al.,          )
                                            )
16              Defendants.                 )
                                            )
17  _____ )

18          Defendants A Perfect Day Franchise, Inc., A Perfect Day, Inc., Minjian Hand Healing

19  Institute, Inc., Tom Shriner, Tailiang Li, Jin Qui, and Jesse Doe ("Perfect Day") move the Court to

20  dismiss this case and compel arbitration.  *See* Arbitration Mot., Dkt. No. 35.  Perfect Day claims

21  arbitration is required by an arbitration clause in an "Independent Contractor Agreement," which

22  Perfect Day asserts was signed by all putative class members who were hired during the last three

23  years.  *Id.* at 4.  Separately, Plaintiffs have moved for discovery sanctions against Perfect Day for

24  alleged destruction of evidence.  *See* Sanctions Mot., Dkt. No. 129.  The Court finds that these

25  matters are appropriate for decision without oral argument per Civil Local Rule 7-1(b).

26  Accordingly, the hearing on these Motions, set for January 27, 2011, is hereby VACATED.  For

27  the reasons set forth below, both Motions are DENIED.

28

United States District Court
For the Northern District of California

1

I.       BACKGROUND

Plaintiffs in this putative class action are current and former workers for A Perfect Day Franchise, Inc. ("Perfect Day").  Perfect Day owns and operates spas in Fremont, Santa Clara, and Millbrae, California.  Among other things, Plaintiffs claim that Perfect Day has mis-categorized them as independent contractors rather than employees.  According to Plaintiffs, Perfect Day failed to pay them and other putative class members minimum wages and overtime, wrongly subtracted materials costs from Plaintiffs' wages, wrongly took Plaintiffs' tips, and committed other violations of California wage and hour laws.  Based on these allegations, Plaintiffs claim violations of both the Fair Labor Standards Act (FLSA, 29 U.S.C. §§ 201-19) and California law.  Perfect Day denies any unlawful conduct.

Plaintiffs filed their first complaint on March 22, 2010.  On March 27, 2010, named Plaintiff Guifu Li attempted to serve Perfect Day with a copy of the Complaint.  *See* Sanctions Mot. at 1; Dkt. No. 7.  Because Mr. Li is a party to this case, this attempted service was not effective.  Plaintiffs filed a First Amended Complaint (FAC) on May 12, 2010, and Perfect Day was properly served with the First Amended Complaint on June 3, 2010.  *See* Dkt. No. 21.  As outlined in detail in this Court's previous Orders (see docket numbers 85 and 122), during the month of May, 2010, Perfect Day held mandatory meetings during working hours at the different Perfect Day locations.  During these meetings, workers were presented with "Opt-Out Forms," stating that they would not participate in this case.  Perfect Day obtained many signed Opt-Out Forms through these mandatory meetings.  Pursuant to a motion brought by Plaintiffs, the Court found that these meetings were inherently coercive and invalidated the signed Opt-Out Forms.  Dkt. No. 85.  Further, the Court required that Perfect Day distribute a curative notice to current workers, explaining that the forms had been invalidated.  *Id*.

In addition, the Court ordered counsel for Perfect Day to show cause why they should not be sanctioned for submitting false testimony in declarations and affidavits relating to the Opt-Out Forms.  *Id*.  At the hearing on the Order to Show Cause, counsel for Perfect Day claimed that they were retained in a limited scope regarding this case in May, 2010, and later retained as litigation

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  counsel in this case after service of the FAC, in June, 2010.[1]  *See* October 22, 2010 Tr. at 13:16-21.

2  Until service of the FAC, counsel did not advise Perfect Day that it should institute a litigation

3  hold.  However, it appears that counsel was aware of the litigation before this time, because Jade

4  Li, a Perfect Day manager, testified that she provided counsel with a copy of the original

5  Complaint after the attempted service in March, 2010.  *See* Olivier Decl. ISO Opp'n. to Arbitration

6  Mot., Ex. 4 ("Li Dep.") at 191:18-22.  In any case, Perfect Day admits that it did not institute a

7  litigation hold until after service of the FAC.  Prior to this, and pursuant to what it describes as a

8  "paperless policy," Perfect Day destroyed all original copies of the Opt-Out Forms and retained

9  only electronic scans of these forms in JPEG format.  *See* October 22, 2010 Tr. at 44:20-45:18.

