1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUIFU LI, MENG WANG, FANG DAI, LIN CUI, and ZHONG YU, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>A PERFECT DAY FRANCHISE, INC., a California Corporation; *et al.* )<br><br>Defendants. ) | Case No.: 11-CV-01189-LHK<br><br>ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISQUALIFY COUNSEL |

Defendants A Perfect Day Franchise, Inc., A Perfect Day, Inc., Minjian Hand Healing Institute, Inc., Tom Shriner, Tailiang Li, Jin Qui, and Jesse Doe ("Perfect Day") move the Court to disqualify Plaintiffs' Counsel in this case, Adam Wang.  *See* Defs.' Mot. to Disqualify, August 5, 2011, ECF No. 222.  Defendants claim that in June 2006, Jun Ma, Perfect Day's HR Manager, solicited and received legal advice from Attorney Adam Wang regarding the employment policies and procedures at Perfect Day, including its use of the Independent Contractor Agreement ("ICA").  Defendants claim that the subject of the June 2006 meeting was substantially related to Wang's current representation of Plaintiffs in this case and that therefore Wang should be disqualified.  Wang disputes the events of June 2006 and asserts that Ma and he never discussed the employment

United States District Court
For the Northern District of California

1  policies of Perfect Day.  Plaintiffs argue that it is unlikely that Wang obtained any confidential

2  information from Ma and that Wang should not be disqualified from this litigation.

3      Plaintiffs in this putative class action are current and former workers for Perfect Day, which

4  owns and operates or has owned and operated spas in Fremont, Santa Clara, and Millbrae,

5  California.  Among other things, Plaintiffs allege that Perfect Day has misclassified them as

6  independent contractors rather than employees.  As a result of this misclassification, Plaintiffs

7  allege that Perfect Day improperly failed to pay them and other putative class members minimum

8  wages and overtime, wrongly subtracted materials costs from Plaintiffs' wages, wrongly took

9  Plaintiffs' tips, and in so doing violated both the Fair Labor Standards Act (FLSA, 29 U.S.C. §§

10  201-19) and California wage and hour laws.  Perfect Day denies any unlawful conduct.

11      An evidentiary hearing on this motion[1] was held on August 19, 2011.  For the reasons set

12  forth below, Defendants' Motion to Disqualify is GRANTED, in part, and DENIED, in part.

13  **I.      FACTUAL FINDINGS**

14      Jun Ma, a manager with Perfect Day, became the Human Resources Director of the

15  Fremont branch in the beginning of 2006.  At that time he began consulting with an Oakland

16  attorney, regarding labor and employment issues that arose with Perfect Day.

17      Sometime in early 2006, the Oakland attorney drafted the independent contractor

18  agreements that are still used by Perfect Day.  After the Oakland attorney drafted the ICA, he

19  informed Ma that he intended to retire from the practice of law and that Perfect Day would need to

20  find a new attorney to replace him.  Around the same time, in May 2006, Perfect Day began

21  preparations for opening its Santa Clara branch.  Perfect Day had an attorney named Alex Myers,

22  specializing in general business law, and a broker named Tom Smith, assisting the company with

23  the lease for the new branch.

24      Given these developments, Ma began looking for a new attorney.  Ma specifically sought

25  an attorney that had an office near the Santa Clara branch of Perfect Day, spoke Chinese, and had

26  labor and employment experience.  The Oakland attorney referred Ma to Adam Wang, an attorney

27

28

---

[1] Also heard at that time was Plaintiffs' Motions to Compel and for Sanctions.  An Order regarding that motion was filed separately.

Case No.: 10-CV-01189-LHK
ORDER GRANTING, IN PART, MOTION TO DISQUALIFY

1    that met Ma's requirements.  Wang had an office in the area, he spoke Chinese, and he practiced

2    labor and employment law.  In June of 2006, Ma contacted Wang to set up a meeting to discuss

3    Perfect Day's legal issues.  During this conversation, Ma described the company and staff to Wang,

4    and asked questions regarding labor and employment law.

