**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUIFU LI, MENG WANG, FANG DAI, LIN CUI, and ZHONG YU, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>A PERFECT FRANCHISE, INC, a California Corporation, et al.,<br><br>                    Defendants. | Case No.: 5:10-CV-01189-LHK<br><br><br>ORDER GRANTING IN PART DENYING IN PART MOTIONS FOR CLASS CERTIFICATION AND COLLECTIVE ACTION |

Plaintiffs Guifu Li, Meng Wang, Fang Dai, Lin Cui, and Zhong Yu, on behalf of themselves and others similarly situated ("Plaintiffs"), move the Court to facilitate a collective action pursuant to 29 U.S.C. § 216(b), for Plaintiffs' federal wage and hour claim, and to certify a class for Plaintiffs' state law wage and hour claims. *See* Mot. to Facilitate Collective Action, ECF No. 235; Mot. to Certify Class, ECF No. 238. A hearing on these motions was held on September 29, 2011. For the reasons set forth below, Plaintiffs' Motion to Facilitate A Collective Action is GRANTED; Plaintiffs' Motion to Certify A Class is GRANTED in part, and DENIED, in part.

## I.        BACKGROUND

Plaintiffs in this putative class action are current and former massage therapists working for A Perfect Day Franchise, Inc. and/or A Perfect Day, Inc. ("Perfect Day"). Perfect Day owns and operates or has owned and operated spas in Fremont, Santa Clara, and Millbrae, California.

1

Minjian Hand Healing Institute ("Minjian") is a California corporation which purports to be a massage therapy school.  Olivier Decl. Ex. E.  Minjian and Perfect Day are informally related entities: Minjian's director, officer, and corporate agent is Tailiang Li.  Tailing Li is also the father of Jade Li, one of the managers at Perfect Day.  Olivier Decl. Ex L at 28:13-18.  Plaintiffs allege that prospective massage therapists are required to pay approximately $3500-$4000 (with an initial down payment of approximately $950-$1300) to attend month long training with Minjian before they may begin working as massage therapists with Perfect Day.  FAC ¶ 11; Dai Decl. ¶¶ 4-5; Li Decl. ¶¶ 4-5; Cui Decl. ¶¶ 4-5; Yang Decl. ¶¶ 4-5; Yu Decl. ¶¶ 4-5.

Perfect Day employs two managers: Jade Li and Jun Ma.  Olivier Decl. Ex. J 90:1-7.  Ma is the branch manager for the Millbrae and Santa Clara branches.  Olivier Decl. Ex. K 237:8-11.  Jade Li is the branch manager for Perfect Day's Fremont branch.  Olivier Decl. Ex. K 237:15-19.   Since 2006, Ma has been the human resources director with Perfect Day.  Olivier Decl. Ex. K 60:16-17; Olivier Decl. Ex. K 60:2-8.  Ma is the only human resources director for all three of Perfect Day's branches.  Olivier Decl. Ex. K 237:8-19.  Moreover, Ma is the only individual in Perfect Day with supervisory authority over the massage therapists.  Olivier Decl. Ex. J 83:10-20.  Ma was also responsible for working with and setting the schedules of the massage therapists at all three branches.  Olivier Decl. Ex. K 262:10-25.  Ma testified that all massage therapists are required to sign in on company computers when they arrive at the spa; and they are required to sign out from company computers when they leave. Olivier Decl. Ex. K 264-269; Li Decl. ¶ 9; Dai Decl. ¶ 9; Cui Decl. ¶ 9; Yang Decl. ¶ 9; Yu Decl. ¶ 9.

Perfect Day has classified its massage therapists as independent contractors at all times relevant to this case.  Perfect Day has largely used the same independent contractor agreements ("ICA") since 2006.  Olivier Decl. Ex. K 27:13-24.  Perfect Day requires that every massage therapist sign the ICA prior to working at one of the Perfect Day spas.  Olivier Decl. Ex. K 61:14-25.  In addition to the ICA, Perfect Day has also promulgated a set of standardized policies and procedures that apply to massage therapists.  Olivier Decl. Ex. K 261:10-14.

The Named Plaintiffs are all individuals who have worked as massage therapists in one of Perfect Day's three locations and have been classified as independent contractors.  Li Decl. ¶ 3 (Fremont location); Dai Decl. ¶ 3 (Millbrae location); Cui Decl. ¶ 3 (Fremont location); Yang Decl.

2

United States District Court
For the Northern District of California

¶ 3 (Santa Clara location); Yu Decl. ¶ 3 (Fremont location).  They each allege that they were required to be at the spa an average of 5 to 6 days per week and worked on average 11 hours each day.  Li Decl. ¶ 7; Dai Decl. ¶ 7; Cui Decl. ¶ 7; Yang Decl. ¶ 7; Yu Decl. ¶ 7.  Named Plaintiffs state that they were paid anywhere from $8.00 to $19.00 per hour for the massages they performed depending upon their experience level and whether the client had specially requested them, but that they were only paid for the time that they were actually performing massages.  Li Decl. ¶¶ 12-13; Dai Decl. ¶¶ 12-13; Cui Decl. ¶¶ 12-13; Yang Decl. ¶¶ 12-13; Yu Decl. ¶¶ 12-13.  Moreover, Named Plaintiffs claim that they were never paid overtime for hours worked over 40 in a week.  Li Decl. ¶ 14; Dai Decl. ¶ 14; Cui Decl. ¶ 14; Yang Decl. ¶ 14; Yu Decl. ¶ 14.  The Named Plaintiffs have stated that while they were at the Perfect Day location they were required to fold towels, help to clean the spa, put out water, and distribute flyers on cars and businesses near the spas.  Li Decl. ¶ 10; Dai Decl. ¶ 10; Cui Decl. ¶ 10; Yang Decl. ¶ 10; Yu Decl. ¶ 10.  Named Plaintiffs also claim that Perfect Day took a percentage of the tips that were paid by credit card and that Perfect Day deducted amounts from the Named Plaintiffs' paychecks for business expenses.  Li Decl. ¶¶ 17-18; Dai Decl. ¶¶ 17-18; Cui Decl. ¶¶ 17-18; Yang Decl. ¶¶ 17-18; Yu Decl. ¶¶ 17-18.

