1   MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
2   DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
3   San Francisco, CA  94104
Telephone:  (415) 433-0333
4   Facsimile:   (415) 449-6556

5
JAMES C. STURDEVANT (SBN 94551)
6   (jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
7   A Professional Corporation
354 Pine Street, Fourth Floor
8   San Francisco, California  94104
Telephone:  (415) 477-2410
9   Facsimile:   (415) 477-2420

10  Attorneys for Plaintiffs and the Class

11  Additional counsel listed on signature page.

12
              UNITED STATES DISTRICT COURT
13           NORTHERN DISTRICT OF CALIFORNIA
                    SAN JOSE DIVISION
14

15  GUIFU LI, MENG YANG, FANG DAI,          Case No.  CV 10-01189 LHK (PSG)
    LIN CUI, and ZHONG YU on behalf of
16  themselves and all others similarly situated,   **CLASS AND COLLECTIVE ACTION**

                    Plaintiffs,              **UPDATED DECLARATION OF JEFFREY
17                                           S. PETERSEN IN SUPPORT OF
          vs.                                PLAINTIFFS' MOTION FOR DEFAULT
18                                           JUDGMENT BY COURT, AND AWARD OF
    A PERFECT DAY FRANCHISE, INC., a         ATTORNEYS' FEES AND COSTS
19  California corporation, *et al*.,

20                  Defendants.

21
    MINJIAN HAND HEALING INSTITUTE,         Date:        June 14, 2012
22  INC., a California corporation,          Time:        1:30 p.m.
                                             Courtroom:   8, 4th Floor
23                  Counterclaimant,         Judge:       Hon. Lucy H. Koh

24        vs.
                                             Complaint Filed:  March 22, 2010
25  FANG DAI, and individual; ZHONG YU, an   Trial Date:       April 3, 2012
    individual; LIN CUI, and individual; and
26  DOES 11-30, inclusive,

27                  Counterdefendants.

28

I, JEFFREY S. PETERSEN, declare as follows:

1.     I make this declaration based upon my personal knowledge and if sworn as a witness could testify under oath competently to the facts contained herein.  I make this declaration in support of Plaintiffs' Updated Motion for Default Judgment, and Award of Attorneys' Fees and Costs, filed herewith on this date.

2.     I am an economist who was retained by Plaintiffs' counsel, along with my business partner Phillip H. Allman and our firm, Allman & Petersen Economics, LLC, as an expert witness to conduct an analysis of the several categories of payments due to the class in this case.  My resume is attached hereto as Exhibit A.  Mr. Allman's resume is attached hereto as Exhibit B.

## BACKGROUND

3.     Attached hereto as Exhibit C is an updated Expert Report that was prepared by my firm in this case.  I have made or reviewed all the calculations in the report.  The original Expert Report that my firm prepared was based upon 124 class members, as that was the number of class members provided by the Defendants.  I have been asked by Plaintiffs to revise the damages estimate to reflect 127 class members for the state law claims.  I have done so and the updated report attached as Exhibit C reflects such numbers.

4.     As the report details, we analyzed the following payments due to class members:

        a.     Unpaid minimum wages;

        b.     Unpaid overtime wages;

        c.     Tips paid to class members;

        d.     Prejudgment interest due to class members;

        e.     Statutory damages for wage statement violations;

        f.     Statutory waiting time penalties; and

        g.     Penalties under the Private Attorney General Act.

5.     I have also been asked by Plaintiffs to provide a damages estimate to reflect 59 class members for the FLSA claim.

6.     The calculations in the Expert Report (Ex. C) are based upon survey data conducted

1

by my firm.  A complete description of the survey process can be found in the Expert Report.  (Ex. C ¶¶ 4-9.)

7.     As noted in the Expert Report (Ex. C ¶¶ 4-7), 40 class members were randomly selected for interview and 24 were actually interviewed.  These 24 class members are 19 percent of the overall class.  Determining whether the responses of these 24 class members could be applied to the other 102 class members who were not surveyed was a two-step process.  The first step involved applying a chi-squared test to the survey responses to determine if they were "normally distributed."  The chi-squared test revealed that the responses were normally distributed which means they have the properties of a "bell-shaped curve."  A bell-shaped curve distribution is important because it allows for a statistical analysis of the mean (the average response).  The second step of the process of determining whether the 24 surveyed class members were representative of the 102 non-surveyed class members involved an analysis of the average responses.  A statistical tool called a "t-statistic" can be utilized to analyze averages when the distribution is a bell-shaped curve.  The t-statistic shows the likelihood of the averages of the 24 respondents being representative of the 102 non-respondents.  In all cases of data utilized to compute damages, the t-statistic showed that the responses of the 24 surveyed class members were powerful predictors of the responses of the 102 non-surveyed class members.  The chi-squared test and the t-statistic test are generally accepted statistical methods among the relevant scientific community of professional statisticians and economists.

8.     From the survey data collected from surveyed class members (*see* Ex. C ¶ 8 & Table 1), we calculated the average payments due for categories of payments detailed in paragraphs 4.a. through 4.c., above (unpaid minimum wages, unpaid overtime wages, tips to class members).  The averages were calculated by:  (1) calculating the "Total" amount for surveyed class members under each category, and (2) dividing that "Total" amount by the number of survey respondents, i.e., 24.  For example, for unpaid minimum wages, the "Total" amount due is $78,461.  This amount was divided by 24, for an "Average" amount of $3,269.[1]  (*See* Ex. C ¶¶ 9-10 & Tables 2-3.)

---

[1] All computations are done in Microsoft Excel.  This program doesn't use the whole (continued on next page)

9.      The "Average" amounts were then applied to the 103 non-surveyed class members to arrive at the total damages due the class.  Using the example above in paragraph 8, for unpaid minimum wages, the "Average" amount of $3,269 was multiplied by the total number of non-surveyed class members, i.e., 103, to get the "Total for Non-Surveyed Class Members" of $336,729.  (*See* Ex. C ¶¶ 13-14 & Tables 3, 6.)

10.     Finally, to the "Total for All Class Members" for each category in Paragraphs 4.a though 4.c. above, we added the "Total" amounts for Surveyed Class Members and Non-Surveyed Class Members.  Using the example above in paragraphs 8-9, for unpaid minimum wages, the "Total" amount for Surveyed Class Members is $78,461 and the "Total" amount for Non-Surveyed Class Members is $336,729.  The combined "Total for All Class Members" is $415,190.  (*See* Ex. C ¶ 14 & Table 6.)

11.     The calculations described in paragraphs 7 to 10 above were conducted on categories of payments detailed in paragraphs 4.a. through 4.c., above (unpaid minimum wages, unpaid overtime wages, tips to class members).  Detailed below in paragraphs 17 to 20 are the results calculations for these categories.

12.     Survey responses reflected some differences in the rates of pay received by massage therapists.  However, the majority of respondents stated their pay rate during a "training period" was $9.00 per hour.  Upon completion of the training period, the majority of respondents stated their pay rate was $11.00 per hour for walk-in clients and $19.00 per hour for repeat clients.  The survey respondents were not able to consistently determine the percentage of clientele that was walk-in versus repeat.  Therefore, the wage rates utilized for computing the regular rate of pay were the majority pay rates of $9.00 per hour for the average training period and $11.00 per hour following the training period.

13.     The time period for the calculation of tip violations is March 22, 2006 to November

---

(footnote continued from previous page)
numbers quoted in this report but utilizes the precise number down to many decimal points.  Thus, utilizing a calculator to replicate the numbers quoted in this report may lead to small dollar differentials.

27, 2010.  Survey responses showed that the practice of illegally collecting tips stopped approximately one year before the date of the survey.  The survey was conducted on or about November 27, 2011.

14.     We also analyzed data related to work expenses paid but not reimbursed by the employer.  I understand that this data is relevant to the damages of the five named Plaintiffs and to the PAGA claim.

15.     We also analyzed data related to missed meal periods.  I understand that this data is relevant to the damages of the five named Plaintiffs and to the PAGA claim.

16.     Because the UCL – which allows the class to recover lost wages as restitution – has a four year statute of limitations and the relevant wage statutes have a three year statute of limitations, the restitution amount would typically be higher than the damages amount allowed under the statutes.  Thus, the restitution amount would be calculated going back to March 22, 2006 (four years from the filing of the complaint) and the damages amount would be calculated going back to March 22, 2007 (three years from the filing of the complaint).  In this case, however, only one of the class members surveyed was employed earlier than March 22, 2007 and then only by a few days.  Accordingly, the restitution amount and the damages amount for unpaid minimum wages, overtime compensation, and tips taken are the same value.

## CONCLUSIONS

17.     *Unpaid Minimum Wages.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using generally accepted statistical methods, we determined that the average amount of unpaid minimum wages owed to each class member is $3,269.  (Ex. C ¶¶ 8-10 & Tables 2, 3.)  The total amount of unpaid minimum wages due to the class of 127 members is $415,190.  (Ex. C ¶ 14 & Table 6; *see* ¶¶ 7-10, above, for description of calculation.)  According to Plaintiffs' counsel, the amount of liquidated damages due to the class is equivalent to the unpaid minimum wages due to the class.  Therefore, the total amount of liquidated damages owed to the class is an additional $415,190.  (Ex. C ¶ 17B.)  To calculate the unpaid minimum wages, I first calculated an "Adjusted Minimum Wage" for each survey respondent, which is the minimum wage rate ($7.50 per hour for the

4

employment period of January 1, 2007 to December 31, 2007, and $8.00 per hour for the

employment period of January 1, 2008 to present (none of the survey respondents was hired prior to

January 1, 2007)) applied to the survey respondents' employment period in a weighted manner.  (Ex.

C, Table 2 n.1A.)  I then calculated the unpaid regular hours per week by deducting the total number

of hours a respondent conducted massages (paid hours) from 40 hours per week.  (Ex. C, Table 2

n.4.)  For example, for the first respondent on Exhibit C, Table 2, Shuangtian Wang, I deducted 39

hours (the number of paid hours per week) from 40 hours to get 1 hour of unpaid regular hours.

Finally, I calculated the "Unpaid Minimum Wages" by multiplying:  (1) the unpaid regular hours per

week, (2) years of employment, (3) number of full weeks worked per year, and (4) the Adjusted

Minimum Wage.  (Ex. C, Table 2 n.6.)  Using the same example for Shuangtian Wang, the amount

is $829 (1 [unpaid regular hours per week] x 2.03 [years of employment] x 51 [number of full weeks

worked per year] x $8.00 [Adjusted Minimum Wage]).  The amounts for each surveyed class

member were added together and total $78,461 and the average amount per surveyed class member

is $3,269.  (Ex. C, Table 3.)  Due to the complexity of computing damages on weeks shortened by

holidays, no damages were computed for those weeks.

    18.    *Unpaid Overtime Pay.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and

using accepted economic principles and methods, we determined that the average amount of unpaid

overtime pay owed to each class member is $30,468.  (Ex. C ¶¶ 8-10 & Tables 2, 3.)  The total

amount of unpaid overtime pay due to the class of 127 class members is $3,869,405.  (Ex. C ¶ 14 &

Table 6; *see* ¶¶ 7-10, above, for description of calculation.)  Overtime wages are based on all hours

worked in excess of 40 hours a week and are paid at a rate of one and a half times the regular rate of

pay.  To calculate the unpaid overtime wages, I first calculated the number of unpaid overtime hours

per week for each survey respondent by deducting 40 hours from the total hours worked per week

for each survey respondent.  (Ex. C, Table 2.)  For example, for the first respondent on Exhibit C,

Table 2, Shuangtian Wang, I deducted 40 hours from 66 hours [total hours worked per week] to get

26 hours of unpaid overtime hours.  Finally, I calculated the "Unpaid Overtime Wages" by

multiplying:  (1) the unpaid overtime hours per week, (2) years of employment, (3) number of full

weeks worked per year, (4) the overtime rate (i.e., the regular rate of pay (which is calculated as described on Exhibit C, Table 2, footnote 1; *see also* paragraph 12, above) multiplied by 1.5). (Ex. C, Table 2 n.7.)  Using the same example for Shuangtian Wang, the amount is $44,152 (26 [unpaid overtime hours per week] x 2.03 [years of employment] x 51 [number of full weeks worked per year] $ $10.93 [regular rate of pay] x 1.5).  Additionally, there were some survey respondents who were paid for *more* than 40 hours per week (*see, e.g.*, Ex. C, Table 2 [JianJun Tao was paid for 45 hours per week]).  The overtime hours for these respondents were compensated at their regular rate.  In those cases, the overtime hours that were paid at a regular rate were multiplied by 33.3% since only overtime premium was due for those additional paid hours per week over 40 hours.  (Ex. C. Table 2 n.5.)  This adjustment results in only the overtime premium of 50% being computed for those paid hours per week over 40.  (*Id*.)  Thus, if an individual was paid for 45 hours of work per week paid, this only affects the additional 5 hours per week.  (*Id*.)  The amounts for each surveyed class member were added together and then divided by 24 to arrive at the average amount per surveyed class member of $30,468.  (Ex. C, Table 3.)