10  Perfect Day represents that since the institution of the litigation hold, it has stopped following its

11  "paperless policy" and now retains newly-generated, original documents relevant to this matter.

12  *See generally*, Opp'n. to Sanctions Mot. at 3-4.

13          In addition to destroying original Opt-Out Forms prior to the institution of its litigation

14  hold, Perfect Day destroyed original copies of all forms signed by new hires, including original,

15  signed copies of the Independent Contractor Agreement Perfect Day relies upon in its Motion to

16  Compel Arbitration ("Defendants' ICA").  *See* Opp'n. to Sanctions Mot. at 4.  When Perfect Day

17  hires a new worker, it requires that the worker sign or initial a series of forms (the "new hire"

18  marterials), including the ICA, an "Independent Contractor's Affidavit," a sexual harassment

19  policy, a Proprietary Information Agreement, and other documents written in Chinese.  *See* Olivier

20  Decl. ISO Opp'n. to Arbitration Mot., Ex. 18; Ex. 5 ("Ma Dep.") at 181:14-21.  A Perfect Day

21  manager, Mr. Jun Ma, testified that once these documents are signed, he scans them into an

22  _____

23  [1] At the hearing on the Order to Show Cause, Counsel for Perfect Day asserted that the scope of
    their engagement was privileged information.  The Court finds that given Perfect Day's disclosures

24  about and reliance on the scope of representation at the hearing, it has waived any privilege over
    the scope of representation (assuming such a privilege existed in the first place, which is very

25  doubtful).  *See Luna Gaming - San Diego LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM
    (WMc), 2010 U.S. Dist. LEXIS 2459 at *10-*11 (S.D. Cal. Jan. 11, 2010) (finding reliance on

26  evidence about the scope of representation waives any privilege that might attach to this
    information); *see also In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975) ("In the absence of

27  unusual circumstances, the fact of a retainer, the identity of the client, the conditions of
    employment and the amount of the fee and who paid it do not come within the privilege of
    attorney-client relationship.") (internal citations omitted).  In any event, Perfect Day's obligations

28  to preserve evidence existed regardless of whether Perfect Day had retained counsel.

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

electronic format and then destroys the original, paper copies of the signed documents.  Ma Dep. at

40:23-41:14.  Plaintiffs have submitted several declarations from Perfect Day workers stating that

they were never provided with a copy of the new hire paperwork, even if they requested one.  *See*

*generally* Sanctions Mot. at 6.  Although Mr. Ma disputed this in deposition, Perfect Day's

Opposition to the Sanction Motion does not dispute that it did not provide its workers with copies

of the signed documents.

Plaintiffs allege that the Defendants' ICA is not the ICA actually signed by Perfect Day

workers.  Plaintiffs raise a number of inconsistencies and irregularities regarding Defendants' ICA.

In addition to the facts that all original documents were shredded prior to June, 2010, and that no

copies were provided to Perfect Day workers, Plaintiffs point out that Defendants' ICAs contain a

long, redaction-style box in the footer of the document.  This box blacks out the lower lines of the

document.  Mr. Ma testified that he added this box to the ICA.  Ma Dep. 95:7-15.  According to

Mr. Ma, he originally obtained the ICA as a Microsoft Word document from an attorney "four or

five years" before 2010, meaning in 2005 or 2006.  Ma Dep. 103:7-18.  Mr. Ma testified that in

2005 or 2006 he added the black box as an "ID mark" on the Microsoft Word version of the ICA to

"differentiate the document from others, because this is a contract document . . . ."  Ma Dep. 95:7-

15.  Mr. Ma testified repeatedly that he added the black box in order to identify the ICA as a

contract document, and to differentiate it from other documents maintained by Perfect Day such as

customer paperwork.  However, as Plaintiffs point out, none of the other contracts in the new hire

materials bear a similar black box.

After adding the "ID mark" to the ICA, Mr. Ma stated that he printed it out, scanned the

print-out to JPEG format, saved the JPEG scan, and then destroyed or otherwise lost the Word

document.  Ma Dep. 104:14-24.  Ma also testified that after adding the "ID mark" to the ICA in

2005 or 2006, he made no further changes to the document.  Ma Dep. 107:13-109:16.  Plaintiffs

note that Perfect Day has produced ICAs containing the business address of the Santa Clara and

Millbrae and locations of Perfect Day, but that these locations did not open until 2007 and 2008,

respectively.  When Mr. Ma was asked how the "Millbrae version" of the ICA was created if he

made no changes after 2005 or 2006, he changed his testimony to state that at the time the Millbrae

**United States District Court**
For the Northern District of California

1   store opened, he still had the Microsoft Word version of the ICA and that he edited it at that time to

2   add in the Millbrae address.  Ma Dep. at 197:19-199:17.