5            Ma and Wang met in person at Perfect Day's Santa Clara facility in June 2006.  Although

6    the facility was not yet open to the public, Ma had set up an office so that he could recruit potential

7    employees.  At the meeting, which lasted somewhere between a half an hour and an hour and a

8    half, Ma and Wang discussed labor and employment issues that arose in the course of Perfect

9    Day's business.  Specifically, Wang provided advice to Ma regarding an H-1B visa -- a visa for

10   temporary employees in specialty occupations -- for a Perfect Day worker.  Wang claims the H-1B

11   visa was for an IT worker; Ma disputes this.

12           Although the primary purpose of the meeting was to discuss the H-1B visa issue, Wang and

13   Ma also discussed other aspects of Perfect Day's business and the labor and employment issues

14   that arose as a result of its business model, including the classification and compensation of its

15   work force and the policies and procedures that it employed with respect to its work force.  As a

16   part of this meeting, Wang and Ma reviewed and discussed confidential company documents that

17   were pertinent to both the H-1B visa issue, and were related to other aspects of Perfect Day's

18   employment needs.

19           On June 13, 2006, Wang sent Ma an email with a proposed retainer agreement.  The

20   agreement was never signed, and after the June 13, 2006 e-mail, Ma and Wang had no further

21   contact until October 12, 2010 when Wang deposed Ma in this case.  During the deposition on

22   October 12, Wang, relying on information he obtained from Ma during their June 2006 meeting,

23   questioned Ma about Perfect Day employees with H-1B visas.  In addition to the October 12, 2010

24   deposition, Ma was deposed again by other Plaintiffs' attorneys, on November 19, 2010, before the

25   prior consultation was uncovered during Ma's July 12, 2011 deposition.

26           Unfortunately, there is evidence that both Wang and Ma were not entirely truthful regarding

27   what they discussed at the June 2006 meeting.  Wang filed a declaration in support of Plaintiffs'

28   Opposition to Defendant's Motion to Disqualify stating that the June 2006 meeting was solely

1    related to Perfect Day's general business law needs.  Wang stated that Perfect Day was not seeking

2    labor and employment advice and that he was not practicing labor and employment law at the time

3    of the June 2006 meeting.  Wang stated that he "did not give any legal advise [sic] to Mr. [sic]

4    about any issue including any employment or labor issues."  Wang Decl. ¶ 3, ECF No. 233.

5           The Court does not credit Wang's declaration regarding the June 2006 meeting.  Despite

6    the statements made in Wang's declaration, he admitted during the hearing that he was, in fact,

7    practicing labor and employment law at the time of the June 2006 meeting.  Moreover, Wang

8    admitted at the hearing that he was involved in at least 15 lawsuits alleging federal wage and hour

9    violations in 2005 and that he and Ma discussed an H-1B visa – an employment related visa –  in

10   the June 2006 meeting.  At the hearing Wang further admitted that he used the H-1B information

11   that he gained from Jun Ma at the June 2006 meeting during the deposition of Ma on October 12,

12   2010.  Based on these facts, and the fact that Perfect Day had both a broker and another general

13   business attorney assisting them with the opening of the Santa Clara facility, it is not credible that

14   the only topics discussed at the June 2006 meeting were the general business needs of Perfect Day.

15   Instead, based on Wang's admissions at the hearing, the Court finds that Ma and Wang necessarily

16   discussed Perfect Day's labor and employment issues at their preliminary consultation.

17          The Court is also dubious that Jun Ma was entirely truthful in his testimony regarding the

18   June 2006 meeting.  Aspects of Ma's testimony regarding the June 2006 meeting are not credible.

19   To the extent that Ma testified that he sought out Wang solely to obtain a second opinion about the

20   ICA after the Oakland attorney had already drafted the document and advised Ma about its

21   application to the massage therapists and after Ma had already started using the document, the

22   Court does not credit Ma's testimony.  It is not credible that a highly cost-sensitive client such as

23   Perfect Day would seek out a second opinion on issues that it had already resolved with the

24   Oakland attorney and acted upon with its workers.  Nor is it credible that Ma would seek additional

25   advice from Wang regarding an ICA that Ma admitted had not changed since Perfect Day began

26   using it in early 2006 – before the consultation between Ma and Wang occurred.  Although the

27   Court does not credit Ma's testimony regarding the *impetus* for consulting with Adam Wang, the

28   Court does credit Ma's testimony that he and Wang discussed Perfect Day's workers and their

4

1   employment status, and that he and Wang discussed documents and policies that applied to the

2   workers.  Although the impetus of the meeting was to discuss the visa issue, Ma and Wang also

3   likely discussed other issues relating to Perfect Day's hiring of workers as independent contractors;

4   reviewed company documents relating to these workers; and Wang likely offered opinions on the

5   status and benefits of these workers.