Perfect Day 30(b)(6) deponent and HR Manager Jun Ma disputes many of the factual allegations set forth in Named Plaintiffs' declarations filed in support of the pending class certification and collective action motions.  Ma testified that all massage therapists are limited in the amount they may work each week.  They are not permitted to work more than 10 hours per day and more than 6 days per week.   Ma also testified that all massage therapists are compensated 8 dollars per hour for all hours worked under 40 hours, and that massage therapists are compensated at time and a half for all hours worked in excess of 40 hours in a week.  Olivier Decl. Ex. K 273:8-17; 278:3-18.  Ma also disputes the type of work performed: he testified that massage therapists were not required to clean the spa, fold towels, or distribute flyers while at Perfect Day.  He also disputes whether massage therapists are required to pay for their own supplies.

Plaintiffs filed their initial complaint on March 22, 2010.  ECF No. 1.  Plaintiffs then filed the Second Amended Complaint ("SAC"), the operative complaint in this case, on April 12, 2011.  ECF No. 179.  In the SAC, Plaintiffs claim that Perfect Day has misclassified them as independent contractors rather than employees.  Flowing from this misclassification, Plaintiffs claim that

3

Perfect Day failed to pay them and other putative class members minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA") and the California Labor Code.  Plaintiffs also claim that Perfect Day failed to provide meal periods, failed to furnish and keep accurate wage statements and payroll, wrongly subtracted materials costs from Plaintiffs' wages, failed to timely pay wages upon termination of employment, wrongly took Plaintiffs' tips, all in violation of California wage and hour laws and the California Unfair Competition Law.[1]  Perfect Day denies any unlawful conduct.

In addition to the factual background, a brief summary of the procedural background is necessary for resolution of these motions.  In May 2010, after the complaint was filed, Perfect Day coerced the massage therapists then currently employed at Perfect Day spas into signing opt-out forms.  The Court intervened in September 2010 and invalidated the opt-out forms and required Defendants to post a curative notice to the putative class.  *See* Order, September 29, 2010, ECF No. 85.

The parties have also been engaged in discovery disputes that have required the Court to reset the briefing schedule and hearing on Plaintiffs' motions for class certification and collective action several times.  Defendants' have failed to provide adequate discovery to Plaintiffs' requests, and Plaintiffs have sought, and been granted, a motion to compel.  On March 8, 2011, Plaintiffs' served a deposition notice on Perfect Day pursuant to Fed. R. Civ. P. 30(b)(6).  *See* Olivier Decl. Ex. A, August 11, 2011, ECF No. 237-1.  Perfect Day, despite Plaintiffs' attempts to schedule the deposition, failed to produce its 30(b)(6) corporate deponent.  As a result, on August 29, 2011 Court ordered that Perfect Day produce a 30(b)(6) corporate deponent to testify regarding Perfect Day's corporate structure or ownership.  *See* Order at 6, ECF No. 248.  To remedy Perfect Day's unreasonable refusal to produce its corporate deponent, the Court prohibited Defendant from utilizing testimony regarding Perfect Day's corporate structure or ownership – the noticed deposition topic – in its opposition to the class certification and collective action motions.  *See* Order at 6, ECF No. 248.  Currently, both fact discovery and expert discovery cut-offs are set for December 2, 2011.  *See* Minute Order and Case Management Order, June 17, 2011, ECF No. 203.

---

[1] Plaintiffs also claim that they are entitled to penalties pursuant to the Private Attorney General Act, Cal. Labor Code §2699 *et seq.*

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs filed separately noticed motions to facilitate a collective action under the FLSA and to certify a class of state law claims.  *See* Mot. to Facilitate Collective Action, August 11, 2011, ECF No. 235; Mot. to Certify Class, August 11, 2011, ECF No. 238.  Plaintiffs seek to certify a class comprised of "[a]ll persons who have worked as massage therapists for A Perfect Day Inc. and/or A Perfect Day Franchise Inc. d.b.a. A Perfect Day Spa at any time from March 22, 2006 through the date of final judgment."  *See* Mot. to Certify Class at 1, August 11, 2011, ECF No. 238.  The proposed class definition for the FLSA collective action is the same as the proposed class definition for the state law claims.

## II.      ANALYSIS

### A.      Collective Action Pursuant to the FLSA

Determining whether a collective action is appropriate is within the discretion of the district court.  *See Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The FLSA provides for a collective action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b).  In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential members of a collective action under the FLSA must "opt in" to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment. *Centurioni v. City and County of San Francisco,* No. 07-01016, 2008 WL 295096, at *1 (N.D. Cal. Feb. 1, 2008).  Employees who do not opt in may subsequently bring their own action.  *Id.*

The FLSA does not define the term, "similarly situated," nor has the Ninth Circuit defined it.  *Leuthold*, 224 F.R.D. at 266.  Although various approaches have been taken to determine whether plaintiffs are "similarly situated," courts in this circuit have used an *ad hoc,* two-step approach.  *See Wynn v. Nat'l Broad. Co., Inc.,* 234 F.Supp.2d 1067, 1082 (C.D. Cal. 2002) (noting that the majority of courts prefer this approach); *Leuthold*, 224 F.R.D. at 467 ("The court proceeds under the two-tiered analysis, given that the majority of courts have adopted it."); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001) (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated" and finding that the *ad hoc* approach is arguably the best of the three approaches); *Hipp v. Liberty Nat'l*

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

**United States District Court**
For the Northern District of California

1    *Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir.2001) (finding the two-step approach to certification

2    of § 216(b) opt-in classes to be an effective tool for district courts to use).

3           Under the two-tiered approach, the court first makes an initial "notice stage" determination

4    of whether potential opt-in plaintiffs are similarly situated to the representative plaintiffs,

5    determining whether a collective action should be certified for the purpose of sending notice of the

6    action to potential class members. *See, e.g., Thiessen,* 267 F.3d at 1102.  For conditional

7    certification at this notice stage, the court requires little more than substantial allegations,

8    supported by declarations or discovery, that "the putative class members were together the victims

9    of a single decision, policy, or plan." *Id.*  The standard for certification at this stage is a lenient one

10   that typically results in certification. *Wynn,* 234 F.Supp.2d at 1082.  Once discovery is complete,

11   and the case is ready to be tried, the party opposing class certification may move to decertify the

12   class. *Leuthold*, 224 F.R.D. at 467.  It is at this second stage that the Court must consider: "(1) the

13   disparate factual and employment settings of the individual plaintiffs; (2) the various defenses

14   available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural

15   considerations." *Id.*

16          Unsurprisingly, Plaintiffs argue that the Court should apply the more lenient first-step

17   analysis.  *See* Mot. to Facilitate Collective Action at 10-11, August 11, 2011, ECF No. 235.