19.  *Unpaid Overtime Pay – FLSA Class.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using accepted economic principles and methods, we determined that the average amount of unpaid overtime pay owed to each class member is $30,468.  (Ex. C ¶ 17A & Tables 2-3.) The method for calculating overtime pay is described fully in paragraph 18, above.  According to Plaintiffs' counsel, the amount of liquidated damages due to the 59 FLSA Plaintiffs is equivalent to the unpaid overtime wages do to the FLSA Plaintiffs.  Therefore, the total amount of liquidated damages due to the FLSA Plaintiffs is $1,797,612.  (*Id*.)  The calculation to derive this value is:  59 x $30,468.

20.  *Unpaid Tip Compensation.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using accepted economic principles and methods, we determined that the average amount of unpaid tip compensation owed to each class member is $1,400.  (Ex. C ¶¶ 8-10 & Tables 2, 3.)   The total amount of unpaid tip compensation due to the class of 127 members is $177,757. (Ex. C ¶ 14 & Table 6; *see* ¶¶ 7-10, above, for description of calculation.)  The unpaid tip compensation was

computed from the survey responses.  The survey participants were asked about the average tip they received for a massage, whether their employer withheld a portion of the tip and what percentage of tips were cash versus credit card payments.  The most common response was the 20 percent of their credit card tips were withheld.  None of the survey respondents stated that their cash tips were withheld.  It was also noted by the respondents that the practice of withholding portions of credit card tips ceased in approximately November 2010.  The formula for computing the amount of tips withheld is: average tip x massages per day x number of days worked when tips were withheld x percentage of tips paid by credit card x percentage of tip withheld.  (Ex. C, Table 2 n.10.)  Using the same example for Shuangtian Wang, the amount is $517 ($3 [average tip] x 6.5 [massages per day] x 530 [number of days worked when tips were withheld] x 25% [percentage of tips paid by credit card] x 20% [percentage of tip withheld]).

21.     All interest computations utilize the "midpoint formula" for computing simple interest.  This formula accurately computes interest assuming that damages accrued evenly over the period.  The first step is to determine the midpoint of the period.  The second step is to multiply the number of years from the midpoint of the period to the end of the period times the damages times the specified interest rate.  In other words, the formula is: Years from Midpoint of Period to End of Period x Damages x Interest Rate.  The interest rate utilized for the computations is 10 percent.  The End of the Period per Plaintiffs' counsel is June 14, 2012.  The total interest due on the damages for unpaid minimum wages, unpaid overtime, and unpaid tips is $1,203,012.  (Ex. C ¶¶ 11, 15 & Tables 4 & 7.)

22.     *Failure to Provide Wage Statements.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using accepted economic principles and methods, we determined the statutory damages due to the class as a result of Defendants' failure to provide wage statements.  Using the statutory damages outlined in the Labor Code, the amount due the class was $50 for the first pay period violation and $100 for subsequent pay period violations.  The period for damages was one year from the date of filing the complaint through the present.  The amount of damages was capped at $4,000 per class member.  The average amount of statutory damages for wage statement

violations is $2,560 per class member.  (Ex. C, Table 5B.)   For example, for the first respondent on Exhibit C, Table 5B, Shuangtian Wang, the total penalty for failure to provide wage statements is capped at $4,000.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $50 (penalty for first pay period), plus (2) $5,100 (51 pay periods x $100 (the penalty for each subsequent pay period)), which totals $5,150.  Thus, the amount used was the $4,000 cap amount.  The total amount of statutory damages due to the class of 127 members is $325,173.  (Ex. C ¶¶ 12, 17 & Tables 5B, 8B.)

23.    *Waiting Time Penalties.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using accepted economic principles and methods, we determined the waiting time penalties due to that portion of the class that is no longer working for Defendants.  The survey data indicated that 46% of class members are currently employed by and 54% are no longer working for Defendants.  Using the pay rate most often cited by the survey respondents -- $11/hour -- for the period following the training period (*see* paragraph 12, above) and the statutory penalty rate (per Cal. Labor Code § 203) of 30 days' regular wages, the total amount of waiting time penalties due to that percentage of the class that is no longer working for Defendants is $181,051.  This amount was derived by taking 54% (the projected percentage of class members no longer working for Defendants) of the total of $11 per hour x 8 hours per day x 30 days x the number of class members (127 class members).  The calculation is:  54% (11 x 8 x 30 x 127).  (Ex. C ¶ 17 & Table 8B.)

24.    *Private Attorney General Act (PAGA) Penalties.*  Based upon the survey data (*see* Ex. C ¶ 8 & Table 1), and using accepted economic principles and methods, we determined the penalties due to the class under the Private Attorney General Act.  We used the penalties outlined in the Labor Code as follows:

(1) for failure to pay overtime, $50 for the first pay period and $100 for subsequent pay periods for the period of one year from the date of filing the complaint through April 2, 2012 (the original first day of trial).  For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for failure to pay overtime is $5,150.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $50 (penalty for

8

first pay period), plus (2) $5,100 (51 pay periods x $100 (the penalty for each subsequent pay period)).

(2) for the failure to pay minimum wage, $50 for the first pay period and $100 for subsequent pay periods for the period of one year from the date of filing the complaint through April 2, 2012. For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for failure to pay minimum wage is $5,150.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $50 (penalty for first pay period), plus (2) $5,100 (51 pay periods x $100 (the penalty for each subsequent pay period)).

(3) for the failure to provide meal periods, $50 for the first pay period and $100 for subsequent pay periods for the period of one year from the date of filing the complaint through April 2, 2012.  For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for failure to provide meal periods is $5,150.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $50 (penalty for first pay period), plus (2) $5,100 (51 pay periods x $100 (the penalty for each subsequent pay period)).

(4) for the failure to provide wage statements, $50 for the first pay period and $100 for subsequent pay periods for the period of one year from the date of filing the complaint through April 2, 2012.  For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for failure to provide wage statements is $5,150.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $50 (penalty for first pay period), plus (2) $5,100 (51 pay periods x $100 (the penalty for each subsequent pay period)).

(5) for the failure to reimburse expenses, $100 for the first pay period and $200 for subsequent pay periods for the period of one year from the date of filing the complaint through April 2, 2012. For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for to failure reimburse expenses is $10,300.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $100 (penalty for first pay period), plus (2) $10,200 (51 pay periods x $200 (the penalty for each subsequent pay period)).

(6) for the failure to pay tips, $100 for the first pay period and $200 for subsequent pay

periods for the period of one year from the date of filing the complaint through April 2, 2012.  For example, for the first respondent on Exhibit C, Table 5A, Shuangtian Wang, the total penalty for failure to pay tips is $10,300.  Mr. Wang worked a total of 52 pay periods since March 22, 2009.  As such, the penalty is calculated as follows:  (1) $100 (penalty for first pay period), plus (2) $10,200 (51 pay periods x $200 (the penalty for each subsequent pay period)).  The overall PAGA penalties are:

|   |   |   |
|---|---|---|
| a. | For failure to pay overtime: | $411,956 |
| b. | For failure to pay minimum wage: | $312,738 |
| c. | For failure to provide meal periods: | $329,406 |
| d. | For the failure to provide wage statements: | $518,848 |
| e. | For the failure to reimburse expenses: | $969,963 |
| f. | For the conversion of tips: | $740,833 |
|   | **Total Penalties Due Under PAGA** | **$ 3,283,744** |

(Ex. C ¶¶ 12, 16 & Tables 5A, 8A.)

25.     *Individual Plaintiff Damages.*  Based upon the testimony of the five named Plaintiffs (*see* declarations of Plaintiffs Fang Dai, Guifu Li, Lin Cui, Meng Yang, and Zhong Yu [Dkt. 506-3 through 506-7]), and using accepted economic principles and methods, we determined the named Plaintiffs' damages as follows:

     a.  Damages for failure to provide meal breaks for each named Plaintiff were determined as follows:  Each of the Plaintiffs worked over five hours for each day they worked.  Each Plaintiff was never provided an off-duty meal break.  Under the California Labor Code, each Plaintiff is entitled to one hour of pay for each day in which a meal break was not provided.  Accordingly, each Plaintiff is entitled to the following amount of damages for meal break violations:

          i.  Guifu Li's damages are $10,941 (worked 849 days for at least 10-11 hours per day at a rate of $9 per hour for the first 24 days and an average of $13 per hour for the remaining 825 days).  (*See* Dkt. 506-4 ¶¶ 3, 6-7.)

ii. Meng Yang's damages are $2,398.50 (worked 194 days for at least 10-11 hours per day at a rate of $9 per hour for the first 20 days and an average of $12.75 per hour for the remaining 174 days).  (*See* Dkt. 506-6 ¶¶ 3, 6-7.)

iii. Fang Dai's damages are $216 (worked 24 days for at least 10-11 hours per day at a rate of $9 per hour).  (*See* Dkt. 506-3 ¶¶ 3, 6-7.)

iv. Lin Cui's damages are $2,025 (worked 143 days for at least 10-11 hours per day at a rate of $10 per hour for the first 24 days and an average of $15 per hour for the remaining 119 days).  (*See* Dkt. 506-5 ¶¶ 3, 6-7.)

v. Zhong Yu's damages are $1,185 (worked 87 days for at least 10-11 hours per day at a rate of $9 per hour for the first 20 days and an average of $15 per hour for the remaining 67 days).  (*See* Dkt. 506-7 ¶¶ 3, 6-7.)

b. Damages for each named Plaintiff for unlawful business expenses Plaintiffs were required to incur as reported by them in their declarations are as follows:

i. Guifu Li's damages are $8,680.60.  (*See* Dkt. 506-4 ¶ 11.)

ii. Meng Yang's damages are $1,080.60.  (*See* Dkt. 506-6 ¶ 11.)

iii. Fang Dai's damages are $1,239.25.  (*See* Dkt. 506-3 ¶ 11.)

iv. Lin Cui's damages are $1,230.  (*See* Dkt. 506-5 ¶ 11.)

v. Zhong Yu's damages are $573.88.  (*See* Dkt. 506-7 ¶ 11.)

c. Restitution for tuition amounts paid by each named Plaintiff as reported by them in their declarations are as follows:

i. Guifu Li paid a total amount of $3,850 in tuition.  (*See* Dkt. 506-4 ¶ 4.)

ii. Meng Yang paid a total amount of $4,000 in tuition.  (*See* Dkt. 506-6 ¶ 4.)

iii. Fang Dai paid a total amount of $1,315 in tuition.  (*See* Dkt. 506-3 ¶ 4.)

iv. Lin Cui paid a total amount of $2,300 in tuition.  (*See* Dkt. 506-5 ¶ 4.)

v. Zhong Yu paid a total amount of $2,330 in tuition.  (*See* Dkt. 506-7 ¶ 4.)

//

//

11

26.    The total damages are as follows:

**DAMAGES, INTEREST & PENALTIES**

| | |
|---|---|
| Damages for Unpaid Minimum Wages | $415,190 |
| Damages for Unpaid Minimum Wages (liquidated damages) | $415,190 |
| Damages for Unpaid Overtime Pay | $3,869,405 |
| Damages for Unpaid Overtime Pay – FLSA Class Only (liquidated damages) | $1,797,612 |
| Damages for Unpaid Tip Compensation | $177,757 |
| Interest on Unpaid Minimum Wages | $111,529 |
| Interest on Unpaid Overtime | $1,040,285 |
| Interest on Unpaid Tips | $51,199 |
| Penalties for Failure to Provide Wage Statements | $325,173 |
| Penalties for Waiting Time | $181,051 |
| **TOTAL** | **$8,384,391** |

**PAGA PENALTIES**

| | |
|---|---|
| For failure to pay overtime | $411,956 |
| For failure to pay minimum wage | $312,738 |
| For failure to provide meal periods | $329,406 |
| For the failure to provide wage statements | $518,848 |
| For the failure to reimburse expenses | $969,963 |
| For the conversion of tips | $740,833 |
| **TOTAL:** | **$3,283,744** |

**INDIVIDUAL PLAINTIFFS DAMAGES**

Failure to Provide Meal Breaks

| | |
|---|---|
| • Guifu Li | $10,941 |
| • Meng Yang | $2,398.50 |
| • Fang Dai | $216 |
| • Lin Cui | $2,025 |
| • Zhong Yu | $1,185 |
| **TOTAL for Failure to Provide Meal Breaks:** | **$16,765.50** |

12

1

Unlawful Business Expenses

| | | |
|---|---|---:|
| • | Guifu Li | $8,680.60 |
| • | Meng Yang | $1,080.60 |
| • | Fang Dai | $1,239.25 |
| • | Lin Cui | $1,230 |
| • | Zhong Yu | $573.88 |

**TOTAL for Unlawful Business Expenses:** **$12,804.33**

Restitution for Tuition Amounts

| | | |
|---|---|---:|
| • | Guifu Li | $3,850 |
| • | Meng Yang | $4,000 |
| • | Fang Dai | $1,315 |
| • | Lin Cui | $2,300 |
| • | Zhong Yu | $2,330 |

**TOTAL for Restitution for Tuition Amounts:** **$13,795**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of June, 2012, in San Francisco, California.