3   Plaintiffs have cited testimony from the depositions of five former Perfect Day workers

4   stating that they did not sign any documents containing the black box "ID mark" when they

5   completed their initial hire paperwork.  *See* Opp'n. to Arbitration Mot. at 10.  When confronted

6   with Defendant's ICA during deposition, most of the former workers volunteered (without being

7   asked) that they did not recognize the black box on the document and that this made them believe

8   that the document they were shown in deposition was not the same document they signed.  *Id*.  All

9   of them testified that they did not sign any document containing a black box.  *Id*.  In addition,

10   several of the Plaintiffs testified that they were asked to initial each page of an ICA agreement, but

11   the black box covers the space where their initials would have otherwise appeared.  *Id*. at 11.

12   Defendants' ICA contains a section titled "Arbitration," which states that "[a]ll claims,

13   disputes, controversies or disagreements . . . including any claim arising out of or in connection

14   with Independent Contractor's employment or the termination of Independent Contractor's

15   employment . . . shall be submitted to final and binding arbitration."  The agreement also states that

16   "[e]mployer will pay for all types of costs that are unique to arbitration."

17   The Plaintiffs have introduced a different Independent Contractor Agreement ("Plaintiffs'

18   ICA"), which they claim is the one that was actually signed by Perfect Day workers.  Plaintiffs'

19   ICA contains a one-paragraph arbitration clause which states that "[a]ny dispute between Employer

20   and Independent Contractor arising under this Agreement will be submitted to binding arbitration

21   in accordance with the rules of the American Arbitration Association in the jurisdiction in which

22   this Agreement is executed.  Each party will be responsible for any fees or costs, including, but not

23   limited to, attorney fees resulting from the arbitration."  Mr. Ma testified that he did not recognize

24   Plaintiffs' ICA, and that he had never used it during his time at Perfect Day.  Ma Dep. 117:19-

25   118:11.  Ms. Li testified that she believed Plaintiffs' ICA had been drafted by an attorney for

26   Perfect Day at her request, but was never used.  Li Dep. 194:3-16.

27   Plaintiffs' ICA is three pages long, while Defendants' ICA is four pages long.  The two

28   ICAs are substantially similar, and include verbatim language in some subsections.  The most

5

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

United States District Court
For the Northern District of California

1    significant difference between the two documents is the replacement of the one-paragraph

2    "Dispute" section in Plaintiffs' ICA with the seven-paragraph "Arbitration" section in Defendants'

3    ICA.  Plaintiffs' ICA contains a line in the lower left-hand section of the footer on each page

4    marked "Initial," presumably for a worker to place his or her initials, and page numbering

5    indicating "Page 1 of 3, Page 2 of 3" and so forth.  The signature page of Plaintiffs' ICA is

6    identical to that of Defendants' ICA except that where the "Initial" line and page numbering appear

7    on Plaintiffs' ICA, the black box "ID Mark" appear on Defendants' ICA.

8    **II.        LEGAL STANDARD AND APPLICATION**

9             **a.  Motion to Compel Arbitration**

10            The Federal Arbitration Act (FAA) "placed arbitration agreements on equal footing with

11   other contracts" and "established a federal policy in favor of arbitration."  *Circuit City Stores v.*

12   *Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  Under the FAA, arbitration agreements "shall be valid,

13   irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

14   revocation of any contract."  9 U.S.C. § 2.  Accordingly, the Court looks to California law to

15   determine whether Defendants' ICA is a valid agreement to arbitrate.