6   **II.      LEGAL STANDARD AND ANALYSIS**

7           "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

8   powers."  *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918

9   (N.D. Cal. 2003).  Under Civ. L.R. 11-4(a)(1), all attorneys who practice in this Court must comply

10  with the standards of professional conduct required of members of the State Bar of California.

11  This Court, therefore, applies state law in determining matters of disqualification.  *In re County of*

12  *Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

13          Rule 3-310 (E) of the Rules of Professional Conduct of the State Bar of California prohibits

14  the successive representation of clients in certain circumstances without the informed written

15  consent of the current client and former client. The rule provides: "A member shall not, without the

16  informed written consent of the client or former client, accept employment adverse to the client or

17  former client where, by reason of the representation of the client or former client, the member has

18  obtained confidential information material to the employment."

19          The California Supreme Court has held, in interpreting Rule 3-310(E), that, "[w]here an

20  attorney successively represents clients with adverse interests, and where the subjects of the two

21  representations are substantially related**,** the need to protect the first client's confidential

22  information requires that the attorney be disqualified from the second representation."  *People ex*

23  *rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999).  The burden

24  is on the party seeking the disqualification to establish by a preponderance of the evidence that a

25  substantial relationship exists.  *See H.F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d

26  1445, 1452 (1991).  When the attorney had a direct relationship with the client in the first

27  representation, whether the two representations are substantially related "centers precisely upon the

28

*(left margin, rotated)* **United States District Court**  For the Northern District of California

Case No.: 10-CV-01189-LHK
ORDER GRANTING, IN PART, MOTION TO DISQUALIFY

1    factual and legal similarities of the two representations." *Farris v. Fireman's Fund Ins. Co.,* 119

2    Cal. App. 4th 671, 679 (2004).

3            When the previous contact between the attorney and the party seeking disqualification is a

4    "preliminary conversation that did not result in professional employment or services," in addition

5    to establishing a substantial relationship between the representations, the party seeking

6    disqualification must show, "directly or by reasonable inference, that the attorney acquired

7    confidential information in the conversation." *Med-Trans Corp. v. City of California City*, 156

8    Cal. App. 4th 655, 668 (2008).  Because Perfect Day only consulted with, but never retained,

9    Adam Wang, the Court applies this additional requirement to the factual scenario.

10                      **A.      Adam Wang Is Disqualified**

11           Based on the findings of fact stated above, it is clear that the matters discussed in Adam

12   Wang's prior preliminary conversation with June Ma were substantially related to the current

13   litigation between Plaintiffs and Perfect Day.  Ma consulted with Wang regarding labor and

14   employment issues, including the classification and compensation of Perfect Day's workers.  Thus,

15   some of the topics discussed in the June 2006 meeting are also central legal issues that must be

16   resolved in this case.  In addition, Ma showed Wang several Perfect Day documents that are

17   pertinent to the present litigation.  It is clear, therefore, that the matter on which Wang was

18   consulted in June 2006, is substantially related to the issues raised in this case.

19           Defendant must also establish that the nature of the relationship between Perfect Day and

20   Wang was such that "confidential information material to the current dispute 'would normally have

21   been imparted to the attorney.'"  *Zimmerman v. Zimmerman*, 16 Cal. App. 4th 556, 564 (1993).

22   The Court should consider "the time spent by the attorney on the earlier cases, the type of work

23   performed, and the attorney's possible exposure to formulation of policy or strategy."  *Id.*

24           Although Wang's consultation with Perfect Day was brief, it consisted of several phone

25   calls and an in person consultation, this Court finds that confidential information would normally

26   have been imparted to Wang from these contacts.  The evidence shows that Wang was exposed to

27   Perfect Day's employment policies and strategies at issue in this litigation, including company

28   documents related to this litigation.  This presents an untenable position in which Wang is now

**United States District Court**
For the Northern District of California

6

1    required to challenge the documents and policies and procedures about which he obtained non-

2    public information from Perfect Day in June 2006.  Therefore, this Court finds that the consultation