18   Defendants, on the other hand, argue that extensive discovery has already occurred in this action,

19   and therefore the more searching inquiry at the second step should be applied now.  *See* Opp'n. to

20   Mot. to Facilitate Collective Action at 7-8, August 11, 2011, ECF No. 252.

21          The Court finds that although the parties have engaged in significant discovery thus far,

22   adopting the first stage analysis is appropriate at this time.  Plaintiffs contend that Defendants have

23   failed to produce documents and deponents that may provide information relevant to the collective

24   action analysis.  As previously documented in the August 29, 2011 Order, Defendants have

25   continually failed to provide discovery to which Plaintiffs are entitled and have thus prejudiced the

26   Plaintiffs in prosecuting their case, including their collective action motion.  *See* Order at 6, ECF

27   No. 248.  Finally, fact and expert discovery cut-offs, though approaching, are not until December

28   2, 2011.  It is likely that the Plaintiffs have not yet presented a complete factual record for the

6

1   Court to analyze.  For these reasons, the Court will proceed with the first-step analysis to determine

2   whether a collective action is appropriate.

3        Plaintiffs must show that the proposed lead plaintiffs and the proposed collective action

4   group are "similarly situated" for purposes of the FLSA.  *Leuthold*, 224 F.R.D. at 466.  "All that

5   need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the

6   various claims of the class members in a way that hearing the claims together promotes judicial

7   efficiency and comports with the broad remedial policies underlying the FLSA."  *Russell v. Wells*

8   *Fargo & Co.*, 07-CV-3993-CW, 2008 WL 4104212 at *3 (N.D. Cal. Sept. 3, 2008) (citations

9   omitted).  As a practical matter, "[a]t this stage of the analysis, courts usually rely only on the

10  pleadings and any affidavits that have been submitted."  *Leuthold*, 224 F.R.D. at 468.

11       The evidence submitted by Plaintiffs in support of their motion to facilitate a collective

12  action is sufficient to establish that the named plaintiffs and the rest of the putative class are

13  similarly situated.  All the members of the proposed collective action have the same job title and

14  have all been classified as "independent contractors" by Perfect Day.  Moreover, the evidence

15  submitted by Plaintiffs establishes that all massage therapists, regardless of their branch location

16  are treated the same by Perfect Day.  All massage therapists are supervised by the HR Director Jun

17  Ma and have been since the beginning of the class period.  All massage therapists are subject to the

18  same policies and procedures promulgated by Perfect Day.

19       The evidence submitted by the five named plaintiffs also supports a conclusion that the

20  members of the proposed class are similarly situated.  Each named plaintiff is a massage therapist

21  at a different Perfect Day location.  Named plaintiffs have submitted declarations detailing similar

22  treatment by Perfect Day in terms of duties performed, hours worked and wages earned.  These

23  declarations support the allegations in the SAC that all putative plaintiffs were improperly

24  classified as independent contractors, were required to work more than 40 hours per week, and

25  were not paid overtime for this work.

26       Defendants argue that (1) there are factual differences amongst the named plaintiffs such

27  that collective action is improper; (2) plaintiffs have offered no evidence that other class members

28  were similarly situated to the named plaintiffs; and (3) the testimony of Jun Ma establishes that all

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1  plaintiffs were already paid minimum wage and overtime for all hours worked.  None of these

2  arguments is persuasive to defeat a finding that a collective action is appropriate here.  The factual

3  differences amongst the named plaintiffs are far outweighed by the similarities of their experiences

4  as massage therapists with Perfect Day.  For example, differences amongst named plaintiffs

5  regarding *who* interviewed and hired them are minor differences not necessarily relevant to the

6  evaluation of the class claims.  Similarly, differences in wage rates and hours worked amongst

7  named plaintiffs does not necessarily defeat the initiation of a collective action.  These differences

8  ultimately may affect a damages calculation, but do not, in and of themselves, defeat a finding that

9  collective action is appropriate.  *See Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 609

10  (S.D. Cal. 2010) (rejecting the argument that differences amongst putative class members

11  regarding overtime eligibility should defeat class certification under Rule 23).

12       At the first stage, the Plaintiffs need not offer more evidence regarding the situation of

13  every putative class member that they propose to include in the collective action.  The named

14  plaintiffs have provided evidence that their experiences are substantially similar, despite working

15  in different Perfect Day locations.  The named plaintiffs have testified in deposition that the other

16  massage therapists working for Perfect Day are subject to the same working conditions and wage

17  and hour violations as the named plaintiffs.[2]  Moreover, Plaintiffs have also provided evidence

18  from Perfect Day itself that Perfect Day treated all massage therapists the same with respect to

19  working conditions and wage earned.  Given the lenient standard at stage one, the Plaintiffs need

20  not provide additional evidence that others are similarly situated.  *See Leuthold*, 224 F.R.D. at 468

21  _____

[2]  Defendants object to Plaintiffs' evidence submitted in support of their reply papers.  *See* ECF
22  Nos. 257 and 258.  Specifically, Defendant objects to: (1) named plaintiffs' deposition testimony
offered in support of its reply papers because Defendants claim it is new evidence introduced for
23  the first time in reply; (2) evidence regarding discovery disputes.  ECF No. 257 and 258.  The
Court OVERRULES Defendant's objections.  Plaintiffs offer the evidence largely to contradict
24  issues raised in defendant's opposition papers.  *See Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 359
n.1 (N.D. Cal. 2010).  Defendants opened the door to this evidence by arguing that the named
25  plaintiffs had not provided evidence regarding the other members of the class and by arguing that
discovery was almost complete.  Additionally, the Defendants have not established that they will
26  be unduly prejudiced by Plaintiffs evidence.  First, Defendants argue that they would have
provided additional declarations to contradict Plaintiff's evidence, but they do not identify what
27  this additional evidence would be or how the evidence would defeat class certification or collective
action.  Second, the additional evidence from the named plaintiffs is all deposition testimony.
28  Unlike declarations filed in reply, the deposition testimony was taken by the Defendants
themselves, and any claim of surprise or unfairness is mitigated by this fact.

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1    (concluding that allegations in the complaint and affidavits from named plaintiffs are sufficient to

2    meet the stage one standard in an FLSA overtime case); *Centurioni,* 2008 WL 295096, at *3.