JEFFREY S. PETERSEN

Additional Plaintiffs' Counsel:

Shaana A. Rahman
(Shaana@RahmanLawSF.com)
RAHMAN LAW PC
369 Pine Street, Suite 600
San Francisco, Calif. 94104
Telephone:  (415) 956-9245
Facsimile:   (415) 956-9246

13

# EXHIBIT A

# JEFFREY S. PETERSEN

Allman & Petersen Economics, LLC                                    Phone: (415) 433-7020
230 California Street, Suite 602                                        FAX: (415) 433-7036
San Francisco, CA 94111                                E-mail: jeff@allmaneconomics.com

## EXPERIENCE

2003 – present      ***Partner***
                    Allman & Petersen Economics, LLC
                    San Francisco, California

1998 – 2003         ***Senior Economist***
                    U.S. Government Accountability Office (formerly the General Accounting Office)
                    San Francisco, California

1999 – 2001         ***Economics Instructor***
                    St. Mary's College
                    Moraga, CA

1999 – 2001         ***Economics Instructor***
                    Golden Gate University
                    San Francisco, California

1995 – 1998         ***Postdoctoral Fellow***
                    University of California, Berkeley

1990 – 1995         ***Research and Teaching Assistant***
                    University of Utah
                    Salt Lake City, Utah

## EDUCATION

1996                Postdoctoral Training Program in Health Economics
                    University of California, Berkeley

1995                Ph.D. in Economics, University of Utah

1989                B.A. in Economics, San Jose State University

## PUBLICATIONS

***Books***

"Carve-outs" in Workers' Compensation: An Analysis of the Experience in the California
        Construction Industry, W.E. Upjohn Institute for Employment Research, Kalamazoo, MI
        2003 (co-authored with David Levine, Frank Neuhauser, Richard Reuben, and Christian
        Etcheverria).

*Portable Pensions for Casual Labor Markets: Lessons from the Operating Engineers Central Pension Fund*, Quorum Books, Westport, CT, 1996 (co-authored with Teresa Ghilarducci, Garth Mangum, and Peter Philips).

### *Journal Articles*

"International Responses to an Aging Labor Force," *Work Options for Mature Americans*. Teresa Ghilarducci and John Turner eds., Notre Dame, Indiana: University of Notre Dame Press, 2005. (co-authored with Charles Jeszeck, Anthony Defrank, Katherine Leavitt, Janice Peterson, Yunsian Tai, and Howard Wial).

"Benefits vs. Wages: How Prevailing Wage Laws Affect the Mix and Magnitude of Compensation to Construction Workers," in *The Economics of Prevailing Wage Laws,* Peter Philips and Hamid Azari eds., Ashgate Publishing, 2005, (co-authored with Erin Godtland).

"Private and Public Sector Employment Policies to Extend the Labor Force Participation of Older Workers," *Proceedings of the 55th Annual Industrial Relations Research Association Annual Conference, 2003.*

"Carve-Outs from the Workers Compensation System," *Journal of Policy Analysis and Management*, 2002, Volume 21, No. 3, (co-authored with David Levine and Frank Neuhauser).

"Health Care and Pension Benefits for Construction Workers: The Role of Prevailing Wage Laws," *Industrial Relations*, 2000, Volume 39, No. 2.

"Return to Economic Productivity Following Acute Traumatic Injury: The Influence of Financial, Physical, and Psychosocial Factors," *Proceedings of the American Association for the Surgery of Trauma Fifty-Ninth Annual Meeting,*1999, (co-authored with Lara Papadakis, Diane Morabito, Herb Ochitill, Alicia Bocellari, and Robert Mackersie).

"A Comparison of Health Outcomes Among Older Construction and Blue-Collar Employees in the United States," *American Journal of Industrial Medicine*, 1998, Volume 34, No. 3, (co-authored with Craig Zwerling).

### *Selected General Accounting Office Reports*

"Older Workers: Policies of Other Nations to Increase Labor Force Participation,"
GAO-03-307, Feb. 2003

"Older Workers: Demographic Changes Pose Challenges for Employers and Workers,"
GAO-01-85, Nov. 2001

"Characteristics of Persons in Labor Force Without Pension Coverage,"
GAO/HEHS-00-131, Aug. 2000

"Social Security Reform: Implications of Raising the Retirement Age,"
GAO/HEHS-99-112, Aug. 1999

*Professional Journal Reviews*

     Industrial Relations (University of California, Berkeley)
     Perspectives (peer-reviewed section of the Social Security Bulletin)

## PRESENTATIONS

"Policies to Extend the Labor Force Participation of Older Workers" – Industrial Relations Research Association Section of the Allied Social Sciences Association Annual Meeting, Washington, DC, Jan. 2003.

Discussant for the panel "The Population Age 50-70 -- Past Trends and Future Projections" at the National Academy of Social Insurance conference on the Implications of an Aging Workforce for Income Security and Employee Benefits, Washington, D.C., Nov. 2001

"Raising the Eligibility Ages for Social Security Benefits: Work and Health Issues Associated with this Policy Change" - School of Public Policy, University of California, Los Angeles, Jan. 2001

"The Labor Market for Older Workers" - Bay Area Labor Economists Fall Workshop, Public Policy Institute of California, San Francisco, CA, Nov. 2000

"Raising the Eligibility Ages for Social Security Benefits: An Analysis of the Policy Implications"
     - Association for Public Policy Analysis and Management Annual Research Conference, New York, NY, Oct. 1998.

"Carving Out Construction Employees from the Workers Compensation System in California: Putting Theory into Practice"
     - Industrial Relations Research Association Section of the Allied Social Sciences Association Annual Meeting, Chicago, IL, Jan. 1998
     - National Occupational Injury Research Symposium, National Institute of Occupational Safety and Health, Morgantown, WV, Oct. 1997

"Return to Work Following Acute Traumatic Injury"
     - American Association for the Surgery of Trauma Annual Meeting, Boston, MA Sept. 1999
     - National Occupational Injury Research Symposium, National Institute of Occupational Safety and Health, Morgantown, WV, Oct. 1997

"Health Care and Pension Benefits for Construction Workers: The Role of Prevailing Wage Laws"
     - Health Economics Research Organization Section of the Allied Social Sciences Association Annual Meetings, New Orleans, LA, Jan. 1997

## HONORS

National Research Service Award, Public Health Postdoctoral Fellowship, U.S. Department
     of Health and Human Services     1995-1997

Outstanding Scholar Athlete Honor Roll, San Jose State University     1988-1989

NCAA Division I Tennis Team, San Jose State University     1987-1989

## PROFESSIONAL ORGANIZATIONS

American Economic Association

National Association of Forensic Economics

American Academy of Economic and Financial Experts

# EXHIBIT B

# PHILLIP H. ALLMAN III

**ADDRESS**

230 California Street, Suite 602
San Francisco, CA 94111
(415) 433-7020

**EDUCATION**

Doctor of Philosophy, Economics - December, 1982
Michigan State University, East Lansing, MI
Specialization in Microeconomic Theory, Macroeconomic Theory, Monetary Theory,
Public Finance, Statistics, and Demography.

Master of Science, Economics - June, 1974
Arizona State University, Tempe, AZ
Specialization in Labor Economics, Econometrics, and Public Finance.

Bachelor of Arts, Economics - June, 1968
Lake Forest College, Lake Forest, IL

Omicron Delta Epsilon - Michigan State University
International Economics Honor Society (upper 20% of graduate class.)

Beta Gamma Sigma - Arizona State University
Business Honor Society (upper 10% of graduate class.)

Athletic and Scholastic Honors - Lake Forest College

**EMPLOYMENT
HISTORY**

Owner/Principal - 1984 to Present
Allman & Petersen Economics, LLC, San Francisco, CA
* Prepared economic reports and testified as an expert witness in trials involving econom-
ic valuations.
* Provided securities analysis for Westerly Partners of Newport Beach, Silver Assets, Inc.
of Sonoma, and Coastal Capital Partners of Sonoma.
* Conducted economic analysis for the San Joaquin County Land Utilization Trust.
* Provided economic analysis to the Stockton East Water District.
* Provided economic expertise to Financial Risk Management of Modesto.
* Evaluated business loss claims for State Farm Insurance Co.
* Edited economics texts for Harper - Row Publishing Co.

Adjunct Lecturer in Economics - January, 1995 to 1998
Golden Gate University, San Francisco, CA
Classes taught include Macroeconomic Analysis and Financial Markets and Institutions in
the Master's Degree Program & Introductory Microeconomic Analysis.

Economics Professor -1979 to 1986
University of the Pacific, Stockton, CA
Courses taught were Introductory Micro- and Macro-economics, Intermediate Macroeco-
nomics, Money and Banking, Public Finance, and Managerial Economics.

Economics Instructor - 1978 to 1979
Michigan State University, East Lansing, MI
Taught Intermediate Macroeconomics.

EMPLOYMENT
HISTORY
(Continued)

Economics Analyst - 1977
State of Michigan Health Maintenance Department, Constructed the Medicaid cost index for the State of Michigan.

Graduate Assistant - 1974 to 1978
Michigan State University, East Lansing, MI
Tutelage of economics students.

Economic Research Associate 1973 to 1974
Arizona State Department of Business and Economic Research
Conducted statistical study of the Hotel-Motel industry.

Community Development Assistant - 1972 to 1973
Department of Economic Planning and Development, State of Arizona
Researched and wrote an economic analysis for three rural communities in Arizona.

Athletic Director - 1971 to 1972
Arizona Boys Ranch, Boys Ranch, AZ

Public School Teacher - 1968 to 1971
Kaneohe, HI, and Deerfield, IL

PROFESSIONAL
ACTIVITY

PUBLICATIONS:
* An Econometric Model of the Fiscal Impact of Urbanization on Stockton and San Joaquin County, Land Utilization Trust of San Joaquin County, Stockton, CA, July, 1994.
* "Choosing a Discount Rate in a Pension Valuation," Family Advocate, *American Bar Association*, Summer, 1994, Vol. 17, No. 1, p. 11.
* "Four Economic Issues in Pension Valuations," Journal of Legal Economics, July, 1993, Volume 3, No. 2.
* "Agriculture Provides a Stable Economic Base for San Joaquin County," Central Valley Harvester, Stockton, CA, Fall 1993, p. 7.
* "Three Economic Issues in Pension Valuation," Family Advocate, *American Bar Association*, Summer, 1993, Vol. 16, No. 1, p. 12.
* "Gross Value of Farmland is Critical to County Welfare," Central Valley Harvester, Stockton, CA, Summer 1993, p. 6.
* "The Value of Agriculture to San Joaquin County," Central Valley Harvester, Stockton, CA, Spring 1993, p. 2.
* "Wage Growth and Interest Rates Again: A Regression Model," Journal of Forensic Economics, Volume 6, No. 2, Spring/Summer, 1993, p. 175.
* The Economic Structure of San Joaquin County and the Impact of Agricultural Land Displacement on County Income, Land Utilization Trust of San Joaquin County, Stockton, CA, February, 1993.
* A Neoclassical Model of the Tax-Exempt Bond Market, Doctoral Dissertation, Michigan State University, East Lansing, MI, 1982.

PRESENTATIONS:
* "The Subprime Lending Crisis and the U.S. Economy," CNBC Asia, July, 2007.
* "The Outlook for the U.S. Economy," CNBC Asia, September, 2004.
* "Fiscal Impact of Urbanization in San Joaquin County," San Joaquin County Board of Supervisors, August, 1994.
* "Direct and Cross-Examination of an Economic Expert," Economic Damages Seminar - Maintaining Recovery under Proposition 51, Alameda/Contra Costa Trial Lawyers Association, April, 1995
* "Economics, Not a Dismal Science," The 50th Annual Belli Seminar, July 31, 1993.

**PROFESSIONAL ACTIVITY (Continued)**

PRESENTATIONS (continued):
* "Impact of Farmland Displacement in San Joaquin County," San Joaquin County Board of Supervisors, March, 1993.
* "Dissecting Pension Valuations in Marital Dissolutions"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Capitalizing on the Deposition of the Opposing Economist"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Evaluation of Federal Reserve Monetary Policy Objectives"
Delivered to Center for Integrated Studies, UOP, 1983.
* "The Economy: Influence on Investment Decisions"
Keynote address of San Joaquin County 1982 Financial Fair.
* "Reaganomics: Its Pitfalls"
Delivered to UOP Economics Department, 1982.

REFEREE: Journal of Macroeconomics, Journal of Forensic Economics

CONFERENCES:
Western Economic Association Meeting - 1996
* Chair to Session, "Macroeconomic Analysis."
* Chair to Session, "Asset Pricing."
* Discussant to Paper, "Institutional Investors and Developing Country Stock Pricing."
* Discussant to Paper, "Impact of Macroeconomic Variables on Stock Prices."
* Discussant to Paper, "Aggregate Shocks, Real Activity, Inflation, and Stock Returns."

Western Economic Association Meeting - 1995
* Chair to Session, "Taxes, Benefits, and Retirement."
* Discussant to Paper, "A Couple's Decision to Elect Survivor's Benefits."
* Discussant to Paper, "Tax Rates, Employee Benefits, and Health Care Costs."