16            When deciding whether a claim is subject to an arbitration clause, the Court must first

17   determine if there is a valid arbitration agreement.  It is the burden of the party moving to compel

18   arbitration to prove, by a preponderance of the evidence, that such an agreement exists.  *Bruni v.*

19   *Didion*, 160 Cal. App. 4th 1272, 1282 (Cal. App. 2008).  If the moving party carries this burden,

20   the opposing party must prove any contrary facts by the same burden.  *Bruni* 160 Cal. App. 4th at

21   1282 ("[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by

22   the preponderance of the evidence, and a party opposing the petition bears the burden of proving

23   by a preponderance of the evidence any fact necessary to its defense.").  "In these summary

24   proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other

25   documentary evidence, as well as oral testimony received at the court's discretion, to reach a final

26   determination."  *Id*.

27            Here, the analysis need not go past the initial step because the Court cannot find that there

28   is a valid agreement to arbitrate.  Given the significant uncertainty raised by Perfect Day's opaque

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

document retention practices, the inconsistent testimony Perfect Day's managers have provided

about the origins of Defendants' ICA, and the credible testimony by five Perfect Day workers

stating that they did not sign Defendants' ICA, the Court finds that Perfect Day has not carried its

burden to establish by a preponderance of the evidence that the arbitration clause it is attempting to

enforce was contained in the agreements signed by its workers.

   The Court bases this conclusion on the following findings of fact:

- Mr. Ma's testimony regarding the origins of Defendants' ICA is inconsistent and lacks credibility. Specifically, Mr. Ma's explanation that he added a black box to Defendants' ICA in order to distinguish it as a contract between workers and Perfect Day, when none of the other contracts in the new hire documents are similarly marked, is not credible.

- Mr. Ma's testimony that he modified Defendants' ICA by adding the black box in 2005 or 2006, made no further changes to the document after this time, and lost or destroyed the editable Microsoft Word ICA is contradicted by the fact that Perfect Day has produced signed versions of Defendants' ICA listing the Millbrae and Santa Clara addresses of Perfect Day Spa. The Santa Clara location did not open until 2007. The Millbrae location did not open until 2008. The Court does not find Mr. Ma's attempt to explain the Millbrae inconsistency in his testimony credible.

- The Court finds credible the consistent deposition testimony of five individual Plaintiffs stating that they do not believe they ever signed Defendants' ICA because they do not remember signing a document containing a black box.

- The Court finds credible Plaintiffs' testimony that they were asked to initial the individual pages of the ICA that they signed. This discredits Defendants' ICA which contains no initials, but contains a black, redaction-style box over the footer space where initials would otherwise appear.

   Perfect Day's practice of destroying original, signed agreements, and its failure to routinely provide workers with copies of signed employment paperwork, have made it more difficult for Perfect Day to carry its burden here. Without access to the original, signed agreements, the Court

7

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

United States District Court
For the Northern District of California

1    and the Plaintiffs are left to take Perfect Day's word about the origins and authenticity of

2    Defendants' ICA.  Because Perfect Day's testimony on this subject is inconsistent and lacks

3    credibility, the Court concludes that it has not met its burden to show that a valid agreement to

4    arbitrate exists between Perfect Day and Plaintiffs.  Contrary to Perfect Day's argument, *Condee v.*

5    *Longwood Management Corp.*, 88 Cal. App. 4th 215, 219 (Cal. App. 2001) does not hold

6    otherwise.  In *Condee*, the California Appellate Court found it was error to deny a motion to

7    compel arbitration based on a failure to authenticate the arbitration agreement *when the signature*

8    *on the alleged arbitration agreement was never challenged*.  Obviously, Plaintiffs in this case

9    vigorously dispute that they ever signed Defendants' ICA.

10          In its Reply in support of the Arbitration Motion, Perfect Day suggests that since Plaintiffs'

11   ICA contains an arbitration clause, and since Plaintiffs contend that they signed Plaintiffs' ICA, the

12   Plaintiffs have suffered no prejudice by Perfect Day's destruction of the original, signed ICAs, and

13   the Court should compel arbitration.  This argument fails for at least two reasons.  First, Perfect

14   Day cannot enforce the terms of a contract it denies ever signing or providing to workers to sign.

15   Indeed, no party has submitted signed versions of Plaintiffs' ICA for the Court's consideration on

16   this Arbitration Motion.  Second, the arbitration clause in Plaintiffs' ICA is likely unenforceable

17   due to unconscionability.  Although the Court does not decide this issue now, because Perfect Day

18   has offered no evidence to show that Plaintiffs' ICA was signed by any party in this case, the

19   arbitration provision in Plaintiffs' ICA appears to be both procedurally and substantively