3    between Wang and Perfect Day was such that confidential information normally would have been

4    imparted to the attorney.  *Id.*

5          Even more disturbing is the evidence on the record of Wang's willingness to use

6    confidential information he gained from the preliminary consultation with Perfect Day to Plaintiffs'

7    advantage in this litigation.  At the October 12, 2010 deposition, Wang questioned Ma about

8    Perfect Day's H-1B employee.  At the evidentiary hearing on the disqualification motion, Wang

9    admitted that he used information that he gathered from the June 2006 meeting with Ma when

10   taking Ma's deposition in October 2010.  Wang's attempt to use information he obtained in his

11   consultation with Perfect Day is further evidence supporting disqualification in this case.

12         Plaintiffs argue that *Zimmerman v. Zimmerman*, 16 Cal. App. 4th 556 (1993), provides

13   support for the conclusion that Attorney Wang should not be disqualified here.  In *Zimmerman*, the

14   wife sought to disqualify her husband's attorney based on a telephone call that she had with a

15   partner in her husband's attorney's firm.  16 Cal. App. 14th at 560.  The record before the trial

16   court showed "the most minimal involvement" by the law firm attorney with the wife's case.  The

17   attorney and wife had a twenty-minute phone conversation in which she "outlined" her case.  There

18   was no evidence that confidential information passed between the wife and the attorney.  *Id.* at 565.

19   The trial court found, and the appellate court affirmed, that the wife failed to establish a

20   relationship "from which it would be reasonable to infer disclosure of confidential information,"

21   and refused to disqualify the husband's attorney's firm.  *Id.* at 565.

22         The likelihood that confidential information was disclosed to Wang in the June 2006

23   meeting is significantly higher than the scenario presented in *Zimmerman*.  Here, Ma presented

24   Wang with details regarding Perfect Day's business, employees, and policies.  Ma showed Wang

25   documents that are directly related to the pending case.  In short, Ma did much more than merely

26   "outline" a case over the phone.  Additionally, *Zimmerman* is distinguishable on two grounds.

27   First, in *Zimmerman* the wife did not consult directly with her husband's attorney.  Instead, she

28   consulted with another attorney that happened to work at the same firm as her husband's attorney.

7

*See id.* at 565.  In comparison, the attorney here advised both sides of this litigation -- a scenario that more directly implicates concerns about misuse of confidential information that inform the conflicts rules.  Second, unlike here, there was no evidence in *Zimmerman* that the attorney used confidential information obtained from a previous consultation against the party with whom he had a prior relationship to the benefit of his current client.  For these reasons, *Zimmerman* does not persuade the Court that disqualification is improper here.

Plaintiffs also argue that Perfect Day knew about the potential conflict at least as far back as October 2010 when Jun Ma recognized Wang at the deposition.  Plaintiffs argue that Perfect Day's delay in bringing this motion is evidence that it is trying to use the motion to disqualify as a litigation tactic to impose delay.  Opp'n. to Def.'s Mot. to Disqualify at 5, August 11, 2011, ECF. No. 222.  Perfect Day, on the other hand, argues that the onus was on Wang, as an experienced attorney, to identify the potential conflict and seek to clarify or remedy it, at least at the point when Wang was sitting face-to-face with Ma at the October 2010 deposition.  Reply to Def.'s Mot. to Disqualify at 3, August 12, 2011, ECF No. 239.

There is a narrow exception to the disqualification doctrine when a former client inexcusably postpones a motion to disqualify.  *River West Inc. v. Nickel*, 188 Cal. App.3d 1297, 1309 (1987).  If the non-moving party can offer prima facie evidence of an unreasonable delay in bringing the motion and resulting prejudice, then the burden shifts back to the party seeking disqualification to justify the delay.  *Id.*  The unreasonable delay and resulting prejudice must be extreme.  *Western Continental Operating Co. v. Natural Gas Corp. of Cal.*, 212 Cal. App.3d 753, 763-64 (1989).