3            Finally, the Court is not persuaded by Defendant's argument that testimony of Jun Ma

4    should defeat Plaintiffs' collective action.  Ma's testimony that massage therapists receive

5    minimum wage and overtime bears on the merits of Plaintiffs' claims, not to whether the FLSA

6    claims may be resolved by collective action.  Ma testified that *all* massage therapists are paid by

7    the hour in compliance with FLSA overtime requirements.  This testimony is directly contradicted

8    by the testimony of the named plaintiffs who claim that Perfect Day has a practice of only paying

9    them for actual hours conducting massages and Perfect Day never pays overtime.  Although there

10   appears to be a factual dispute – it is a factual dispute regarding how *all* members of the class are

11   treated, not a factual dispute regarding how Perfect Day treated one or two errant class members

12   (or a portion of the proposed class).  At this point, it appears that resolution of Defendant's

13   potential liability for FLSA overtime violations may be determined on a class wide basis.  If, in the

14   course of discovery, it becomes apparent that resolution of the overtime claims must be pursued on

15   an individual basis, Defendants may move to decertify the class.  Based on the record before it,

16   however, the Court finds that a collective action would promote judicial efficiency and GRANTS

17   Plaintiffs' motion for facilitation of a collective action pursuant to the FLSA.

18           B.  Class Certification

19           Class certification of Plaintiffs' state law wage and hour claims is governed by Rule 23 of

20   the Federal Rules of Civil Procedure.  Plaintiffs bear the burden of establishing that all four

21   requirements of Rule 23(a) are met, as well as one requirement of Rule 23(b).  *Zinser v. Accufix*

22   *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Whether or not to certify a class is

23   within the discretion of the Court.  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied*

24   *Indus. & Service Workers Int'l Union, AFL-CIO CLC v. ConocoPhilips Co.,* 593 F.3d 802, 807

25   (9th Cir. 2010).

26           The Plaintiffs must establish that: "(1) the class is so numerous that joinder of all members

27   is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

28   defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

9

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a). These requirements are typically referred to as the numerosity,[3] commonality, typicality and

adequacy requirements. *Norris-Wilson*, 270 F.R.D. at 599. Additionally, Plaintiffs must establish

one of the three requirements of Rule 23(b). Plaintiffs here seek to certify a class for their state law

claims pursuant to Rule 23(b)(3). *See* Mot. To Certify Class at 2, August 11, 2011, ECF No. 238.

In order to certify a class pursuant to Rule 23(b)(3) the court must find that "questions of law or

fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3).

>    1.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class,"

although "[a]ll questions of fact and law need not be common to satisfy the rule. *Hanlon v.

Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). To satisfy Rule 23(a)'s commonality

requirement, a class claim "must depend upon a common contention ... of such a nature that it is

capable of classwide resolution-which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores,

Inc. v. Dukes,* —— U.S. ——, ——, 131 S.Ct. 2541, 2551 (2011). As the Supreme Court explained

in *Dukes,* the key consideration in assessing commonality is "not the raising of common

questions—even in droves—but, rather, the capacity of a classwide proceeding to generate

common *answers* apt to drive the resolution of the litigation." *Id.* (internal citations and quotation

omitted).

District Courts throughout this circuit have found that commonality is met when the

proposed class of plaintiffs asserts that class members were improperly classified as independent

contractors instead of employees.[4] *See, e.g. Norris-Wilson*, 270 F.R.D. at 604; *Breeden v.*

---

[3] Defendants concede that the numerosity requirement is met here.

[4] The fact that the plaintiffs may meet the commonality requirement when the employer has a blanket policy of classifying class members as independent contractors does not establish that common questions of fact or law predominate. *See e.g. In re Wells Fargo Home Mortg.*, 571 F.3d 953, 955 (9th Cir. 2009) (concluding that a district court abused its discretion in certifying a wage and hour class pursuant to FRCP 23(b)(3) based on a blanket exemption policy).

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

United States District Court
For the Northern District of California

1   *Benchmark Lending Corp.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005); *Soto v. Diakon Logistics, Inc.*,

2   No. 08-CV-0033, 2010 U.S. Dist. LEXIS 89330, 2010 WL 3420779 at *2 (S.D. Cal. Aug. 30,

3   2010).  Plaintiffs meet the commonality requirement because all members of the putative class

4   were hired by Perfect Day as independent contractors and all members of the putative class signed

5   the ICA.  Moreover, one manager, Jun Ma, oversaw all putative class members in this case.  The

6   resolution of this issue may very well drive the litigation here.  If, for example, Plaintiffs have been

7   properly classified as independent contractors, the Court need not consider the additional claims

8   that Plaintiffs have raised.

9   Defendants offer similar arguments that Plaintiffs have not met their burden of establishing

10   commonality as those Defendants raised to defeat the FLSA collective action.  Defendants'

11   arguments are similarly unavailing here.  First, Defendants argue that different individuals

12   interviewed, hired, and had the putative class members sign the ICAs.  Therefore, Defendants

13   argue, there is no commonality as to whether the ICA agreements are valid and whether the

14   proposed class was improperly classified as independent contractors.  This argument, however,

15   does not defeat commonality with respect to the misclassification issue.  Plaintiffs are not arguing

16   that the Defendants' agents fraudulently induced Plaintiffs into signing the ICA and that is why the

17   proposed class is misclassified.  Rather, Plaintiffs argue that they are not independent contractors

18   despite entering into the ICA based on the relationship between the massage therapists and Perfect

19   Day.  The Court finds that the evidence provided by Plaintiffs establishes that questions of law and

20   fact are common to the class.

21          2.   Typicality

22   The typicality inquiry under Rule 23(a)(3) is permissive and requires that Plaintiffs

23   establish "the claims or defenses of the representative parties are typical of the claims or defenses

24   of the class."  Fed. R. Civ. P. 23(a)(3).  The representative claims don't need to be "substantially

25   identical" to those of absent class members, just reasonably coextensive.  *Hanlon*, 150 F.3d at

26   1020.  "The test of typicality is whether other members have the same or similar injury, whether

27   the action is based on conduct which is not unique to the named plaintiffs, and whether other class

28

11

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976

2    F.2d 497, 508 (9th Cir. 1992).

3         The typicality requirement is met here because Plaintiffs have alleged an identical injury,

4    namely that the proposed class members were improperly classified as independent contractors and

5    as a result they were denied a host of work-related benefits provided by California labor laws. *See,*

6    *e.g. Norris-Wilson*, 270 F.R.D. at 605. Defendants argue that there are a number of factual

7    differences between the named plaintiffs and the putative class members that establish that named

8    plaintiffs are not typical of the proposed class. These differences mirror the arguments raised in

9    Defendants' attempt to defeat the FLSA collective action. As explained above, the differences

10   among the named plaintiffs and between the named plaintiffs and the proposed class are

11   outweighed by the similarities within the proposed class. Therefore, Plaintiffs have sufficiently

12   established that the named plaintiffs are typical of the proposed class.