Western Economic Association Meeting - 1993
* Chair to Session, "Issues in the Economics of Publicly-Provided Goods."
* Presented the Paper, "Three Economic Issues in Pension Valuations."
* Presented the Paper, "Valuation of Displaced Agricultural Land to Residential Use."
* Discussant to Paper, "Who Should Go To College and What Should They Pay."
* Discussant to Paper, "Discount Rate for Public Sector Investments."

Western Economic Association Meeting - 1992
* Discussant to Session "Macroeconomic Policy I."
* Presented the Paper "Wage Growth and Interest Rates Again: A Regression Model."

American Economic Association Meeting - 1982
* Discussant to Paper "The Effect of the Reserve Clause on Parity in Professional Base-ball."

# EXHIBIT C

# Allman & Petersen Economics, LLC

| | |
|---|---|
| 230 California Street, Suite 602 | Phillip H. Allman, Ph.D. |
| San Francisco, California 94111 | Jeffrey S. Petersen, Ph.D. |
| (415) 433-7020 | |
| (415) 433-7036 (FAX) | www.allmaneconomics.com |

Federal Rule 26(a)(2)(B)
REPORT OF PLAINTIFFS' ECONOMIC EXPERT
Guifi Li et al. v. A Perfect Day Franchise Inc. et al.
June, 2012

1.  The economists who worked on this report are Phillip H. Allman, Ph.D. and Jeffrey S. Petersen, Ph.D.

2.  Dr. Allman's and Dr. Petersen's resumes are attached to this report.  The fee schedule for their work is attached to this report.  The list of trials and depositions in which they have testified in the last four years is attached to this report.  These items are all attached as Attachment 1 to this report.

3.  Dr. Allman and Dr. Petersen were retained by plaintiffs' counsel to conduct an analysis of several categories of payments potentially due to the class titled "Guifi Li et al." – here-to-fore "the class members."  The following potential payments due the class members from their employer (A Perfect Day) were analyzed:

- unpaid minimum and overtime wages
- tips paid to class members that were withheld by the employer
- work expenses paid by class members but not reimbursed by the employer
- meal and break period payments for not receiving the legally required meal and break periods while employed

3A. The following documents were reviewed:

- Order granting in part denying in part motions for class certification collective action
- Second amended complaint for damages and demand for jury trial
- information from the California Department of Industrial Relations on how to calculate the regular rate of pay
- information from the California Department of Industrial Relations on the definition of meal and rest periods and payments due employees if they are not provided

4.  Dr. Petersen instructed plaintiffs' counsel to generate two lists of the of class members – (1) all class members and (2) all class members whose phone numbers were verified by plaintiffs' counsel's interpreter.  Dr. Petersen also instructed plaintiffs' counsel to inform the class members who were reached on the phone that they may be contacted to participate in a survey regarding this legal case.  The spreadsheet sent by plaintiffs' counsel listed 124 class members and 63 verified phone numbers.  Dr. Allman determined that a random sample of 40 class

members should be drawn from the 63 verified phone numbers.  Dr. Petersen listed the class members with verified phone numbers as 1-63 and randomly generated 40 numbers within the range of 1-63.  The list of random numbers was used to identify the class members would be surveyed.

5.  Dr. Petersen developed a survey (a copy of which is attached as Attachment 2 to this report) to question the randomly selected class members on the following categories:

- background information and training
- hours worked, pay rate and massages performed
- tips
- work expenses
- meal and break periods

6.  Plaintiffs' counsel informed Dr. Petersen that the class members would likely only be able to communicate in Mandarin.  Dr. Petersen hired Minghui Anderson to conduct the survey.  Ms. Anderson is a Mandarin instructor in Alameda, California.  She has previously worked for the U.S. Census Bureau as a field clerk and for marketing firms in Taiwan where she participated in survey design and implementation.

7.  Dr. Petersen provided Ms. Anderson with the survey questions and the names and phone numbers of the class members to be surveyed.  Ms. Anderson was able to get 24 of the class members to complete the survey.  The following is a list of her interaction with the other 16 class members with whom she was not able to complete the survey:

- 8 were contacted on the phone and refused to participate
- 1 phone number was invalid
- 1 was out of the country and could not be contacted
- 3 never returned phone calls after several messages were left
- 1 did not have voice mail set up on their phone and was never reached after several attempts
- 2 agreed to participate in the survey and a time was scheduled, however their phones were turned off during the scheduled time and she was never able to reach these persons again

7A.  Ten tables are attached.  They were all prepared by Dr. Petersen.  Subsequent to our report dated May 12, 2012, we were informed by plaintiffs' counsel that the number of class members has changed from 126 to 127.  The attached tables are based on 127 class members.

8.  Table 1 contains the data collected from the survey.  Eleven of the 24 survey respondents (46 percent) are currently employed by A Perfect Day.  The employment location of the survey respondents is: 10 at Santa Clara (42 percent), 9 at Millbrae (38 percent) and 5 at Fremont (20 percent).  The average employment period of the survey respondents is 2.4 years.

9.  Table 2 computes the unpaid minimum wages, unpaid overtime and tips withheld due the surveyed class members.

10.  Table 3 is a summary of the categories computed in Table 2 and includes a total for all categories.  It was prepared for the ease of presentation of payments due class members.  This table also contains the averages for each category for the survey participants.  These averages were utilized to project the amounts due the class members who were not surveyed.

11.  Table 4 is the interest due the surveyed class members for the categories computed in Table 3.  Simple interest was computed at the rate of 10 percent per year.  Interest is computed as of June 14, 2012.

12.  Table 5A computes the penalties due the surveyed class members under the Private Attorney General's Act (PAGA).  Table 5B computes the penalties due the surveyed class members for failure to provide wage statements under statutory law.  Plaintiffs' counsel provided Dr. Petersen with the applicable penalties and how they are to be calculated.

13.  Dr. Allman has determined that the averages of payments due for the surveyed class members in Tables 3, 4, 5A and 5B can be applied to the non-surveyed class.  These determinations are based on standard statistical methods which can be examined in statistics textbooks used in college courses in business and economic statistics.  Thus, the averages for the surveyed class members were multiplied by the number of non-surveyed class members to arrive at the amount due the non-surveyed class members.

14.  The attached Table 6 shows the payments due the entire class for unpaid minimum wages, unpaid overtime and tips withheld.  The totals are as follows:

| | |
|---|---|
| Unpaid minimum Wages | $   415,190 |
| Unpaid Overtime Wages | $ 3,869,405 |
| Tips Withheld | $   177,757 |
| **Total for All Categories** | **$ 4,462,352** |

15.  The attached Table 7 shows the interest payments due the entire class for unpaid minimum wages, unpaid overtime and tips withheld.  The totals are as follows:

| | |
|---|---|
| Interest on Unpaid minimum Wages | $   111,529 |
| Interest on Unpaid Overtime Wages | $ 1,040,285 |
| Interest on Tips Withheld | $    51,199 |
| **Total Interest for All Categories** | **$ 1,203,012** |

16.  The attached Table 8A shows the penalties due the entire class under PAGA.  The total penalties under PAGA are as follows:

| | |
|---|---|
| Failure to Pay Overtime | $   411,956 |
| Failure to Pay Minimum Wage | $   312,738 |
| Failure to Provide Meal Period | $   329,406 |
| Failure to Provide Wage Statements | $   518,848 |
| Failure to Reimburse Work Expenses | $   969,963 |
| Tip Conversion | $   740,833 |
| **Total Penalties Due Under PAGA** | **$ 3,283,744** |

17.  The attached Table 8B shows the statutory penalties due.  The total statutory penalties due are as follows:

| | |
|---|---|
| Failure to Provide Wage Statements | $   325,173 |
| Waiting Time | $   181,051 |
| **Total Statutory Penalties Due** | **$   506,224** |

17A.  Subsequent to our report dated May 12, 2012, plaintiff's counsel has informed us that there are 59 FLSA opt-in plaintiffs who are due unpaid overtime wages.  Based upon the survey data as noted in Table 2, the average amount of unpaid overtime wages owed to each class member is $30,468 (see Table 3).  Thus, the total amount of unpaid overtime wages due to the 59 FLSA opt-in plaintiffs is **$1,797,612** ($30,468 x 59).  According to plaintiff's counsel, the amount of liquidated damages due the 59 FLSA opt-in class members is equivalent to the unpaid overtime wages, i.e. **$1,797,612**.

17B.  According to plaintiffs' counsel, the amount of liquidated damages due the class of 127 plaintiffs is equivalent to the unpaid minimum wages, i.e. **$415,190**.

18.  Dr. Petersen and Dr. Allman are prepared to testify to these projections in deposition or at trial if called upon to do so.

19.  The projections are based on the cited references and sources.  Thus, these figures are subject to change if the parameters on which they were based change.


_____
Phillip H. Allman, Ph.D.


_____
Jeffrey S. Petersen, Ph.D.

# Attachment 1

# PHILLIP H. ALLMAN III

**ADDRESS**

230 California Street, Suite 602
San Francisco, CA 94111
(415) 433-7020

**EDUCATION**

Doctor of Philosophy, Economics - December, 1982
Michigan State University, East Lansing, MI
Specialization in Microeconomic Theory, Macroeconomic Theory, Monetary Theory,
Public Finance, Statistics, and Demography.

Master of Science, Economics - June, 1974
Arizona State University, Tempe, AZ
Specialization in Labor Economics, Econometrics, and Public Finance.

Bachelor of Arts, Economics - June, 1968
Lake Forest College, Lake Forest, IL

Omicron Delta Epsilon - Michigan State University
International Economics Honor Society (upper 20% of graduate class.)

Beta Gamma Sigma - Arizona State University
Business Honor Society (upper 10% of graduate class.)

Athletic and Scholastic Honors - Lake Forest College

**EMPLOYMENT HISTORY**

Owner/Principal - 1984 to Present
Allman & Petersen Economics, LLC, San Francisco, CA
* Prepared economic reports and testified as an expert witness in trials involving econom-
ic valuations.
* Provided securities analysis for Westerly Partners of Newport Beach, Silver Assets, Inc.
of Sonoma, and Coastal Capital Partners of Sonoma.
* Conducted economic analysis for the San Joaquin County Land Utilization Trust.
* Provided economic analysis to the Stockton East Water District.
* Provided economic expertise to Financial Risk Management of Modesto.
* Evaluated business loss claims for State Farm Insurance Co.
* Edited economics texts for Harper - Row Publishing Co.

Adjunct Lecturer in Economics - January, 1995 to 1998
Golden Gate University, San Francisco, CA
Classes taught include Macroeconomic Analysis and Financial Markets and Institutions in
the Master's Degree Program & Introductory Microeconomic Analysis.

Economics Professor -1979 to 1986
University of the Pacific, Stockton, CA
Courses taught were Introductory Micro- and Macro-economics, Intermediate Macroeco-
nomics, Money and Banking, Public Finance, and Managerial Economics.

Economics Instructor - 1978 to 1979
Michigan State University, East Lansing, MI
Taught Intermediate Macroeconomics.

**EMPLOYMENT HISTORY (Continued)**

Economics Analyst - 1977
State of Michigan Health Maintenance Department, Constructed the Medicaid cost index for the State of Michigan.

Graduate Assistant - 1974 to 1978
Michigan State University, East Lansing, MI
Tutelage of economics students.

Economic Research Associate 1973 to 1974
Arizona State Department of Business and Economic Research
Conducted statistical study of the Hotel-Motel industry.

Community Development Assistant - 1972 to 1973
Department of Economic Planning and Development, State of Arizona
Researched and wrote an economic analysis for three rural communities in Arizona.

Athletic Director - 1971 to 1972
Arizona Boys Ranch, Boys Ranch, AZ

Public School Teacher - 1968 to 1971
Kaneohe, HI, and Deerfield, IL

**PROFESSIONAL ACTIVITY**

PUBLICATIONS:
* An Econometric Model of the Fiscal Impact of Urbanization on Stockton and San Joaquin County, Land Utilization Trust of San Joaquin County, Stockton, CA, July, 1994.
* "Choosing a Discount Rate in a Pension Valuation," Family Advocate, *American Bar Association*, Summer, 1994, Vol. 17, No. 1, p. 11.
* "Four Economic Issues in Pension Valuations," Journal of Legal Economics, July, 1993, Volume 3, No. 2.
* "Agriculture Provides a Stable Economic Base for San Joaquin County," Central Valley Harvester, Stockton, CA, Fall 1993, p. 7.
* "Three Economic Issues in Pension Valuation," Family Advocate, *American Bar Association*, Summer, 1993, Vol. 16, No. 1, p. 12.
* "Gross Value of Farmland is Critical to County Welfare," Central Valley Harvester, Stockton, CA, Summer 1993, p. 6.
* "The Value of Agriculture to San Joaquin County," Central Valley Harvester, Stockton, CA, Spring 1993, p. 2.
* "Wage Growth and Interest Rates Again: A Regression Model," Journal of Forensic Economics, Volume 6, No. 2, Spring/Summer, 1993, p. 175.
* The Economic Structure of San Joaquin County and the Impact of Agricultural Land Displacement on County Income, Land Utilization Trust of San Joaquin County, Stockton, CA, February, 1993.
* A Neoclassical Model of the Tax-Exempt Bond Market, Doctoral Dissertation, Michigan State University, East Lansing, MI, 1982.