20   unconscionable.  "A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a

21   standardized contract, drafted by the party of superior bargaining strength, that relegates to the

22   subscribing party only the opportunity to adhere to the contract or reject it."  *Ting v. AT&T*, 319

23   F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.,* 6 P.3d

24   669, 690, (Cal. 2000).  The parties appear to agree that Perfect Day workers must sign the

25   documents in the new hire paperwork if they wish to work at Perfect Day, and there is no

26

27

28

8

United States District Court
For the Northern District of California

meaningful opportunity to negotiate the terms of the agreements.[2]  Therefore, the ICA and the other new hire documents are very likely contracts of adhesion.

In addition, the "Dispute" provision in Plaintiffs' ICA bears several hallmarks of substantive unconscionability.  First, it subjects only disputes "arising under this Agreement" to binding arbitration; this excludes disputes arising under other agreements, such as the "Proprietary Information Agreement," from the arbitration provision.  One-sided arbitration clauses that single out matters primarily of interest to one party are often found to be unconscionable.  *See, e.g.*, *Ting*, 319 F.3d at 1151 (finding confidentiality provision, though facially neutral, unfairly favorable to defendant and therefore unconscionable).  Finally, the Plaintiffs' ICA arbitration clause states that "each party will be responsible for any fees and costs" of the arbitration.  Under California law, however, it is unconscionable to impose any fees on a plaintiff that she would not face if she filed her complaint in court.  *See Armendariz*, 6 P.3d at 687 ("[T]he arbitration process cannot generally require the employee to bear any type of expenses that the employee would not be required to bear if he or she were free to bring the action in court.").  Therefore, even if Perfect Day could rely on Plaintiffs' ICA to carry its burden, the arbitration clause would likely be unenforceable.[3]

### b.  Sanctions

A district court may impose sanctions for spoliation of evidence under its inherent powers, or pursuant to Federal Rule of Civil Procedure 37.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  A party can be sanctioned via an adverse inference for destroying evidence if it is on notice that the evidence is of "potential relevance" to litigation when it is destroyed.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).  The imposition of sanctions is within the court's discretion.  *Leon*, 464 F.3d at 958.

---

[2] In Perfect Day's Reply, it relies on statements by the Plaintiffs that nothing was told to workers about the legal impact of the ICA, that workers did not read the agreements when they were signed, and that workers were simply asked to sign the new hire paperwork.  *See* Reply ISO Arbitration Mot. at 7-8.

[3] The Court does not reach the issue of whether or not the arbitration provision in Defendants' ICA are enforceable, but notes that Defendants' ICA addresses some of the unenforceability issues raised by Plaintiffs' ICA.

9

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

1    The Court finds that Perfect Day was on notice that documents such as the Opt-Out Forms

2    (which were created specifically to limit Perfect Day's potential liability in this lawsuit) and new

3    hire paperwork were potentially relevant to litigation as of March 27, 2010, when Plaintiff Li

4    attempted to serve it with the first Complaint.  Therefore, regardless of whether or how it was

5    being represented, Perfect Day was obligated to retain documents relevant to litigation as of at least

6    March 27, 2010.  It is undisputed that after this date, Perfect Day destroyed new hire paperwork,

7    including ICAs, for two workers hired between March and June, 2010, and the original Opt-Out

8    forms for all workers.  Whether Perfect Day's destruction of these originals constitutes spoliation is

9    a closer question, however, because these documents were allegedly maintained in electronic form.

10   Perfect Day claims that its retention of copies of these documents renders the destruction of the

11   originals harmless.  Certainly, Perfect Day has disadvantaged itself in this litigation as a result of

12   its document retention policies.  In light of the Court's decisions to invalidate the Opt-Out forms

13   and to deny Perfect Day's request to compel arbitration, the Court concludes that the imposition of

14   adverse inference or other sanctions is not appropriate at this time.

15   **III.    CONCLUSION**

16   Defendants' Motion to Compel Arbitration is DENIED.  Plaintiffs' Motion for Sanctions is

17   also DENIED.

18   Dated: January 25, 2011

_____
LUCY H. KOH
United States District Judge

Case No.: 10-CV-01189-LHK
ORDER DENYING MOTIONS TO COMPEL ARBITRATION AND FOR SANCTIONS

*United States District Court*
*For the Northern District of California*