The Court finds that the delay in bringing the motion was not unreasonable given the circumstances.  As soon as the issue came to light in the July 2011 deposition, Perfect Day promptly raised the issue with opposing counsel and filed a motion to disqualify shortly thereafter. The delay between the filing of the complaint in March 2010 and the filing of the motion to disqualify on August 5, 2011 is sufficiently explained by Jun Ma's representation that as a layman without legal experience he did not know that there was a potential conflict, and so did not raise the issue sooner.  *See id.* at 764 (holding that one year delay between potential notice of conflict and

8

United States District Court
For the Northern District of California

filing of motion to disqualify was not extreme where the delay was adequately explained by the moving party).  Plaintiffs have also failed to explain how the delay would result in extreme prejudice.  Plaintiffs, as explained below, may continue to be represented by co-counsel for the remainder of this litigation, as they have done since August 5, 2011, pursuant to the Court's August 3, 2011 Court Order.  The Court declines to apply the narrow exception to the disqualification doctrine here.  For these reasons, therefore, Defendant's motion to disqualify attorney Adam Wang is GRANTED.[2]

## B.    Co-Counsel Is Not Disqualified

Defendant also argues that in addition to Adam Wang, **all** of Plaintiffs' counsel, including co-counsel, must be disqualified from this litigation.  Def.s' Mot. to Disqualify Counsel at 5, August 5, 2011, ECF No. 222.  Unlike the rules regarding automatic disqualification of lawyers within the same firm, "disqualification of one firm does not automatically compel disqualification of the firm's co-counsel.  Rather, the particular facts of each case must be considered in order to determine whether disqualification is warranted."  *In re Airport Car Rental Antitrust Litigation*, 470 F. Supp. 495, 502 (N.D. Cal. 1979).  For example, in *In re Airport Car Rental*, the court discussed several factors that weighed against disqualifying counsel, and refused to disqualify co-counsel because (1) the initial contact between counsel and client was very limited; (2) there was no evidence that the attorney shared any of the client's confidential information with co-counsel; and (3) there was no evidence that co-counsel associated with the disqualified counsel because of the disqualified counsel's prior relationship with the client.  *Id.* at 502.

Given the facts of this case, Adam Wang's co-counsel at the Sturdevant Law Firm and Duckworth Peters Lebowitz Olivier need not be disqualified.  First, as explained above, the initial contact between Wang and Perfect Day was limited to several phone calls, an initial consultation, and a follow-up e-mail.  Wang was never retained and Perfect Day concedes that no formal retainer agreement ever came of this consultation.  Second, Monique Olivier, Wang's co-counsel, has

---

[2] In light of the fact that Adam Wang is disqualified from this litigation, the Court need not reach Defendants' additional argument that Plaintiffs' violations of this Court's August 3, 2011 scheduling order is an independent reason for disqualification. Reply to Def.'s Mot. to Disqualify at 1, August 12, 2011, ECF No. 239.

Case No.: 10-CV-01189-LHK
ORDER GRANTING, IN PART, MOTION TO DISQUALIFY

United States District Court
For the Northern District of California

1   submitted a declaration stating that prior to the July 12 deposition of Ma, she had no knowledge of

2   Wang and Ma's prior contact, nor has she received any confidential information from Wang

3   regarding Perfect Day.  Olivier Decl. at ¶¶ 15 and 16, August 10, 2011, ECF No. 230; Wang Decl.

4   ¶ 7, August 11, 2011, ECF No. 233.  Finally, there is no evidence that co-counsel associated with

5   Wang because of his prior relationship with Perfect Day.  In short, there is no evidence that Wang

6   shared any confidential information with Ms. Olivier or any other co-counsel.  Defendants argue

7   that "[i]t is to be expected that all counsel have shared information regarding this case," but fail to

8   specify or offer evidence as to what particular confidential information may have been improperly

9   shared between co-counsel.  Def.s' Mot. to Disqualify at 6, August 5, 2011, ECF No. 222.  Mere

10  speculation and argument is insufficient to require that Wang's co-counsel also be disqualified

11  from this matter.

**III.       CONCLUSION**

13          Defendants' motion to disqualify Plaintiffs' attorney Adam Wang is GRANTED.

14  However, to the extent Defendants seek to disqualify Wang's co-counsel, including attorneys with

15  The Sturdevant Law Firm or the firm of Duckworth Peters Lebowitz Olivier, Defendants' motion

16  is DENIED.

17  Dated: October 4, 2011

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 10-CV-01189-LHK
ORDER GRANTING, IN PART, MOTION TO DISQUALIFY

United States District Court
For the Northern District of California