13        3.   Adequacy

14        Rule 23(a)(4) permits class certification only if the "representative parties will fairly and

15   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires: "(1)

16   that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class,

17   and (2) that Plaintiffs are represented by qualified and competent counsel." *Hanlon*, 150 F.3d at

18   1020.

19        Defendants challenge the adequacy of the named plaintiffs as class representatives. First,

20   Defendants argue that two of the class representatives, Li and Dai, do not get along with the other

21   putative class members because they suspect that the other massage therapists stole their customers

22   and/or reported them to management in exchange for favorable treatment. *See* Opp'n. to Mot. for

23   Class Certification at 13, August 31, 2011, ECF No. 251. Class representatives fail to meet the

24   adequacy standard when the "conflicts between the class members are serious and irreconcilable."

25   *Breeden*, 229 F.R.D. at 629. Defendants do not allege that there is an irreconcilable conflict

26   between the class representatives and the class, or that there is a conflict of interest between class

27   members and class representatives. The fact that all proposed class members may not like each

28   other, or even that some potential class members may prefer their current employment situation, is

12

**United States District Court**
For the Northern District of California

1   not sufficient to defeat adequacy.  *See Norris-Wilson*, 270 F.R.D. at 606.  Second, Defendants

2   argue that because some of the named plaintiffs do not have the ability to pursue all of the claims

3   alleged, Plaintiffs have not established that the named plaintiffs are adequate class representatives.

4   *See* Opp'n. to Mot. for Class Certification at 13-14, August 31, 2011, ECF No. 251.  Assuming,

5   without deciding, that Defendants are correct that some of the named plaintiffs cannot establish

6   some of the class claims, Defendants still have not established that the named plaintiffs are wholly

7   inadequate to represent the class.  This is because only one of the named plaintiffs must be an

8   adequate class representative in order to satisfy Rule 23(a)(4).  *See Local Joint Executive Bd. of*

9   *Culinary/Bartending Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001).

10         Defendants also challenge the adequacy of Plaintiffs' counsel in this case.  The declarations

11   submitted by Plaintiffs' co-lead counsel Monique Olivier and James Sturdevant establish that both

12   counsel have significant experience in prosecuting class actions on behalf of employees and

13   consumers.  Both attorneys have obtained favorable results for their clients.  Defendants argue that

14   Plaintiffs' counsel is not adequate because prior Plaintiffs' counsel, Adam Wang, was disqualified

15   from this case; he likely obtained confidential information from his prior consultation with Perfect

16   Day; and he also likely passed that confidential information to the remaining counsel.  The Court's

17   order disqualifying Adam Wang, however, has cured any conflict that has arisen from Wang's

18   representation of the proposed class.  As explained in the order regarding disqualification, any

19   confidential information that Wang obtained from Perfect Day is not imputed to the remaining

20   counsel in the case.  Therefore, the Court finds that both class representatives and Plaintiffs counsel

21   are adequate.

22              4.   Superiority of Class Action

23         Rule 23(b)(3) tests whether "a class action is superior to other available methods for the fair

24   and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3) the

25   court must evaluate whether a class action is a superior method of adjudicating plaintiffs claims by

26   evaluating four factors: "(1) the interest of each class member in individually controlling the

27   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

28   controversy already commenced by or against the class; (3) the desirability of concentrating the

13

1   litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in

2   the management of a class action." *Leuthold*, 224 F.R.D. at 469 (*citing Zinser*, 253 F.3d at 1190-

3   92).  Defendants challenge the superiority of certifying Plaintiffs' state law claims in conjunction

4   with Plaintiffs' FLSA claims relying on a line of cases in the Northern District of California.

5   Following *Leuthold*, Defendants argue that the superior way to proceed is to deny Rule 23

6   certification and to have the state law claims prosecuted as part of the FLSA collective action.  *See*

7   *also Edwards v. City of Long Beach*, 467 F. Supp. 2d 986 (C.D. Cal. 2006); *Campanelli v. Hershey*

8   *Co.*, No. C 08-1862 BZ, 2010 U.S. Dist. LEXIS 92364, at *15 (N.D. Cal. Aug. 13, 2010).

9         The Court in *Leuthold* adopted this practical solution to manage the potential issues that

10   arise from prosecuting an *opt-in* FLSA collective action simultaneously with an *opt-out* state law

11   Rule 23 class action.  *See Leuthold*, 224 F.R.D. 462 (N.D. Cal. 2004).  The Court relied on two of

12   the four factors in concluding that proceeding with a Rule 23 class action concurrently with a

13   FLSA collective action would not be a superior method to adjudicating the claims.  First, the court

14   explained that there was substantial hostility among potential class members against proceeding

15   with the class action, which undermined the "interest of each class member in individually

16   controlling the prosecution or defense of separate actions."  *Leuthold*, 224 F.R.D. at 470.  The court

17   also indicated that proceeding with a Rule 23 class action would likely lead to confusion because

18   the potential plaintiffs would be asked both to opt in and to opt out of the claims in the suit.  *Id.*

19   Second, the court noted that raising a Rule 23 class based on state law claims is problematic and

20   raises a jurisdictional concern: "[s]hould only a few plaintiffs opt in to the FLSA class after the

21   court were to certify a Rule 23 state law class, the court might be faced with the somewhat peculiar

22   situation of a large number of plaintiffs in the state law class who have chosen not to prosecute

23   their federal claims.  The court might then be in a position in which declining supplemental

24   jurisdiction would be appropriate, given that the state law claims could be said substantially to

25   predominate over the federal claims." *Leuthold*, 224 F.R.D. at 470.  The *Leuthold* court,

26   accordingly, denied plaintiffs' Rule 23 class certification motion.