PRESENTATIONS:
* "The Subprime Lending Crisis and the U.S. Economy," CNBC Asia, July, 2007.
* "The Outlook for the U.S. Economy," CNBC Asia, September, 2004.
* "Fiscal Impact of Urbanization in San Joaquin County," San Joaquin County Board of Supervisors, August, 1994.
* "Direct and Cross-Examination of an Economic Expert," Economic Damages Seminar - Maintaining Recovery under Proposition 51, Alameda/Contra Costa Trial Lawyers Association, April, 1995
* "Economics, Not a Dismal Science," The 50th Annual Belli Seminar, July 31, 1993.

PROFESSIONAL
ACTIVITY
(Continued)

PRESENTATIONS (continued):
* "Impact of Farmland Displacement in San Joaquin County," San Joaquin County Board of Supervisors, March, 1993.
* "Dissecting Pension Valuations in Marital Dissolutions"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Capitalizing on the Deposition of the Opposing Economist"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Evaluation of Federal Reserve Monetary Policy Objectives"
Delivered to Center for Integrated Studies, UOP, 1983.
* "The Economy: Influence on Investment Decisions"
Keynote address of San Joaquin County 1982 Financial Fair.
* "Reaganomics: Its Pitfalls"
Delivered to UOP Economics Department, 1982.

REFEREE: Journal of Macroeconomics, Journal of Forensic Economics

CONFERENCES:
Western Economic Association Meeting - 1996
* Chair to Session, "Macroeconomic Analysis."
* Chair to Session, "Asset Pricing."
* Discussant to Paper, "Institutional Investors and Developing Country Stock Pricing."
* Discussant to Paper, "Impact of Macroeconomic Variables on Stock Prices."
* Discussant to Paper, "Aggregate Shocks, Real Activity, Inflation, and Stock Returns."

Western Economic Association Meeting - 1995
* Chair to Session, "Taxes, Benefits, and Retirement."
* Discussant to Paper, "A Couple's Decision to Elect Survivor's Benefits."
* Discussant to Paper, "Tax Rates, Employee Benefits, and Health Care Costs."

Western Economic Association Meeting - 1993
* Chair to Session, "Issues in the Economics of Publicly-Provided Goods."
* Presented the Paper, "Three Economic Issues in Pension Valuations."
* Presented the Paper, "Valuation of Displaced Agricultural Land to Residential Use."
* Discussant to Paper, "Who Should Go To College and What Should They Pay."
* Discussant to Paper, "Discount Rate for Public Sector Investments."

Western Economic Association Meeting - 1992
* Discussant to Session "Macroeconomic Policy I."
* Presented the Paper "Wage Growth and Interest Rates Again: A Regression Model."

American Economic Association Meeting - 1982
* Discussant to Paper "The Effect of the Reserve Clause on Parity in Professional Base-ball."

# JEFFREY S. PETERSEN

Allman & Petersen Economics, LLC                                    Phone: (415) 433-7020
230 California Street, Suite 602                                         FAX: (415) 433-7036
San Francisco, CA 94111                                    E-mail: jeff@allmaneconomics.com

## EXPERIENCE

| | |
|---|---|
| 2003 – present | ***Partner***<br>Allman & Petersen Economics, LLC<br>San Francisco, California |
| 1998 – 2003 | ***Senior Economist***<br>U.S. Government Accountability Office (formerly the General Accounting Office)<br>San Francisco, California |
| 1999 – 2001 | ***Economics Instructor***<br>St. Mary's College<br>Moraga, CA |
| 1999 – 2001 | ***Economics Instructor***<br>Golden Gate University<br>San Francisco, California |
| 1995 – 1998 | ***Postdoctoral Fellow***<br>University of California, Berkeley |
| 1990 – 1995 | ***Research and Teaching Assistant***<br>University of Utah<br>Salt Lake City, Utah |

## EDUCATION

| | |
|---|---|
| 1996 | Postdoctoral Training Program in Health Economics<br>University of California, Berkeley |
| 1995 | Ph.D. in Economics, University of Utah |
| 1989 | B.A. in Economics, San Jose State University |

## PUBLICATIONS

***Books***

  *"Carve-outs" in Workers' Compensation: An Analysis of the Experience in the California Construction Industry,* W.E. Upjohn Institute for Employment Research, Kalamazoo, MI 2003 (co-authored with David Levine, Frank Neuhauser, Richard Reuben, and Christian Etcheverria).

*Portable Pensions for Casual Labor Markets: Lessons from the Operating Engineers Central Pension Fund*, Quorum Books, Westport, CT, 1996 (co-authored with Teresa Ghilarducci, Garth Mangum, and Peter Philips).

## *Journal Articles*

"International Responses to an Aging Labor Force," *Work Options for Mature Americans*. Teresa Ghilarducci and John Turner eds., Notre Dame, Indiana: University of Notre Dame Press, 2005. (co-authored with Charles Jeszeck, Anthony Defrank, Katherine Leavitt, Janice Peterson, Yunsian Tai, and Howard Wial).

"Benefits vs. Wages: How Prevailing Wage Laws Affect the Mix and Magnitude of Compensation to Construction Workers," in *The Economics of Prevailing Wage Laws,* Peter Philips and Hamid Azari eds., Ashgate Publishing, 2005, (co-authored with Erin Godtland).

"Private and Public Sector Employment Policies to Extend the Labor Force Participation of Older Workers," *Proceedings of the 55th Annual Industrial Relations Research Association Annual Conference, 2003.*

"Carve-Outs from the Workers Compensation System," *Journal of Policy Analysis and Management*, 2002, Volume 21, No. 3, (co-authored with David Levine and Frank Neuhauser).

"Health Care and Pension Benefits for Construction Workers: The Role of Prevailing Wage Laws," *Industrial Relations*, 2000, Volume 39, No. 2.

"Return to Economic Productivity Following Acute Traumatic Injury: The Influence of Financial, Physical, and Psychosocial Factors," *Proceedings of the American Association for the Surgery of Trauma Fifty-Ninth Annual Meeting,*1999, (co-authored with Lara Papadakis, Diane Morabito, Herb Ochitill, Alicia Bocellari, and Robert Mackersie).

"A Comparison of Health Outcomes Among Older Construction and Blue-Collar Employees in the United States," *American Journal of Industrial Medicine*, 1998, Volume 34, No. 3, (co-authored with Craig Zwerling).

## *Selected General Accounting Office Reports*

"Older Workers: Policies of Other Nations to Increase Labor Force Participation,"
GAO-03-307, Feb. 2003

"Older Workers: Demographic Changes Pose Challenges for Employers and Workers,"
GAO-01-85, Nov. 2001

"Characteristics of Persons in Labor Force Without Pension Coverage,"
GAO/HEHS-00-131, Aug. 2000

"Social Security Reform: Implications of Raising the Retirement Age,"
GAO/HEHS-99-112, Aug. 1999

*Professional Journal Reviews*

Industrial Relations (University of California, Berkeley)
Perspectives (peer-reviewed section of the Social Security Bulletin)

## PRESENTATIONS

"Policies to Extend the Labor Force Participation of Older Workers" – Industrial Relations Research
Association Section of the Allied Social Sciences Association Annual Meeting, Washington, DC,
Jan. 2003.

Discussant for the panel "The Population Age 50-70 -- Past Trends and Future Projections" at the
National Academy of Social Insurance conference on the Implications of an Aging Workforce for
Income Security and Employee Benefits, Washington, D.C., Nov. 2001

"Raising the Eligibility Ages for Social Security Benefits: Work and Health Issues Associated with this
Policy Change" - School of Public Policy, University of California, Los Angeles, Jan. 2001

"The Labor Market for Older Workers" - Bay Area Labor Economists Fall Workshop, Public Policy
Institute of California, San Francisco, CA, Nov. 2000

"Raising the Eligibility Ages for Social Security Benefits: An Analysis of the Policy Implications"
- Association for Public Policy Analysis and Management Annual Research Conference, New
York, NY, Oct. 1998.

"Carving Out Construction Employees from the Workers Compensation System in California: Putting
Theory into Practice"
- Industrial Relations Research Association Section of the Allied Social Sciences Association
Annual Meeting, Chicago, IL, Jan. 1998
- National Occupational Injury Research Symposium, National Institute of Occupational Safety
and Health, Morgantown, WV, Oct. 1997

"Return to Work Following Acute Traumatic Injury"
- American Association for the Surgery of Trauma Annual Meeting, Boston, MA Sept. 1999
- National Occupational Injury Research Symposium, National Institute of Occupational Safety
and Health, Morgantown, WV, Oct. 1997

"Health Care and Pension Benefits for Construction Workers: The Role of Prevailing Wage Laws"
- Health Economics Research Organization Section of the Allied Social Sciences Association
Annual Meetings, New Orleans, LA, Jan. 1997

## HONORS

National Research Service Award, Public Health Postdoctoral Fellowship, U.S. Department
of Health and Human Services                                                          1995-1997

Outstanding Scholar Athlete Honor Roll, San Jose State University                     1988-1989

NCAA Division I Tennis Team, San Jose State University                                1987-1989

## PROFESSIONAL ORGANIZATIONS

American Economic Association

National Association of Forensic Economics

American Academy of Economic and Financial Experts

**ALLMAN & PETERSEN ECONOMICS, LLC**
Phillip H. Allman, Ph.D.
Jeffrey S. Petersen, Ph.D.

230 California Street, Suite 602 • San Francisco, CA 94111
TEL (415) 433-7020  FAX (415) 433-7036

**FEE SCHEDULE (04/11/11)**

Economic research and analysis, document review, office and                $275/hour[1]
client consultations, deposition preparation and trial preparation.

Deposition testimony                                                        $375/hour[2]

Arbitration and Trial Testimony                                             $375/hour[1]

Travel time (outside of 10 miles from San Francisco)                       $150/hour[1]

All other expenses billed at cost.

---

[1]   Bills will be submitted periodically and are due upon presentation, <u>not</u> at the conclusion of the case.
[2]   Payment for deposition testimony shall be paid in accordance with C.C.P. '2034 (i) (3)
--i.e. payment of an expert's fees for the anticipated length of a deposition shall be paid at the commencement of
his/her deposition, and any outstanding balance shall be paid within five days of receiving an itemized statement
of the expert's services.