27         A recent district court case in the Northern District of California limited the holding in

28   *Leuthold*, and offered several reasons to proceed with a Rule 23 class action even when a FLSA

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

**United States District Court**
For the Northern District of California

1   collective action has been conditionally certified.  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d

2   996 (N.D. Cal. 2010).  In *Harris*, Judge Chen concluded that denying a Rule 23 class certification

3   motion because of the opt-in/opt-out issue would create perverse outcomes unlikely to have been

4   intended by Congress in passing the FLSA.  753 F. Supp. 2d at 1018.  This is because a rule

5   barring state law wage and hour class actions often has the practical effect of causing plaintiffs to

6   drop their state law causes of action; and would have the perverse impact of giving those plaintiffs

7   who only bring state law claims greater rights than those plaintiffs who bring both state and federal

8   wage and hour claims.  *Id.*  Additionally, Judge Chen held that proceeding with a class on

9   plaintiffs' state law claims was a superior method of adjudicating plaintiffs' claims because (1)

10  there was no evidence of hostility to the lawsuit in *Harris* and therefore the interests of the class

11  members in deciding how to proceed with their own claims was not implicated; (2) with more than

12  5,000 FLSA opt-in plaintiffs it was unlikely that state law claims would so predominate as to

13  implicate the jurisdictional concerns in *Leuthold*; and (3) the plaintiffs' claims in *Harris* were

14  originally filed in state court, and removed by defendant, thus if the court did not certify the class,

15  then plaintiffs' case would have been removed, and their state law class claims effectively

16  dismissed, all through no fault of their own. *Id.*

17          In considering whether a class of state law claims would be a superior method to adjudicate

18  Plaintiffs' claims in this case, the Court is swayed by several facts.  First, like *Harris*, Defendants

19  have produced no evidence that there is hostility against proceeding with the class action amongst

20  the class members.  Therefore, the Court is not concerned that the class members may be forced to

21  adjudicate their claims in a manner they do not want.  Second, the Court must also consider "the

22  nature of any litigation concerning the controversy already commenced by or against the class."

23  *Leuthold*, 224 F.R.D. at 469.  The nature of the litigation thus far weighs in favor of finding that

24  state law class certification is a superior method of addressing the proposed class's claims.  The

25  Court has seen evidence that Perfect Day coerced and intimated the putative class members

26  employed at the spas to sign opt-out forms.  *See* Order, September 29, 2010, ECF No. 85.

27  Therefore, the Court declines to create additional barriers for the potential plaintiffs to exercise

28  their rights under the California wage and hour laws.  Finally, it is unlikely that the Plaintiffs' state

15

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1    law claims would so predominate over the FLSA claims as to create jurisdictional issues.  Indeed,

2    it appears as though all of the proposed class members are potentially members of both classes.

3    Concentrating Plaintiffs' Rule 23 class claims in the same forum as their FLSA claims would serve

4    judicial economy and reduce redundancies across jurisdictions.  These considerations outweigh the

5    concern that concurrent opt-in and opt-out classes would potentially create confusion among the

6    putative class members. The Court, therefore, finds that a class action is a superior method of

7    adjudicating Plaintiffs' state law claims.

8            5. <u>Predominance</u>

9            Finally, in order to establish class certification pursuant to Fed. R. Civ. P. 23(b)(3),

10   Plaintiffs must show that "(1) the questions of law or fact common to the members of the class

11   predominate over any questions affecting only individual members."  "When common questions

12   present a significant aspect of the case and they can be resolved for all members of the class in a

13   single adjudication, there is clear justification for handling the dispute on a representative rather

14   than on an individual basis."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las*

15   *Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  The Court will first analyze whether

16   common questions predominate the threshold question of employee classification.  If they do not,

17   then the inquiry ends there and class certification should be denied.  If, however, common

18   questions predominate the classification inquiry, the Court then considers Plaintiffs' individual

19   claims to determine whether they also pass the predominance test.  *See Norris-Wilson*, 270 F.R.D.

20   at 606.

21            a) <u>Independent Contractor Analysis</u>

22            Under California law, the defining feature of the employer-employee relationship is the

23   employer's "right to control the manner and means of accomplishing the result desired."  *S.G.*

24   *Borello & Sons, Inc. v. Department of Indus. Relations*, 48 Cal. 3d 341, 256 (Cal. 1989).

25   California courts also look to secondary indicia to determine whether an individual is an employee,

26   including: (1) the right to discharge at will; "(2) whether the one performing services is engaged in

27   a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the

28   locality, the work is usually done under the direction of the principal or by a specialist without

16

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1   supervision; (4) the skill required in the particular occupation; (5) whether the principal or the

2   worker supplies the instrumentalities, tools, and the place of work for the person doing the work;

3   (6) the length of time for which the services are to be performed; (7) the method of payment,

4   whether by the time or by the job; (8) whether or not the work is a part of the regular business of

5   the principal; and (9) whether or not the parties believe they are creating the relationship of

6   employer-employee." *Id.* at 350-351.

7        Based on the record before the Court it is clear that common questions predominate in the

8   inquiry as to whether the massage therapists at Perfect Day were independent contractors or not.

9   The central question to be resolved – whether Perfect Day has the right to control the massage

10  therapists – will be determined based on evidence common to the class.  The ICA, which was

11  signed by every massage therapist, the policies and procedures that apply to all massage therapists,

12  and the right retained by Jun Ma to control every massage therapist will likely resolve the issue of

13  independent contractor status.  Many of the secondary factors considered in the independent

14  contractor analysis will also support a class wide determination based on common proof.  For

15  example, common proof also likely resolves whether the employer retains the right to discharge at

16  will; the kind of occupation, with reference to whether, in the locality, the work is usually done

17  under the direction of the principal or by a specialist without supervision; the skill required in the

18  particular occupation; whether the principal or the worker supplies the instrumentalities, tools, and

19  the place of work for the person doing the work; the length of time for which the services are to be

20  performed; the method of payment, whether by the time or by the job; and whether or not the work

21  is a part of the regular business of the principal.  Thus, the Court finds that common issues will

22  predominate as to the independent contractor analysis.

23              b)  State Law Minimum Wage and Overtime Claims

24        Plaintiffs allege that Perfect Day failed to pay minimum wage and overtime in violation of

25  California state law.  Plaintiffs' wage claims are not based on allegations that massage therapists

26  were required to work "off-the-clock."  Reply in Support of Mot. to Certify Class at 8, September

27  15, 2011, ECF No. 256.  Such claims would likely require individualized proof of both liability and

28  damages.