## Trial & Arbitration Testimony of Phillip H. Allman, PhD

| Case | | | Jurisdiction | Case Number | Date |
|------|---|---|---|---|---|
| Curtis | v. | Deutche | Stanislaus | 634411 | Nov-11 |
| Lively | v. | Pick-N-Pull | | 74160-00888-1002JOG3-R | Nov-11 |
| Jones | v. | Calstar | Yolo County | P0-09-194 | Nov-11 |
| Harmon | v. | Safeway | Santa Rosa | | Oct-11 |
| Torres | v. | Fleming | Marin | CIV 1003551 | Oct-11 |
| Mayorga | v. | Biagi Brothers | Napa | 26-54399 | Sep-11 |
| Corbo | v. | New united motor | Alameda | HG09477272 | Sep-11 |
| Moore | v. | USA | Northern District, CA | CV 10-4621 SC | Sep-11 |
| Granite Expo | v. | Quan Agency | Alameda | RG 08427046 | Aug-11 |
| McDaniel | v. | Murotani | Kern county | S-1500-CV-266577 WDP | Aug-11 |
| Rayterry | v. | Kwok | San Francisco | CGC-10-500168 | Jul-11 |
| Jackson | v. | Federal Express Corp. | Central District, CA | CV10 1760 MMM (CWx) | Jul-11 |
| Schmieman | v. | Liongson | San Francisco | | Jul-11 |
| Favorita | v. | Allied Insurance | Santa Clara | 110-CV-174509 | Jun-11 |
| Burns | v. | Redwood City PD | USDC-N.O. Cal | C-08-2995JSW | Jun-11 |
| Tran | v. | United States Mineral Products | Central District, CA | EDCV10-0090 ODW-(RZX) | May-11 |
| Edwards | v. | Golden Gate Center | San Francisco | CGC-06-454919 | Apr-11 |
| Carranza | v. | Jose M.M Alvarez | San Francisco | CGC-09-484766 | Apr-11 |
| Murdock | v. | UPS | Los Angeles | | Apr-11 |
| Colby | v. | Automobile Club | Los Angeles | BC400823 | Apr-11 |
| Alvarez | v. | County of Stanislaus | Modesto | 612601 | Mar-11 |
| Campanian | v. | Cindy's Backstreet Kitchen | Santa Rosa | | Feb-11 |
| Martin | v. | Ricohs American CORP | Northern District, CA | C08-4853 EMC | Feb-11 |
| Hicks | v. | Yuen | San Francisco | 492236 | Feb-11 |
| Crandall | v. | Foster Farms | Merced | 149800 | Jan-11 |
| Coronado | v. | United Parcel Service | Central District, CA | CV 09-00737 DEW (FFMx) | Jan-11 |
| Frazier | v. | Roll International, CORP | Alameda | 1220040875 | Jan-11 |
| Arita | v. | Stockton Industrial | Alameda | RG08422425 | Dec-10 |
| Travis | v. | Bison Builders | Marin | CV 084313 | Dec-10 |
| Travis | v. | Bison Builders | Marin | CV 084313 | Nov-10 |
| Riverdale Baptist | v. | Anne Arundel county | District of Maryland | JFM 06CV2796 | Nov-10 |
| Kadir | v. | Webb | El Dorado | PC200700246 | Oct-10 |
| Dunn | v. | City of Fremont | Alameda | RG 08415820 | Oct-10 |
| Hart | v. | Storquest | Alameda | RG05236587 | Oct-10 |
| Waul | v. | State Farm Insurance | San Francisco | CGC 02-412248 | Sep-10 |
| Wells | v. | Kaiser | Santa Clara | No # found in file | Sep-10 |
| Beller | v. | Sonnen Motors | Marin | CIV083892 | Aug-10 |
| Vaynberg | v. | Value Added | Contra Costa | C08-01216 | Aug-10 |
| Lopez | v. | United Parcel Service | Northern District, CA | C-08-5396 SI | Jul-10 |
| Klass | v. | Valley Care | Alameda | RG08408707 | Jul-10 |
| Hannig | v. | Barretto | San Francisco | CGC-08-480603 | Jul-10 |
| Burkett | v. | Nonis | Stanislaus | 627489 | Jun-10 |
| Liou | v. | State of California | San Mateo | 460659 | Jun-10 |
| Pitt | v. | Santa Rosa Sweeping | Sonoma | SCV 243659 | May-10 |
| Johnson | v. | Pacific International Bearing | Alameda | HG07335830 | May-10 |
| O'Neal | v. | Blacow Auto Repair | Alameda | HG06253868 | Apr-10 |
| Lopez | v. | United Parcel Service | Northern District, CA | C-08-5396 SI | Apr-10 |
| Anzo | v. | Caltrans | San Joaquin | M84660 | Apr-10 |
| McQueen | v. | Our Savior Lutheran Church | Alameda | RG 07313276 | Apr-10 |
| Walker-Muniz | v. | Padilla | Alameda | RG 08381456 | Mar-10 |
| Lee | v. | South Bay Shuttle | Santa Clara | 106CV068998 | Mar-10 |
| Martinez | v. | Brownco Corporation | Los Angeles | KC050128G | Mar-10 |
| Carmical | v. | Nationwide Insurance Co. | Sacramento | 34-2008-00002235-CU-PA-GDS | Feb-10 |
| Smith | v. | Stein | Alameda | | Feb-10 |
| Tilley | v. | Tischenko, John Muir Health | Contra Costa | C08-0226882351 | Feb-10 |
| Smith | v. | Stein | Alameda | | Feb-10 |
| Hahn | v. | Atkar | | | Jan-10 |
| Zachariah | v. | Fassberg | San Francisco | CGC-08-472141 | Nov-09 |
| Souza | v. | Hidden Villa Ranch | Alameda | 07-CV-4996 | Nov-09 |
| Howell | v. | Bay Area Air Quality Management District | San Francisco | CGC-07-461887 | Nov-09 |
| Shah | v. | Steam & Starch Corp. | Los Angeles | BC379727 | Sep-09 |
| Marcellino | v. | Cunningham, et al. | Stanislaus | 618054 | Sep-09 |
| Boussina | v. | Kaiser | San Francisco | CGC 07466261 | Aug-09 |

| | | | | | |
|---|---|---|---|---|---|
| Farache | v. | Beattie, et al. | Santa Clara | CV-125832 | Aug-09 |
| Plancich | v. | United Parcel Service | San Bernardino | CIVRS 807326 | Aug-09 |
| Anderson | v. | State of CA | Marin | CV 021252 | Jun-09 |
| Baez | v. | Burbank Unified SchDist. | Los Angeles | 372092 | Jun-09 |
| Masters | v. | Boston Scientific | U.S. District, N.D. Cal. | 5-07-03792 | Jun-09 |
| Marlo | v. | United Parcel Service | | | May-09 |
| Cabrera | v. | Kalleros | Los Angeles | BC370607 | May-09 |
| Peters | v. | Kaiser | Alameda | OIA Arb. No. 8655 | May-09 |
| Hempstead | v. | Pine Street PT | San Joaquin | CV 031813 | Apr-09 |
| Brennan | v. | Hayward Lumber | Monterey | M80105 | Jan-09 |
| Scher | v. | Scher | Santa Clara | 1-06-FL 135568 | Dec-08 |
| Antonelli | v. | BMV | Santa Clara | 107CV082503 | Dec-08 |
| Quaintance | v. | East Contra Costa Fire | Contra Costa | C06-00215 | Dec-08 |
| Goodlund | v. | Home Depot | Marin | CV 060067 | Sep-08 |
| Polymer Plastics | v. | Hartford | U.S. District Nevada | CV-N-05-0143-ECR-(VPC) | Sep-08 |
| Johnson | v. | Posey | Napa | 26-35749 | Sep-08 |
| Otto | v. | Knause | San Joaquin | CV026131 | Aug-08 |
| Torres | v. | Ford | Los Angeles | VC 046606 | Jul-08 |
| Stinett | v. | Tam | Stanislaus | 384025 | Jul-08 |
| Falchi | v. | Wong | Sacramento | 03AS01664 | Jul-08 |
| Neatherlin | v. | Wade | | | May-08 |
| Zenn-Mixson | v. | Cypress Park Memorial | San Mateo | CIV 436827 | May-08 |
| Alvino | v. | Miner | San Luis Obispo | CV 050450 | May-08 |
| Mangano | v. | Springsteel | Santa Clara | 1-07-CV-079221 | May-08 |
| McDevitt | v. | State Farm | | UIM ARB | May-08 |
| Allen | v. | Kaiser | | | Apr-08 |
| Radiant Skincare | v. | Moore | San Mateo | CIV 462205 | Mar-08 |
| Newberry | v. | Faiser | Contra Costa | C06-01320 | Mar-08 |
| Acevedo | v. | California Spray | Santa Cruz | CV 146344 | Mar-08 |
| Spielman | v. | Ex'pression Center | Alameda | RG04174927 | Feb-08 |
| Yu | v. | Ex'pression Center | Alameda | RG04174927 | Feb-08 |
| Garcia | | | Contra Costa | C04-02281-E | Feb-08 |
| Jansen | v. | Weber | | | Dec-07 |
| Feng | v. | JMP Securities | | | Dec-07 |
| Shah | v. | Cerritos Ford | | 03-1164-RML | Dec-07 |
| Youssef | v. | Abraham | | 72 180 Y 0086806 | Dec-07 |
| Crawford | v. | Kaiser | | | Nov-07 |
| Lee | v. | Golden State Trucking | Alameda | RG 05237259 | Nov-07 |
| Madrid | v. | Alegre Trucking | Sacramento | 05AS04216 | Nov-07 |
| Porter | v. | Golden Gate Transit | San Francisco | CGC-05-439395 | Oct-07 |
| Ercolini | v. | Longoria | Stanislaus | 614813 | Sep-07 |
| Smith | v. | Spears | Contra Costa | C06-00435 | Sep-07 |
| Houk | v. | CSAA | San Francisco | UIM ARB | Aug-07 |
| Bardessano | v. | Ford, et al. | Spokane | 04-2-02932-0 | Aug-07 |
| Wathen | v. | Dr. Berger | Los Angeles | BC330485 | Aug-07 |
| Hutarte | v. | Andreni Bros. | Alameda | HG04177095 | Aug-07 |
| Cooper | v. | East Bay Ford Trucks | Alameda | RG05244084 | Jul-07 |
| Rochat | v. | Chevron Products Co. | Alameda | RG05204833 | Jun-07 |
| Meisels | v. | San Geronimo | San Francisco | CGC-05-440255 | May-07 |
| Blowers | v. | Dickerson | Las Vegas | | May-07 |
| Maria | v. | Sand Hill | Contra Costa | C04-01101 | May-07 |
| Johnson | v. | Kaiser | San Mateo | 6616 | Apr-07 |
| Dominguez | v. | Jaffin | Contra Costa | C04-02314 | Apr-07 |
| Bianchi | v. | United Pro Painting | San Francisco | RG06-285868 | Feb-07 |
| Jackson | v. | EDD | | | Feb-07 |
| Singh | v. | Winchell's | | | Jan-07 |

## Deposition Testimony of Phillip H. Allman, PhD

| Case | Jurisdiction | Case Number | Date |
|------|--------------|-------------|------|
| Meyle v. Dynamex | Sacramento | 31-2009-00055774-CU-WT-GDS | Nov-11 |
| Felicity v. Round Table Pizza | Contra Costa | C-10-01576 | Nov-11 |
| Sandoval v. County of Los Angeles | Central District, CA | CV10-3690JAK (JCGx) | Nov-11 |
| Cotton v. Sutter Delta Medical | Contra Costa | C10-0962 | Nov-11 |
| Lively v. Pick-N-Pull | | 74160-00888-1002JOG3-R | Nov-11 |
| Curtis v. Deutche | Stanislaus | 634411 | Nov-11 |
| Casey v. Kramer | Alameda | RG10530031 | Oct-11 |
| Gramata v. Sears | Santa Clara | 39-2009-00221730-CU-PA-STK | Oct-11 |
| Eagle Cove v. Town of Woodboro | Western District, WI | 10-CV-118 | Oct-11 |
| Booker v. City of Richmond | Contra Costa | MSC-07-00408 | Oct-11 |
| Roberts v.Valero | Contra Costa | C10-01456 | Oct-11 |
| Alani v. Alaska Airlines | San Francisco | CV-10-2766 WHA | Oct-11 |
| Harmon v. Safeway | Santa Rosa | | Oct-11 |
| Barnett v. Hillyard | San Francisco | CGC-10-499560 | Oct-11 |
| Silva v. Morrison | Alameda | RG08-403586 | Oct-11 |
| Tuitasi v. Byal | Alameda | HG10527875 | Oct-11 |
| Hristovski v. Innovative Facility | San Francisco | CGC 09 486873 | Oct-11 |
| Gee v. Cornerstone | Los Angeles | A158070-7 | Sep-11 |
| Vasquez v. Roger Henson | Alameda | HG10513306 | Sep-11 |
| Torres v. Fleming | Marin | CIV 1003551 | Sep-11 |
| Gatzke v. Berkeley | Alameda | RG10502193 | Sep-11 |
| Mayorga v. Biagi Brothers | Napa | 26-54399 | Sep-11 |
| Ostly v. Omura | Alameda | RG07323484 | Sep-11 |
| Corbo v. Ensemble | Alameda | HG09477272 | Aug-11 |
| Cost v. Goldman | Sonoma | 244982 | Jul-11 |
| Johnson v. CCSF | Northern District, CA | CV 09 5503 JSW | Jul-11 |
| Rayterry v. Kwok | San Francisco | CGC-10-500168 | Jun-11 |
| Schmieman v. Liongson | San Francisco | | Jun-11 |
| Murphy v. Chesley | Santa Clara | 109CV157800 | Jun-11 |
| Mehdavi v. City of Fremont | Alameda | HG09460732 | Jun-11 |
| Kaur v. In-Shape Health Clubs | San Joaquin | 39-2010-00246329-CU-KPO-STK | Jun-11 |
| Favorito v. Allied Insurance | Santa Clara | 110-CV-174509 | May-11 |
| Jackson v. Federal Express Corp. | Central District, CA | CV10 1760 MMM (CWx) | May-11 |
| Gilmer v. AC Transit (rebutal) | Northern District, CA | C 08-05186 CW | May-11 |
| Collins v. The County of Los Angeles | Los Angeles | BC433664 | May-11 |
| Porter v. Yi Xiao Chen | Sonoma | SCV 247305 | May-11 |
| Massey v. Bordex International | Los Angeles | BC 426937 | Apr-11 |
| Andrade v. Rolling Auto Sales | Los Angeles | VC 053678 | Apr-11 |
| Gilmer v. AC Transit | Northern District, CA | C 08-05186 CW | Apr-11 |
| Murdock v. UPS | Los Angeles | | Apr-11 |
| Colby v. Automobile Club | Los Angeles | BC400823 | Apr-11 |
| Carranza v. Jose M.M. Alvarez | San Francisco | CGC-09-484766 | Apr-11 |
| Duncan v. Velasquez & Sons Trucking | Solano | FCS034635 | Mar-11 |
| Pleasanton Unified v. Lozano Smith | Alameda | MSC09-01101 | Mar-11 |
| W. Edwards v. Golden Gate Center | San Francisco | CGC-06-454919 | Mar-11 |
| Bouchard v. CBS corp. | Seattle, WA | 10-cv-01810 RAJ | Mar-11 |
| Gutierrez v. Peninsula Debris Box Service | San Mateo | CIV491178 | Mar-11 |
| Wizman v. Severin Group | Los Angeles | BC 397746 | Feb-11 |
| Farrell v. City of San Jose | Santa Clara | 109CV150073 | Feb-11 |
| Tran v. United States Mineral Products | Central District, CA | EDCV10-0090 ODW-(RZX) | Feb-11 |
| Boudreau v. Ford Motors | Cook County, IL | 08 L 007851 | Jan-11 |
| Koller v. Brent | San Francisco | CGC 08472572 | Jan-11 |
| Hicks v. Yuen | San Francisco | 492236 | Jan-11 |
| Quintero v. PG&E, United Rentals | Alameda | RG09457082 | Jan-11 |
| Gordon v. EJ Williams Construction | San Joanquin | 39-2008-00197690-CU-WT-STK | Jan-11 |
| Frazier v. Roll International, CORP | Alameda | 1220040875 | Jan-11 |
| Logan v. Riccelli | Santa Clara | 108CV130165 | Dec-10 |
| Jower v. McGlinchy | Alameda | VG09444153 | Dec-10 |
| Sill v. Sonoma county | Sonoma | SCV 244406 | Nov-10 |
| Chant v. Federal Express | San Francisco | CGC-09-485780 | Oct-10 |
| Coronado v. UPS | Central District of CA | CV 09-00737 DEW (FFMx) | Oct-10 |
| Flores v. Merced Irrigation | Fresno | 1:09-CV-01915-LJO-DLB | Oct-10 |
| Carino v. Yellow cab | San Francisco | CGC-09-494390 | Oct-10 |
| Garecht v. Stockton Cardiology group | San Joaquin | CV033104 | Oct-10 |