17

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Instead, there appears to be a factual dispute regarding precisely what Perfect Day's policy

2   is with respect to minimum wage and overtime.  Ma testified that *all* massage therapists are paid by

3   the hour in compliance with state law minimum wage and overtime requirements.  This testimony

4   is directly contradicted by the testimony of the named plaintiffs who claim that Perfect Day has a

5   policy and practice of only paying them for actual hours worked giving massages and that Perfect

6   Day *never* pays overtime to massage therapists.  Given that Jun Ma is the only manager with

7   oversight over massage therapists, and the named plaintiffs have provided unified testimony that

8   suggests that Perfect Day's policies and procedures[5] are different than those presented by Perfect

9   Day, the Court finds that there is a factual dispute regarding what the policies and procedures

10   employed by Perfect Day are.  At this point, it appears that resolution of Defendant's potential

11   liability for California minimum wage and overtime violations may be determined on a class-wide

12   basis, based upon common – though factually disputed – proof.

13    If, in the course of discovery, it becomes apparent that resolution of the California

14   minimum wage and overtime claims cannot be pursued on a class basis -- for example if Plaintiffs

15   must assert that individual Plaintiffs worked off the clock in violation of Perfect Day's official

16   policy, Defendants may move to decertify the class at that time.  Based on the record before it,

17   however, the Court finds that common questions predominate on Plaintiffs state law minimum

18   wage and overtime claims.

19    c)  <u>Meal Period Claim</u>

20    California Labor Code § 226.7 provides that "No employer shall require any employee to

21   work during any meal or rest period."  If an employer fails to provide an employee a meal period,

22   the employer must pay the employee an additional hour of the employee's regular rate of pay.  *Id.*

23   Whether class certification of a meal period claim is appropriate depends upon whether the

24   employer has a uniform policy.  *See Norris-Wilson*, 270 F.R.D. at 609; *Brown v. FedEx Corp.*, 249

25   F.R.D. 580 (C.D. Cal. 2008).  Case law interpreting the statute has established that meal breaks

26   ─────────────────
[5] As explained at the September 29, 2011 hearing, the policies and procedures appear to be
contained in the ICA, several postings at the spa locations, and an employee/HR handbook that

27   Defendants have been unable to locate for production.  Other than that, the policies and procedures
appear to originate from Mr. Ma, himself, and he has testified that the policies and procedures

28   related to the massage therapists apply across the class.

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1   need only be made available to employees, they don't necessarily actually have to be taken.

2   *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 532-33 (S.D. Cal. 2008); *see also White v.*

3   *Starbucks*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007).

4           After reviewing the deposition testimony of named plaintiffs, it does not appear that Perfect

5   Day maintained a uniform lunch policy such that Plaintiffs' meal break claims could be determined

6   based on class wide proof.  For example, several named plaintiffs admitted that they ate lunch at

7   noon if permitted by the schedule imposed by customers.  Supp. Olivier Decl. Ex. 1, 26:3-12 (Cui);

8   Supp. Olivier Decl. 2, 38:5-15 (Dai).  Other named plaintiffs testified that they were never

9   permitted to take meal breaks.  Supp. Olivier Decl. 3, 46:6-20 (Li); Supp. Olivier Decl. Ex. 4,

10  39:13-21 (Yu).  Named plaintiffs themselves appear not to agree on what the company policy is,

11  and whether they are required to strictly follow it.  Absent a uniform policy or practice, Plaintiffs'

12  meal break claims will require a heavily factual inquiry into the particular circumstances of each

13  putative class member to determine when, if ever, they were not permitted to take a meal break.

14  Accordingly, the Court finds that common issues of law or fact do not predominate in Plaintiffs'

15  meal break claims.

16              d)  <u>Wage Statements</u>

17          California Labor Code § 226 requires employers to provide all employees "an accurate

18  itemized statement in writing" showing, among other things, "gross wages earned" and "total hours

19  worked by the employee" during the pay period.  Cal. Labor Code § 226(a).

20          Plaintiffs claim that Perfect Day has entirely failed to provide them with written wage

21  statements detailing the amount of wages earned and the hours worked.  Pl.'s Mot. For Class

22  Certification 22, August 11, 2011, ECF No. 238; Li Decl. ¶ 20; Dai Decl. ¶ 19; Cui Decl. ¶ 20;

23  Yang Decl. ¶ 20; Yu Decl. ¶ 20.  Neither Plaintiffs nor Defendants have offered the company's

24  policy regarding whether they provide wage statements to the putative class of massage therapists.

25  On the record before it, the Court finds that common issues of law and fact predominate on this

26  claim.  If, however, in the course of discovery it becomes clear that Plaintiffs' wage statement

27  claims involve a dispute about the actual number of hours a putative class member worked, such an

28  inquiry will likely require an individual inquiry into the class members' work history and therefore

19

1    class treatment will not be appropriate.  *See also Norris-Wilson*, 270 F.R.D. at 610.  If that is the

2    case, then Defendants may move for decertification at that time.

3                    e)    Reimbursement of Expenses Claim

4            California Labor Code § 2802 requires an employer "indemnify his or her employee for all

5    necessary expenditures or losses incurred by the employee in direct consequence of the discharge

6    of his or her duties."  Again, there appears to be a factual dispute regarding what Perfect Day's

7    reimbursement policy is.  Ma testified that Perfect Day provides all of the instruments necessary

8    for the massage therapists, while the Plaintiffs claim that they were required to purchase a wide

9    variety of items for performing their duties as massage therapists at Perfect Day.

10           On this record, it does not appear that this claim is susceptible to resolution by common

11   proof.  The SAC does not narrow Plaintiffs' claim to any specific expenses or category of

12   expenses, and as a result, Plaintiffs claim reimbursement over a wide and divergent range of items.

13   *See, e.g.*, Supp. Olivier Decl. 4, 51-52 (uniforms and sheets); Supp. Olivier Decl. 3, 63; 66-68 (oil,

14   paper, flyer fees, and other expenses); Supp. Olivier Decl. 2, 49-51 (oil, gloves, uniforms, and

15   business cards); Supp. Olivier Decl. 1, 41-42 (paper towels, oil, mask, cleaning fees).  For each

16   item claimed, an inquiry into the merits looks to whether the expenditure was necessary in direct

17   consequence of the discharge of the massage therapists' duties, an inquiry which would likely be

18   fact intensive.  *See, e.g. Norris Wilson*, 270 F.R.D. at 610 (refusing to certify a class for an

19   indemnification of expenses claim because the expenses incurred could not "be ascertained in one

20   fell swoop, or even several feel swoops.  The question necessarily requires a worker-by-worker,

21   highly individual analysis."); *see also Harris*, 753 F. Supp. 2d at 1022-1023 (denying class

22   certification for a California Labor Code § 2802 reimbursement claim because such a claim on a

23   class wide basis raised issues of manageability).  Therefore, the Court finds that common issues do

24   not predominate on this claim.