| | | | |
|---|---|---|---|
| Jones v. Calstar | Yolo county | P0-09-194 | Oct-10 |
| Dunn v. Fremont | Alameda | RG 08415820 | Oct-10 |
| Montes v. Compass group | Central District of CA | CV09-04635 DMG (VBKx) | Oct-10 |
| Clayton v. Jensen | San Francisco | CGC-08-476247 | Sep-10 |
| Alvarez v. Stanislaus county | Stanislaus | 612601 | Sep-10 |
| Flores v. Merced Irrigation | Fresno | 1:09-CV-01529-LJO-DLB | Sep-10 |
| Miller v. AKAL Security | San Francisco | CGC-09-489149 | Aug-10 |
| Riverdale Baptist Church v. Arundel County | Anne Arundel County | JFM-06-2796 | Aug-10 |
| Miller v. General Motors | San Diego | GIN 052326 | Aug-10 |
| Forte v. DB Trans | Alameda | RG06299899 | Aug-10 |
| Soto v. San Joaquin County | San Joaquin | 39-2009-00228668-CU-PO-STK | Aug-10 |
| Eisenberg v. Tompkins | Alameda | RG 09439639 | Jul-10 |
| Fennell v. Yamaha | Coconino | CV2008-0216 | Jul-10 |
| Wong v. Mei | San Francisco | CGC-08-472487 | Jul-10 |
| Hart v. Storquest Self Storage | Alameda | RG05236587 | Jul-10 |
| Savina v. Pearson | San Francisco | 34-2009-00034287 | Jul-10 |
| Dong v. Roberts | Contra Costa | C09-01358 | Jul-10 |
| Lebon v. Agtek | Alameda | RG08412838 | Jul-10 |
| Travis v. Bison | Marin | CV084313 | Jun-10 |
| Hannig v. Barretto | San Francisco | CGC-08-480603 | Jun-10 |
| Trupiano v. Miller | Napa | 26-48638 | Jun-10 |
| Burkett's Pool Plastering v. Nonis | Stanislaus | 627489 | Jun-10 |
| Reintges v. Moreton | Contra Costa | C09-00543 | Jun-10 |
| Schlie & Tobin v. Medical Board of California | Sacramento | 05AS0324 | Jun-10 |
| Klaas v. ValleyCare | Alameda | RG08408707 | Jun-10 |
| 4920 Corporation v. Ashworth | Santa Clara | 108CV115575 | May-10 |
| Ieng v. Cecchini | San Joaquin | 08-CV-00516-FCD-DAD | May-10 |
| McKean v. Lawrence | San Francisco | CGC 08 482366 | May-10 |
| Turner v. Amcord | Los Angeles | BC384223 | May-10 |
| Tumbling v. Merced Irrigation District | Eastern District of CA | 08-CV-01801-LJO-DLB | May-10 |
| Rmus v. City and County of San Francisco | San Francisco | 09-488638 | Apr-10 |
| Liou v. State of California | San Mateo | 460659 | Apr-10 |
| Burns v. City of Redwood City | Northern District of CA | C08-02995 | Apr-10 |
| Lobsinger v. Sax | Sonoma | SCV 242588 | Apr-10 |
| Luchok v. Longs Drug Stores | Marin | CV 082800 | Apr-10 |
| Kittleson v. Contra Costa County | Contra Costa | C 08 01959 | Mar-10 |
| Manning v. Pacific Medical | Santa Clara | 1-08-CV-114766 | Mar-10 |
| Lui v. San Francisco Police Department | San Francisco | | Mar-10 |
| McQueen v. Our Savior Lutheran Church | Alameda | RG 07313276 | Mar-10 |
| DeLeon v. Bayer | Southern District of FL | 08-cv-80395 | Mar-10 |
| Carr v. Allianz | Los Angeles | BC 371 588 | Mar-10 |
| Berch-Saxton v. Pacific International Bearing | San Francisco | AAA No.74 160 00669 09 FEZA | Mar-10 |
| Klein v. Raytheon | Central District of CA | CV08-6461 CAS | Mar-10 |
| Ayer v. A.W. Chesterton Company | San Francisco | 275284 | Mar-10 |
| Kupp v. Bay Point Towing | | | Feb-10 |
| Riverdale Baptist Church v. Arundel County | District Court of MD | JFM 06CV2796 | Feb-10 |
| Le v. CALTRANS; Santa Clara Water District | Santa Clara | 106CV057539 | Feb-10 |
| Strong v. The Permanente Medical Group | Alameda | RG08377940 | Jan-10 |
| Kleinberg v. Town of Corte Madera | Marin | CIV072206 | Jan-10 |
| Kadir v. Webb | El Dorado County | PC20070246 | Jan-10 |
| Cartwright v. Regents of the University of California | Eastern District CA | 2:05-CV-02439 MCE-KJM | Jan-10 |
| Lopez v. United Parcel Service | Northern District, CA | C-08-5396 SI | Jan-10 |
| Lehto v. Kimco Property | | | Dec-09 |
| Huggins v. Grewal Medical Associates | San Joaquin | CV023865 | Dec-09 |
| Taylor v. Gilbert | San Francisco | CGC-08-481813 | Dec-09 |
| Heslip v. Ford Motor Company | Alameda | RG05227370 | Dec-09 |
| Sedie v. United States of America | San Francisco | C08-4417 EDL | Nov-09 |
| Lucipa v. AT&T Consulting Solutions | San Francisco | CGC-08-479910 | Nov-09 |
| Tilley v. George J. Tischenko, M.D.;John Muir Health | Contra Costa | C08-0226882351 | Nov-09 |
| Gonzalez v. Garibay | Stanislaus | 382469 | Nov-09 |
| Smith v. Stein | Alameda | | Oct-09 |
| Myers v. Baxter Bioscience | Central District of CA | CV08-05610 AHM (MANx) | Oct-09 |
| Snell v. County of Alameda, Carol Draizen | Alameda | RG07337028 | Oct-09 |
| Vaynberg v. Value Added Consulting | Contra Costa | C08-01216 | Oct-09 |
| Noble v. Hershman | San Francisco | CGC-08-471057 | Oct-09 |
| Teresinski v. Kristoffer Devino;C.R. England | Sacramento | 07AS03251 | Oct-09 |
| Pitt v. Santa Rosa Sweeping | Sonoma | SCV 243659 | Oct-09 |

*Depositions 11/30/11*

| | | | |
|---|---|---|---|
| Reeder v. CCSF | San Francisco | 07-466666 | Oct-09 |
| Hart v. Storquest Self Storage | Alameda | RG05236587 | Oct-09 |
| Vaid Raizada v. Lexington Insurance | Los Angeles | CV08-1106 | Oct-09 |
| Johnson v. Pacific International Bearing | Alameda | HG07335830 | Oct-09 |
| Arita v. Stockton Industrial Supply | Alameda | RG08422425 | Sep-09 |
| Plass v. State of CA | | FCS 028715 | Sep-09 |
| Bautista v. Martinez | Placer | SCV 21454 | Sep-09 |
| Zachariah & George v. Lu & Fassberg | San Francisco | CGC 08-472141 | Sep-09 |
| Taylor v. Gilbert | San Francisco | CGC-08-481813 | Sep-09 |
| McGann v. United Parcel Service (Peters) | | | Aug-09 |
| Blair v. Riopelle | Contra Costa | C-08-01394 | Aug-09 |
| Tarver v. City of SF | San Francisco | 410499 | Aug-09 |
| Clark v. City of Santa Rosa | Sonoma | SCV227896 | Aug-09 |
| Marcellino v. Cunningham, et al. | Stanislaus | 618054 | Aug-09 |
| Plancich v. United Parcel Service | San Bernardino | CIVRS 807326 | Jul-09 |
| Siri v. Margot Philippines (Siry? Sp?) | San Francisco | No # found in file | Jul-09 |
| Johnson v. Glen Daniels Corp. | Contra Costa | C 07-02178 | Jul-09 |
| Plancich v. United Parcel Service | San Bernardino | CIVRS 807326 | Jun-09 |
| Leon v. City of Huntington | | | Jun-09 |
| Herrera v. Bombay | Alameda | RG 06273441 | Jun-09 |
| George v. PG&E | Stanislaus | 625732 | May-09 |
| Baez v. Burbank Unified School Dist. | Los Angeles | 372092 | May-09 |
| Mohn v. Pinnacle Builders, Inc. | Napa | 26-42323 | May-09 |
| Freitas v. Young | Napa | 26-40664 | May-09 |
| Siebert v. Mendoza Investments | Santa Rosa | 1100052500 | May-09 |
| Wise v. Golden Gate | San Francisco | CGC-08-470719 | Apr-09 |
| Peters v. Kaiser | Alameda | OIA Arbitration No. 8655 | Apr-09 |
| Gonzalez v. Webcor Inc. | San Mateo | CIV 467902 | Apr-09 |
| Lee v. South Bay Shuttle | Santa Clara | 106CV068998 | Apr-09 |
| O'Neal v. Blacow | | HG 06253868 | Apr-09 |
| Souza v. Hidden Ranch | Amador | 07-CV-4996 | Mar-09 |
| Burnett v. Renwood Winery | | | Mar-09 |
| Mikelson v. Bourne | San Mateo | | Mar-09 |
| Robbins v. Essex | | | Mar-09 |
| Boussina v. Kaiser | San Francisco | CGC 07466261 | Mar-09 |
| Howell v. Bay Area Air Quality Mgt. | San Francisco | CGC 07461887 | Mar-09 |
| Phelps v. Sutter | Placer | SCV 021915 | Feb-09 |
| Gersten v. Asbestos | Alameda | RG08402343 | Feb-09 |
| Parker v. Sloan | San Francisco | CGC-07-461288 | Feb-09 |
| Brunald v. Asbestos | | | Feb-09 |
| Shaw v. Steam and Starch | Los Angeles | BC379727 | Feb-09 |
| Truong v. Willis | Santa Clara | 1-07-CV-094803 | Jan-09 |
| Crandall v. Foster Farms | Merced | 149800 | Jan-09 |
| Barela v. Calpine Construction | Santa Clara | 1-06-CV-063907 | Jan-09 |
| Anderson v. State of CA | Marin | CV 021252 | Jan-09 |
| Rellan v. Landover | Alameda | RG07356235 | Jan-09 |
| McKendall v. Harris | Contra Costa | C07-01320 | Jan-09 |
| Sisler v. UPS | San Francisco | CGC-07-461670 | Jan-09 |
| Chew v. Williams Lea | San Francisco | CGC-07-463769 | Jan-09 |
| Cabrera v. Kalleros | Los Angeles | BC370607 | Jan-09 |
| McVeigh v. National Cab | San Francisco | CGC-08-470777 | Jan-09 |
| Johnson v. Asbestos | Alameda | 818671-9 | Dec-08 |
| Vastine v. Asbestos | Alameda | C-810028 | Dec-08 |
| Green  v. State of California | San Bernardino | RCV 060816 | Dec-08 |
| Brennan v. Hayward Lumbar Company | Santa Clara | M80105 | Dec-08 |
| Franklin v. City of Sacramento | | | Dec-08 |
| Antonelli v. BMW | Santa Clara | 107CV082503 | Dec-08 |
| Sakellariou v. Miller | San Francisco | CGC-07-465203 | Nov-08 |
| Lamantia v. Asbestos | Alameda | 830940-0 | Nov-08 |
| Guerra v. Asbestos | Alameda | 826839-8 | Nov-08 |
| Merkle v. Asbestos | Alameda | RG08384801 | Nov-08 |
| Masters v. Boston Scientific | U.S. District N. California | 5-07-03792 | Nov-08 |
| Gonzalez v. SP Carpet Pros | San Francisco | CGC-05-446984 | Nov-08 |
| Scher v. Scher | Santa Clara | 1-06-FL 135568 | Nov-08 |
| Castro v. Old Dominion Freight | Alameda | | Oct-08 |
| Martinez v. Brownco Construction | Los Angeles | KC050128G | Oct-08 |
| Singh v. Heer | San Mateo | CIV 463678 | Oct-08 |