25                   f)    Conversion of Gratuities

26           California Labor Code § 351 forbids employers from collecting gratuities left for

27   employees by a patron.  The statute specifically requires an employer "that permits

28   patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that

                                                    20

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

1    the patron indicated on the credit card slip, without any deductions for any credit card payment

2    processing fees or costs that may be charged to the employer by the credit card company."

3         Ma testified that Perfect Day processes customer tips when those customers pay by credit

4    card, but Perfect Day never keeps any percentage of the tips.  Supp. Olivier Decl. Ex. 9, 293:12-15.

5    Ma testified that either he or Jade Li input the credit card tips into the computer system and then

6    include the tip in the massage therapist's next paycheck.  Supp. Olivier Decl. Ex. 9, 293:5-11.

7    Named plaintiffs have all contradicted Ma's testimony and have stated in their declarations and in

8    their deposition testimony that in reality Perfect Day uniformly deducts 20% of credit card tips

9    from massage therapists.  Supp. Olivier Decl. 4, 44:15-25; Supp. Olivier Decl. 3, 56:10-16; Supp.

10   Olivier Decl. 2, 45:1-11; Supp. Olivier Decl. 1, 31:24-32:9; Yang Decl. ¶¶ 17-18 & Ex. B.   It

11   appears that, like Plaintiffs' claims wage and hour violations, there is a factual question regarding

12   what Perfect Day's actual policy is with regard to withholding credit card tips.  Thus the claim is

13   resolvable based on common proof.  For this reason, the Court finds that common issues of fact

14   predominate for Plaintiffs' conversion of gratuities claim, and thus class treatment is appropriate.

15                    g)   UCL and Waiting Time Penalties

16        Plaintiffs' claims for violations of California Labor Code § 203 and California UCL are

17   based on predicate violations of the state law minimum wage and overtime laws.  *See* Mot. For

18   Class Certification at 23, August 11, 2011, ECF No. 238.  The Court has found that several of the

19   predicate claims can be resolved on a class wide basis.  Therefore, to the extent that Plaintiffs may

20   maintain a Rule 23 class action for minimum wage and overtime violations, Plaintiffs may also

21   maintain a Rule 23 class action for these additional derivative claims.

22        C.   Tolling of FLSA Claim

23        An action to recover unpaid overtime compensation must be "commenced within two years

24   after the cause of action accrued, except that a cause of action arising out of a willful violation may

25   be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  An

26   action is "commenced," under the FLSA, on the date the complaint is filed, subject to certain

27   exceptions.  29 U.S.C. §256.  In the case of a collective action such as this one, if the individual

28   claimants do not immediately file written consents to become parties, the action is considered to be

                                                21

1   commenced when the written consents are filed.  29 U.S.C. § 256(b).  Equitable tolling applies

2   when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the

3   defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to

4   file a claim on time." *Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir.1999).  Federal courts have

5   typically extended equitable relief only sparingly.  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89,

6   96 (1990).

7        Plaintiffs argue that they are entitled to equitably toll the limitations period because

8   Defendants refuse to produce class lists and because Defendants intimidated class members in an

9   attempt to coerce them in to opting out of the class action.  Courts have recognized that

10  Defendants' refusal to provide contact information prior to certification is not necessarily wrongful

11  conduct for tolling purposes.  *See Gilbert v. CitiGroup, Inc.,* No. 08-0385, 2009 WL 424320 at *5

12  (N.D. Cal. Feb. 18, 2009); *Prentice v. Fund for Pub. Interest Research,* No. 06-7776, 2007 WL

13  2729187, at *3-4 (N.D. Cal. 2007).

14       The Court is, however persuaded by Plaintiffs' second argument.  Defendant's wrongful

15  conduct in May 2010 necessarily prevented proposed class members from being able to assert their

16  FLSA claims.  As detailed in this Court's September 29, 2010 Order, the evidence showed that

17  Perfect Day intimidated members of the putative class by coercing them to sign opt-out forms at

18  individual meetings.  This conduct necessarily impacted the affected class members' ability to

19  exercise their rights to overtime wages under the FLSA.  As a result, the Court concludes that

20  plaintiffs' claims are equitably tolled from May 1, 2010, when Defendants began their campaign to

21  obtain opt-out forms from class members, until October 18, 2010, when curative notices were sent

22  out to affected members of the putative class.  Note, however, that the equitable tolling only

23  applies to individuals that were employed at Perfect Day in May 2010.

24       D.  Proposed Class Notice and Class List

25       Given that the court has concluded that a collective action is appropriate for the FLSA

26  claims and that class certification is appropriate for many of Plaintiffs' state law wage and hour

27  claims, the proposed notice originally filed by Plaintiffs and revised by Defendants does not

28  properly take into account this Court's ruling.  Accordingly, within 21 days the parties are ordered

22

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION

United States District Court
For the Northern District of California

1  to meet and confer regarding a proposed notice for Plaintiffs' FLSA claim and Plaintiffs' state law

2  claims for minimum wage violations, overtime violations, violations of wage statement

3  requirements, conversion of gratuities, violations of the UCL, and waiting time penalties.  After 21

4  days the parties shall file one joint stipulated notice for the FLSA and state law claims. If the

5  parties cannot agree then each side may file a proposed notice and a brief, up to three pages,

6  explaining why the proposed notice is appropriate.

7        Defendants are also ORDERED to produce the class list to Plaintiffs' counsel within 21

8  days of the date of this order.  Defendants may enter into a protective order with Plaintiffs before

9  doing so.  To the extent that the parties wish to enter into a protective order, they must submit a

10  joint stipulated protective order for the Court's signature within 21 days of this Order.

11  **III.    CONCLUSION**

12        For the reasons set forth above, the Court GRANTS Plaintiffs' Motion to Facilitate

13  Collective Action, and GRANTS, in part, and DENIES, in part, Plaintiffs' Motion to Certify a

14  Class.  The Court ORDERS the parties to file a joint stipulated proposed class notice within 21

15  days of the date of this Order.  The Court also ORDERS Defendants to produce to Plaintiffs'

16  counsel the class list within 21 days of the date of this Order.

17  **IT IS SO ORDERED.**

18  Dated: October 5, 2011                    _Lucy H. Koh_

19                                          LUCY H. KOH
                                           United States District Judge

20

21

22

23

24

25

26

27

28

23

Case No.: 10-CV-01189-LHK
ORDER GRANTING IN PART MOTIONS RE: CLASS CERT AND COLLECTIVE ACTION