| | | | |
|---|---|---|---|
| Rusyn v. Kohal | Contra Costa | C05-01048 | Oct-08 |
| Riley v. D&A Trucking | Placer | SCV 20982 | Oct-08 |
| Barr v. Asbestos | Alameda | RG05193719 | Oct-08 |
| Trombella v. Asbestos | Alameda | RG05247452 | Oct-08 |
| Collins v. Asbestos | Alameda | RG04143301 | Sep-08 |
| Henderson v. Asbestos | Alameda | 843027-6 | Sep-08 |
| Petersen v. Asbestos | Alameda | C-830012 | Sep-08 |
| Waul v. Reyes | San Francisco | CGC-07-460187 | Sep-08 |
| Wichter v. Kaiser | JAMS Walnut Creek | Arbitration No. 8363 | Sep-08 |
| Lever v. Garcia | San Francisco | CGC-06-454791 | Jul-08 |
| Darby v. Maryland Casualty | | | Jul-08 |
| Daoudi v. Xu | Alameda | RG-06-274815 | Jun-08 |
| Stinett v. Tam | Stanislaus | 384025 | Jun-08 |
| Hudiburgh v. Asbestos | San Francisco | CGC-06-456023 | Jun-08 |
| Anzo v. Caltrans | San Joaquin | M84660 | Jun-08 |
| Frolov v. Williams Tank Lines | Santa Clara | 1-06-CV-074858 | May-08 |
| Gilbertson v. Cavanah | Santa Cruz | CV156427 | May-08 |
| Neatherlin v. Wade | | | May-08 |
| Mangano v. Springsteel | Santa Clara | 1-07-CV-079221 | May-08 |
| Hempstead v. Pine Street PT | San Joaquin | CV031813 | May-08 |
| Petrossian v. CSK Auto | Los Angeles | BC353155 | Apr-08 |
| Kearney v. Balliet | | | Apr-08 |
| McCue v. Memorial Hospital | Alameda | RG0524744 | Apr-08 |
| Chow & Williams v. State Bar of CA | San Francisco | CGC 06 451572 | Apr-08 |
| Berkeley Auto Group v. James Neilson | Contra Costa | C05-02372 | Apr-08 |
| Wroblewski v. Fior D'Italia | San Francisco | CGC-07-461483 | Apr-08 |
| Allen v. Kaiser | | | Mar-08 |
| McCollam v. Wolf | Contra Costa | C05-01419 | Mar-08 |
| Anderson v. Union Pacific | | 067-CV-2813 | Mar-08 |
| Hamilton v. State of California | Alameda | VG06-296717 | Mar-08 |
| Molossi v. Matsuo | San Mateo | 462305 | Mar-08 |
| Quantaince v. East Contra Costa Fire | Contra Costa | C06-00215 | Feb-08 |
| Hillmon v. Stockton Unified | | | Feb-08 |
| McDevitt v. State Farm | | | Feb-08 |
| Acevedo v. California Spray | Santa Cruz | CV 146344 | Feb-08 |
| Guido v. Reserve Financial | Contra Costa | C07-00995 | Feb-08 |
| Dear v. Akins & Cherokee Freight | | | Jan-08 |
| Conrad v. Bonacini | San Francisco | 06-458723 | Jan-08 |
| Jones v. Chevron | | | Jan-08 |
| Torres v. Ford | Los Angeles | VC 046606 | Jan-08 |
| Elwell v. Google | | 74 160 00200 06 JOIB | Jan-08 |
| Davidian v. Asbestos | San Francisco | CGC-07-274278 | Jan-08 |
| Morgan v. City of Santa Monica | Los Angeles | SC 089903 | Dec-07 |
| Goodlund v. Home Depot | Marin | CV 060067 | Dec-07 |
| Spielman v. Ex'pression Center | Alameda | RG04174927 | Dec-07 |
| Yu v. Ex'pression Center | Alameda | RG04174927 | Dec-07 |
| Rustad v. Bourakov | Monterey | M81846 | Dec-07 |
| Hall v. Cinema 7 | | | Nov-07 |
| Reed v. International Alliance | San Francisco | 05-0441280 | Nov-07 |
| Youssef v. Abraham | | 72 180 Y oo86806 MAVI | Nov-07 |
| Wong v. Mission Springs | Santa Cruz | 145787 | Nov-07 |
| Kelly v. Stoops | San Francisco | CGC-06-452726 | Nov-07 |
| Dougherty v. Sears Roebuck | Contra Costa | C05-02335 | Oct-07 |
| Backers v. V.A. Transportation | Alameda | RG06289520 | Oct-07 |
| Madrid v. Alegre Trucking | Sacramento | 05AS04216 | Oct-07 |
| Lee v. Golden State | Alameda | RG 05237259 | Oct-07 |
| Arrigoni v. Ramsdell | Los Angeles | SC089693 | Oct-07 |
| Vora v. Ratheon | | | Sep-07 |
| Newberry v. Kaiser | Contra Costa | C06-01320 | Sep-07 |
| Friedman v. Haytin | Alameda | RG06261158 | Sep-07 |
| Porter v. Golden Gate Transit | | | Sep-07 |
| Ercolini v. Longoria | Stanislaus | 614813 | Sep-07 |
| Mekhael v. Superior Nissan | | | Sep-07 |
| Lozano v. Cultural Tours et al. | Santa Barbara | 1185973 | Aug-07 |
| Smith v. Spears | Contra Costa | C06-00435 | Aug-07 |
| Saitta v. Big Oak Valley Groveland School | | | Jul-07 |
| Rollins v. Azevedo | Stanislaus | 346523 | Jul-07 |

| | | | |
|---|---|---|---|
| Crosley v. City of Pittsburg | | | Jul-07 |
| Ossen v. Memorial Health | | | Jul-07 |
| Cooper v. East Bay Ford Trucks | Alameda | RG05244084 | Jul-07 |
| Houk v. CSAA | San Francisco | UIM ARB | Jul-07 |
| Rothman v. Mack Construction | | | Jun-07 |
| Wright v. ABM | | | Jun-07 |
| Lumsey v. Travel Inn, City of Vallejo | | | Jun-07 |
| Maiorana v. Valley Care | Alameda | RG 05222758 | Jun-07 |
| Frederickson v. Gee | San Francisco | CGC06-451529 | Jun-07 |
| Galang v. SBC | Contra Costa | C 05-02624 | Jun-07 |
| Garcia v. Mestas | Contra Costa | C04-02281-E | May-07 |
| Gora v. Palacios | San Joaquin | CV026534 | May-07 |
| Shevland v. United States | Northern District, CA | C 04-0576 MJJ | May-07 |
| Shah v. Cerritos Ford | | 03-1164-RML | May-07 |
| Holmon v. Altana Pharma | Contra Costa | C05-00148 | May-07 |
| Alvino v. Miner | | | May-07 |
| Otto v. Knause | San Joaquin | CV026131 | Apr-07 |
| Meisels v. San Geronimo | San Francisco | CGC-05-440255 | Apr-07 |
| Nakamori v. CA Emergency Physician | | | Apr-07 |
| Rochat v. Chevron Products Company | Alameda | RG05204833 | Mar-07 |
| Hogan v. Asbestos | San Francisco | RG05193478 | Mar-07 |
| Eliason v. Knopp | San Francisco | 405417 | Feb-07 |
| Bittikofer v. Darini | | | Feb-07 |
| Bianchi v. United Pro Painting | San Francisco | RG06-285868 | Feb-07 |
| Gonzales v. B.T. Prime Mover | Sonoma | 232302 | Feb-07 |
| Redwood Christian v. County of Alameda | Northern District, CA | C01-4282 SC ADR | Jan-07 |
| Kuykendall v. Circle K | Shasta County | 154937 | Jan-07 |
| Acevedo v. California Spray | Santa Cruz | CV 146344 | Jan-07 |
| Santillana v. Universal | Los Angeles | MC014695 | Jan-07 |

### Trial & Deposition List for Jeffrey S. Petersen

| | Case | Case Number | Jurisdiction | Date |
|---|---|---|---|---|
| **Trials & Arbitrations** | McCoy vs. Pack | 415 383 | San Francisco | January, 2004 |
| | Alfano vs. Alfano | | San Joaquin | March, 2004 |
| | Gurung vs. Tsang | CGC-06-452511 | San Francisco | Sept, 2007 |
| | Eskanos vs. First Select | 74 194 Y 00585 06 SHST | San Francisco | December, 2007 |
| | Allende et al. v. The California Highway Patrol et al. | RG03127404 | Alameda | May, 2010 |
| | Espinoza v. National Cab | CGC-08-480956 | San Francisco | August, 2010 |
| **Depositions** | McCoy vs. Pack | 415 383 | San Francisco | January, 2004 |
| | Daly vs. Ameriquest | 1100042525 | San Francisco | February, 2005 |
| | Podoske vs. GAP | 434822 | San Francisco | August, 2005 |
| | King vs. Advent Software | 1100048944 | San Francisco | February, 2007 |
| | Gurung vs. Tsang | CGC-06-452511 | San Francisco | May, 2007 |
| | Eskanos vs. First Select | 74 194 Y 00585 06 SHST | San Francisco | November, 2007 |
| | Matthews v. THC Orange County | RG 06-295339 | Alameda | October, 2008 |
| | Espinoza v. National Cab | CGC-08-480956 | San Francisco | January, 2010 |
| | Orlando v. Supper Club et al. | CGC-10-497918 | San Francisco | September, 2011 |

# Attachment 2

**Introduction:**

Hello, my name is Minghui Anderson and I am calling about the legal case regarding your employment as a massage therapist at A Perfect Day.  I have some questions to ask you and it will take less than fifteen minutes of your time.  May I proceed with asking you these questions?

**Survey Questions:**

### Background Information and Training

1. Are you currently working at A Perfect Day?  If no, when did you stop working at A Perfect Day?

2. When did you start working at A Perfect Day?

3. What location of A Perfect Day do/did you work at?

4. Did you attend the Minjian Hand Healing Institute? (if no, skip to Hours Worked section)

5. When did you attend the Institute?

6. How much tuition did you pay to attend the Institute?

7. How did you pay the tuition to attend the Institute?

### Hours Worked, Pay Rate and Massages Performed

8. During the time you worked at A Perfect Day, how many days did you usually work per week?

9. On a typical day of work at A Perfect Day, how many massages did you perform?

10. What was the usual length of time of the massages you performed?

11. What was the amount you were paid when you performed an hour long massage? (note different rates if respondent says more than one rate)

12. While working at A Perfect Day, did you receive statements that accurately showed your hours worked and wages that were supposed to be paid you? (if answer is "yes," then skip to Tips section)

13. During your work days at A Perfect Day, were you required by the manager to be at the spa when you were not performing massages?

14. On a typical day of work, how many hours were you required to be at A Perfect Day?

15. How much were you paid per hour when you were not performing massages? (if the answer to this question is "nothing," then skip to question #17)

16. If you worked more than eight hours per day, did you get paid an overtime rate for every hour that you worked beyond eight hours?

17. Did you ever take a sick or vacation day while you were employed at A Perfect Day?  If yes, how many sick and/or vacation days did you take per year on average?

18. Did you have to work on holidays such as Christmas or Thanksgiving?  If yes, what holidays did you usually have to work?

## **Tips**

19. If you received a tip for a massage that you performed, were you required to pay a percentage of the tip to A Perfect Day?  (if the answer to this question is "no," then skip to question Work Expenses section)

20. Did the percentage of tips you had to pay apply to cash tips or credit card tips or both?

21. What percentage of the tips were you required to pay to A Perfect Day?

22. What percentage of your tips were cash versus credit card payments?

23. What was the usual or average amount that you received as a tip for each massage?

**Work Expenses**

24.  Were you required to pay for supplies or materials you used in performing your work at A Perfect Day? (if no, skip to Meal and Break Period section)

25.  What types of supplies or materials did you have to pay for?

26.  On a typical day of work, how much did you pay for supplies or materials?

**Meal and Break Periods** (note: if answer to question #13 is "no," skip this section)

27.  During your work days at A Perfect Day, did you take a 10 minute break for every four hours that you worked? (if the answer to this question is "no," then skip to question #29)

28. During your break time, were you relieved of all of your work responsibilities?

29.  During your work days at A Perfect Day, did you get to take a 30 minute meal break if you worked six hours or more? (if answer to this question is "no," then the survey is complete)

30.  During your meal break time, were you relieved of all of your work responsibilities and allowed to leave A Perfect Day?