United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUIFU LI, MENG WANG, FANG DAI, LIN CUI, and ZHONG YU, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>A PERFECT DAY FRANCHISE, INC, a California Corporation, et al.,<br><br>                    Defendants. | Case No.: 5:10-CV-01189-LHK<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; GRANTING PERMANENT INJUNCTION |

Plaintiffs in this certified wage and hour class action are current and former massage therapists that have been classified as independent contractors by Defendant A Perfect Day Franchise, Inc. and/or A Perfect Day, Inc. ("Perfect Day"). Before the Court is Plaintiffs' motion for default judgment against corporate Defendants Perfect Day and Minjian Hand Healing Institute ("Minjian"), and individual Defendants Huan Zou, Tailiang Li, Jin Qiu and Jun Ma (collectively the "Defaulting Defendants"). ECF No. 506. A hearing on this motion was held on June 14, 2012. For the reasons set forth below, Plaintiffs motion for default judgment is GRANTED.

## I. BACKGROUND

This case was filed on March 22, 2010, and was reassigned to the undersigned judge on August 2, 2010. On February 25, 2011, the Court set a trial date of April 16, 2012. ECF No. 155. On September 29, 2011, in order to accommodate a request from Plaintiffs' counsel, the trial date

1

**United States District Court**
For the Northern District of California

1  was moved up to April 2, 2012.  ECF No. 267.  Since resetting the trial date, the Court has certified

2  a class of Plaintiffs under the FLSA and for California state wage and hour claims.  *See* ECF Nos.

3  269.

4      The history of litigation in this case since the matter was reassigned is extensively

5  chronicled in the Court's Order of March 19, 2012, denying Huan Zou's motion to dismiss, and

6  granting in part and denying in part Plaintiffs' motion for sanctions and Defendants' motion for

7  summary adjudication and will not be repeated in detail here.  *See* ECF No. 389.  In the March 19

8  Order, the Court detailed the two year litigation history in this case, and the repeated discovery

9  abuses perpetrated by the Defendants in this action.  Although the Court declined to grant default

10  judgment against Defendants at the time, the Court did impose issue sanctions against all

11  Defendants, except Jade Li,[1] based upon the Defendants' abusive litigation tactics, and based upon

12  evidence of collusion amongst the Defendants.  All Defendants, until March 2012, participated in

13  the litigation through their counsel, the Law Offices of Richard C.J. Wahng.

14      The events surrounding and post-dating the Court's March 19 Order are relevant to the

15  motion for default judgment and are further detailed below.  A hearing on Plaintiffs' motion for

16  sanctions and Defendants' motion for summary adjudication was held on February 16, 2012.

17  Additionally, the parties were scheduled to have a Magistrate Judge Settlement Conference

18  ("MJSC") with Judge Spero on March 7, 2012.  At the February 16, 2012 hearing, the Court

19  indicated it intended to issue a ruling on the pending motions before the parties' MJSC.  On March

20  5, before the Court was able to issue an order on the pending motions, 2 days before the MJSC, and

21  less than one month before the trial date, Defendant Perfect Day filed a petition for Chapter 7

22  bankruptcy, which automatically stayed the proceedings as to Perfect Day in this Court.   On

23  March 6, 2012, Defendants Tailiang Li and Jin Qiu filed a bankruptcy petition, which effectively

24  stayed proceedings as to Tailiang Li and Jin Qiu in this Court.  Plaintiffs obtained relief from the

25  bankruptcy stays on March 9, 2012, and March 19, 2012, respectively.  This Court issued its Order

26  on the pending motions on March 19, 2012, imposing the sanctions outlined above, and granting in

27
28

[1]  Defendant Jade Li was dismissed from this action pursuant to Defendants' motion for summary adjudication.  Defendant Tom Schriner has settled with the class and is not subject to this default judgment order.

2

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1   part and denying in part Defendants' motion for summary adjudication. Notably, Perfect Day's

2   bankruptcy petition was dismissed on March 28, 2012 for failure to file necessary financial asset

3   information with the Bankruptcy Court. *See* U.S. Bankruptcy Court, Northern District of

4   California, Case No. 12-51703.

5           At a case management conference on March 15, 2012, defense counsel indicated that all

6   Defendants, in addition to Perfect Day, Tailiang Li, and Jin Qiu, were considering filing for

7   bankruptcy, and that defense counsel intended to seek to withdraw from representing the

8   Defendants. The Court indicated it was not inclined to allow defense counsel to withdraw, given

9   the impending April 2, 2010 trial date and defense counsel's intent to argue on behalf of Perfect

10  Day before the Ninth Circuit on May 18, 2012, but invited defense counsel to file a motion. On

11  March 16, 2012, less than three weeks before trial, the Law Offices of Richard Wahng filed a

12  motion to withdraw as counsel as to all Defendants except Tom Schriner. On March 19, 2011,

13  Defense Attorney Lee Sheldon filed a declaration regarding a request for a status conference

14  indicating that Defendants Perfect Day, Minjian, Huan Zou, Tailiang Li, Jin Qiu, and Jun Ma, had

15  terminated the Law Offices of Richard Wahng. ECF No. 374.

16          On March 20, 2012, the Court allowed defense counsel to withdraw as to all Defendants

17  except Tom Schriner, but issued the following finding:

18          The parties are two weeks from trial in a matter that has been set for trial since
            February 2011. Given the pattern of obstruction that Defendants have displayed
19          throughout this case, the Court considers the recent actions by several Defendants
            to file for bankruptcy on the eve of a court-ordered settlement conference and trial
20          and subsequent attempts of defense counsel to withdraw from representation to be
            further evidence of Defendants' pattern and practice of evasion, obfuscation, and
21          delay.

22  Order Regarding Defendants, Defense Counsel, and Upcoming Trial Deadlines at 3, ECF No. 394.

23  The Court also gave the Defaulting Defendants a choice. The Defaulting Defendants were allowed

24  to either: (1) proceed pro se, (2) litigate with their current defense counsel, or (3) obtain new

25  counsel. *Id.* at 4. The corporate Defendants Perfect Day and Minjian were informed that the local

26  rules prohibited them from proceeding pro se. *Id.* at 4 n.1. The Court reiterated that regardless of

27  the Defendants' choices, the trial schedule remained as set. *Id.* at 4. The Defaulting Defendants

28  that still wished to terminate counsel, were required to submit signed written declarations

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1   acknowledging consent to allow defense counsel to withdraw in light of the requirements contained

2   in the order. *Id.* at 5. Finally, the Defaulting Defendants were warned that failure to comply with

3   the pretrial deadlines or appear for trial might lead to default judgment being entered against the

4   non-complying Defendants. *Id.* at 4.

5        Defendants, Huan Zou, on behalf of himself and Perfect Day; Tailiang Li, on behalf of

6   himself and Minjian; Jin Qiu; and Jun Ma all signed declarations acknowledging that they elected

7   to terminate the Law Offices of Richard Wahng and acknowledged the requirements imposed in

8   the Court's March 20 Order, including the threat of default judgment for failure to comply with the

9   rules or appear at trial. *See* Sheldon Decl. Exs. A-D, ECF No. 402.

10       A pretrial conference was held on March 27, 2012, and the Defaulting Defendants failed to

11  appear. ECF No. 436. The Court granted defense counsel's motion to withdraw, and ordered

12  defense counsel to inform Defendants to file, by March 28, 2012, declarations under penalty of

13  perjury stating: (1) whether each Defendant will or will not attend trial; (2) if a Defendant does

14  intend to appear, whether the Defendant would appear pro se or with new counsel (except for the

15  corporate Defendants Perfect Day and Minjian who are precluded from appearing pro se); and (3)

16  if the Defendant is to appear with new counsel, that new counsel must file a notice of appearance

17  by the same deadline. *Id.* No declarations were filed. The Court also set a settlement conference

18  before the Honorable Ronald M. Whyte for April 2, 2012 at 10:00 a.m. and a final pretrial

19  conference for April 2, 2012 at 2:00 p.m. *Id.*

20       At the April 2, 2012 Settlement Conference, the only appearances were by Plaintiffs, Tom

21  Schriner, and Jun Ma. All other Defendants failed to appear. At the settlement conference, when

22  Judge Whyte inquired as to whether Defendant Jun Ma intended to appear for trial the next day,

23  Ma refused to answer. On the same day, the Court held a final pretrial conference at 2:00 p.m.

24  The Defaulting Defendants, including Jun Ma, failed to appear at the final pretrial conference.

25       At the April 3, 2012 trial, Defendants Perfect Day, Minjian, Tailiang Li, Jin Qiu, Huan Zou,

26  and Jun Ma failed to appear. After waiting an hour to see if the Defaulting Defendants would

27  appear for trial, the Court dismissed the jury. Based on the Defaulting Defendants' failure to

28  appear, despite repeated opportunities to participate and warnings that failure to do so would result

4

United States District Court
For the Northern District of California

1    in default judgment, the Court struck the amended answers of Perfect Day, Minjian, Jin Qiu, and

2    Tailiang Li, and the answer of Jun Ma.  ECF No. 461.  The Court then ordered the Clerk of the

3    Court to enter default against the Defaulting Defendants.  *Id.*; *see also* ECF No. 462.

4         After the default was entered against the Defaulting Defendants, Tailiang Li and Huan Zou

5    belatedly filed for permission to sign up for the electronic case filing system.  *See* ECF Nos. 470;

6    498.  The Court granted Li and Zou's requests on April 17, 2012, and May 8, 2012, respectively.

7    *See* ECF Nos. 476; 502.  Additionally, Tailiang Li sent a letter dated April 1, 2012, and filed on

8    May 2, 2012.  In the letter, Tailiang Li argued that Minjian and Perfect Day are separate entities.

9    Tailiang Li did not indicate an intent to contest the default judgment or to otherwise engage in

10   litigation.

11        Plaintiffs filed a motion for default judgment on May 9, 2012.  Mot. for Default J. ("MDJ"),

12   ECF No. 506.  The previously certified class of Plaintiffs seek default judgment against all of the

13   Defaulting Defendants for failure to comply with state and federal wage and hour laws.  Plaintiffs

14   filed and served an updated motion for default judgment on June 7, 2012.  ECF No. 520.

15        Judgment is sought for restitution, damages, penalties and interest in the amount of

16   $11,711,499.83 as set forth in the concurrently filed declaration of Jeffrey S. Petersen, Ph.D.

17   Updated Petersen Decl. ¶ 26.  In addition to monetary damages, Plaintiffs request that this Court

18   enter a permanent injunction against Defendants restraining them from engaging in future

19   violations of California and federal wage and hour laws.  MDJ at 1.  Finally, Plaintiffs' counsel

20   seek reasonable attorneys' fees plus costs in the amount of $1,422,937.72.  *Id.*

21        The Defaulting Defendants have all failed to object to Plaintiffs' motion for default

22   judgment, or to contest the amount of damages or fees sought.  Additionally, the Defaulting

23   Defendants failed to appear at the June 14, 2012 hearing on the default judgment.

## II. LEGAL STANDARD

25        A corporation or other artificial entity must be represented by licensed counsel.  *See, e.g.,*

26   *Rowland v. California Men's Colony*, 506 U.S. 194, 201–202 (1993) (noting that 28 U.S.C. § 1654

27   does not allow corporations, partnerships, or associations to appear in federal court other than

28   through a licensed attorney); Civil L.R. 3-9(b) ("A corporation, unincorporated association,

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

partnership or other such entity may appear only through a member of the bar of this Court.").

Therefore, while pro se litigants can represent themselves, they cannot represent corporations,

companies or other artificial entities.  Further, although pro se litigants are held to a lesser pleading

standard than are other parties, *see Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)

(pro se pleadings are to be "liberally construed"), the Local Rules provide that "[a] person

representing him or herself without an attorney is bound by the Federal Rules, as well as by all

applicable local rules.  Sanctions (including default or dismissal) may be imposed for failure to

comply with local rules."  Civil L.R. 3-9(a).

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under

Rule 55(a), has previously entered the party's default.  Fed. R. Civ. P. 55(b).  Under Federal Rule

of Civil Procedure 55(b)(2), a party may apply to the court for entry of judgment by default.  When

a party against whom a default judgment is sought has appeared personally or by a representative,

"[t]hat party or its representative must be served with written notice of the application at least 7

days before the hearing."  *Id.*

"The district court's decision whether to enter a default judgment is a discretionary one."

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk of Court enters default, all

well-pleaded allegations regarding liability are taken as true, except with respect to damages.  *Fair

Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*,

826 F.2d 915, 917 (9th Cir.1987); *Philip Morris USA v. Castworld Products, Inc*., 219 F.R.D. 494,

499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of

[plaintiff's] averments.").  In exercising its discretion to enter default judgment, the Court may

consider the following *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of

plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### III. DISCUSSION

**A.  Whether Default Judgment is Proper**

6

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

United States District Court
For the Northern District of California

1     **1.   Notice**

2            As a procedural prerequisite to granting default judgment against the Defaulting

3     Defendants, Plaintiffs must first establish that the Defaulting Defendants were served with written

4     notice of the application at least 7 days before the hearing on the default judgment.  *See* Fed. R.

5     Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally

6     or by a representative, that party or its representative must be served with written notice of the

7     application at least 7 days before the hearing.").  Failure to satisfy Rule 55(b)(2)'s notice

8     requirement is a serious procedural error usually justifying reversal on appeal or the setting aside of

9     a default.  *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993); *Ringgold Corp. v. Worrall*,

10    880 F.2d 1138, 1141 (9th Cir. 1989); *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369 (9th Cir.

11    1977).

12           Although notice was originally defective as to Defendants Huan Zou, Perfect Day, Jun Ma,

13    and Jin Qiu, Plaintiffs cured the defect and served Ma, and Qiu on May 24, 2012, and served

14    Perfect Day and Zou on May 25, 2012.  *See* ECF Nos. 514, 517.  On June 7, 2012, Plaintiffs filed

15    and served on all Defendants an amended motion for default judgment, which amended the

16    damages calculations of the motion for default judgment.  Defendant Tailiang Li became an ECF

17    filer before the motion for default judgment was filed by Plaintiffs on May 9, 2012.  Therefore,

18    Tailiang Li received notice of the default judgment motion, as well as the amended default

19    judgment motion.  All Individual Defendants have had notice of the default judgment more than

20    seven days in advance of the hearing, thus meeting the requirements of Rule 55(b)(2).

21    Additionally, it is reasonable to conclude that Perfect Day and Minjian also received notice of

22    Plaintiffs' application for default judgment because the sole owners of both Perfect Day and

23    Minjian – Huan Zou and Tailiang Li, respectively – received notice of the motion.  Accordingly,

24    the Court finds that Plaintiffs' have satisfied the notice requirement of Rule 55(b)(2).

25               **2.   First *Eitel* Factor: Possibility of Prejudice**

26           Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if

27    default judgment is not entered against a defendant.  This factor weighs heavily in favor of granting

28    default judgment in this case.  Plaintiffs have diligently pursued this class action for two years,

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

**United States District Court**
For the Northern District of California

1    despite the Defaulting Defendants' failure to comply with their discovery obligations.  Moreover,

2    as is apparent from the procedural history of this case, the Defaulting Defendants' conduct as the

3    parties neared the MJSC and trial suggests that absent a default judgment, Plaintiffs will never be

4    able to have their case heard on the merits.

5            The timing of Perfect Day, Tailiang Li, and Jin Qiu's bankruptcy filings, and corresponding

6    stays of litigation just days before the MJSC and less than a month before trial create the strong

7    inference that these Defendants used the bankruptcy filing to avoid the pending litigation.  *Cf.*

8    *Roberts v. Heim*, 184 B.R. 814, 819 (N.D. Cal. 1995).  Moreover, the fact that Perfect Day's

9    bankruptcy petition was dismissed shortly after it was filed provides further evidence that Perfect

10   Day's bankruptcy filing was solely intended to avoid and delay a decision on the merits in this

11   action.  *See id.* ("[A]n absence of reorganization activity by the debtor during the pendency of its

12   bankruptcy action implies that the filing of that action was not motivated by a good-faith intent to

13   reorganize.").

14           Additionally, the fact that the Defaulting Defendants, as a group, terminated their

15   representation less than three weeks before the trial date, and then failed to appear for all

16   subsequent pretrial conferences, as well as the trial date, provides further evidence that absent a

17   default judgment, resolution of this matter is simply not possible.  Given the evidence of

18   Defendants' pattern and practice of evasion, obfuscation, and delay, this Court finds that Plaintiffs

19   would be unduly prejudiced absent an entry of default judgment against Perfect Day, Minjian,

20   Huan Zou, Tailiang Li, Jin Qiu, and Jun Ma.  *Cf. Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.

21   Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("[W]here a defendant's failure to appear makes a decision

22   on the merits impracticable, if not impossible, entry of default judgment is warranted.") (internal

23   quotations omitted).  Thus, the first factor weighs in favor of granting of default judgment.

24           ### 3.  Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims
             and the Sufficiency of the Complaint

25           The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims

26   pled in the complaint.  These two factors are often analyzed together.  *See Dr. JKL Ltd. V. HPC IT*

27   *Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In its analysis of the second and third

28

8

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

*Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin*, 285 F.3d at 906.  The Court will therefore consider the merits of Plaintiffs' claims, and the sufficiency of its pleadings together.  Notably, Plaintiffs' claims pursuant to PAGA are predicated on violations of the wage and hour laws identified below.  Because Plaintiffs' PAGA claim is an additional avenue for damages, the Court will address the relief sought under PAGA in the damages section of this Order.

### a.   Misclassification of Workers

        Under California law, the defining feature of the employer-employee relationship is the employer's "right to control the manner and means of accomplishing the result desired."  *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (internal quotation marks omitted).  California courts also look to secondary indicia to determine whether an individual is an employee, including: (1) the right to discharge at will; "[2] whether the one performing services is engaged in a distinct occupation or business; [3] the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; [4] the skill required in the particular occupation; [5] whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; [6] the length of time for which the services are to be performed; [7] the method of payment, whether by the time or by the job; [8] whether or not the work is a part of the regular business of the principal; and [9] whether or not the parties believe they are creating the relationship of employer-employee."  *Id.* at 350-351; *Narayan v. EGL, Inc.*, 616 F. 3d 895, 900-03 (9th Cir. 2010) (employer's operational control over workers' performance, appearance, interactions with customers and equipment and supplies used demonstrated employment relationship).  "[T]he individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations."  *Borello*, 48 Cal. 3d at 351 (internal citation and quotations omitted).  The Court must "assess and weigh all of the incidents of the relationship with the understanding that no one factor is decisive, and that it is the rare case where the various factors will point with unanimity in one direction or the other."  *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1097 (9th Cir. 2007) (internal citation and quotations omitted).

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

Plaintiffs have sufficiently alleged that Defendants misclassified Plaintiffs and Class members as independent contractors when, they are, in fact, employees who perform services that are controlled by Defendants.  SAC ¶¶ 42, 44, 48, 54, 60, 111(e).  According to the SAC, Plaintiffs' perform services within Defendants' usual course of business and do not work in an independently established trade, occupation, profession, or business.  SAC ¶ 44.  Defendants instruct Plaintiffs how to do their work, regulate their hours, determine and control the terms, conditions, and amounts paid for Plaintiffs' services.  Defendants disciplined Plaintiffs and dictated the performance and details of their jobs.  *Id.* at ¶ 45.  Defendants also provide the necessary instrumentalities for work, but charge Plaintiffs for the tools.  *Id.* at ¶ 51.  Defendants exercise control over the hours, wages and all working conditions of class members, set the price, schedule and terms of the services class members provide to clients, and hold class members out as employees to the public.  *Id.* at ¶¶ 45-46, 54, 58-60.  Thus, Plaintiffs have sufficiently established, for the purposes of default judgment, that the Defaulting Defendants retain the "right to control the manner and means of accomplishing the result desired," and have been unlawfully classified by Defaulting Defendants as independent contractors when they are, in fact, employees.  *Borello*, 48 Cal. 3d at 350.

### b.  Failure to Pay Overtime Under California and Federal Law

California Labor Code Section 1194(a) states that "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  *See* Cal. Lab. Code § 1194.  "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek must be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  *See* Cal. Lab. Code § 510(a).  Under federal law, the legal overtime pay rate for employees is one and one-half times an employee's regular hourly rate of pay for work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207.  The SAC alleges that class members routinely worked in excess of eight hours in a day and 40 hours in a week and that Defendants willfully failed to pay them time and a half for that time.  SAC ¶¶ 49, 62-65, 70.  Plaintiffs have

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1  therefore adequately pled a violation of Federal and California laws requiring payment of overtime

2  compensation.

### c.   Failure to Pay Minimum Wage Under California Law

4       California Labor Code Section 1194 provides that "any employee receiving less than the

5  legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full

6  amount of this minimum wage." *See* Cal. Labor Code § 1194.  Section 1194.2 entitles such

7  employees to recover liquated damages "in the amount equal to the wages unlawfully unpaid and

8  interest thereon." *See* Cal. Labor Code § 1194.2.  According to the applicable wage order for

9  service industry employees, "[e]very employer shall pay to each employee wages not less than

10  seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and

11  not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008 . . ."

12  IWC Wage Order 2-2001 ¶ 4.  The allegations in the SAC establish that class members worked

13  shifts of 8 or more hours but were only paid for the hours they actually performed massage, which

14  in some instances was as little as one hour a day.  SAC ¶¶ 55-56.  Throughout the class period,

15  class members were not paid minimum wages for all hours worked.  SAC ¶¶ 48-50, 78, 111(a),

16  120.  Plaintiffs have therefore adequately pled a violation of California's minimum wage law.

### d.   Failure to Provide Itemized Wage Statements

18       California Labor Code § 226(a) mandates that an employer "furnish each of his or her

19  employees . . . an accurate itemized statement in writing showing [among other things] (1) gross

20  wages earned, [and] (2) total hours worked by the employee, [and (3)] net wages earned." Cal.

21  Lab. Code § 226(a).  Under subsection (e) of the same provision: "[a]n employee suffering injury

22  as a result of a knowing and intentional failure by an employer to comply with [section 226(a) ] is

23  entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period

24  in which a violation occurs and one hundred dollars ($100) per employee for each violation in a

25  subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) . . ."

26  Cal. Lab. Code § 226(e).  The allegations in the SAC adequately establish that Defendants failed to

27  provide accurate itemized wage statements.  SAC ¶¶ 88 ("Defendants …fail[ed] to provide

28  accurate itemized wage statements in writing showing all applicable rates in effect during the pay

11

1    period and the corresponding number of hours worked at each hourly rate by Plaintiffs and

2    members of the Class," "fail[ed] to show the dates of labor for which payments are or were being

3    made," and "fail[ed] to provide complete and/or accurate information concerning deductions that

4    are or have been taken from these employees' wages"). Moreover, the allegations in the SAC

5    establish that Defendants' conduct was knowing and willful. *Id.* at ¶¶88-90. Plaintiffs have

6    therefore adequately pled a violation of California Labor Code § 226.

### e.  Waiting Time Penalties

8        California Labor Code Section 203 provides that "[i]f an employer willfully fails to pay,

9    without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the

10   wages of the employee shall continue as a penalty from the due date thereof at the same rate until

11   paid or until an action therefor is commenced; but the wages shall not continue for more than 30

12   days." Cal. Lab. Code § 203(a). Upon discharge, the employees' earned and unpaid wages are due

13   within 72 hours. Cal. Lab. Code § 201(a).

14       An employer effectuates a "discharge" not only when it fires an employee from ongoing

15   employment, but also when it releases the employee upon completion of a particular job

16   assignment or time duration for which he or she was hired. *See Smith v. Superior Court*, 39 Cal.

17   4th 77, 92 (2006). Additionally, the meaning of "willful" under Section 203 "is that an employer

18   has intentionally failed or refused to perform an act which was required to be done." *See Amaral v.*

19   *Cintas Corp., No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). "The employer's refusal to pay need

20   not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows

21   to be due." *Id.* (internal quotation marks omitted). Pursuant to 8 Cal. Code. Reg. § 13520: "A

22   willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an

23   employer intentionally fails to pay wages to an employee when those wages are due. However, a

24   good faith dispute that any wages are due will preclude imposition of waiting time penalties under

25   Section 203. A 'good faith dispute' that any wages are due occurs when an employer presents a

26   defense, based in law or fact which, if successful, would preclude any recovery on the part of the

27   employee." In this case, Plaintiffs have sufficiently alleged that "Defendants have willfully failed

28   and refused to timely pay compensation and wages, including unpaid overtime pay, unpaid

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1   minimum wage pay and unpaid meal period compensation, to Plaintiffs and members of the Class

2   whose employment terminated.  As a result, Defendants are liable to Plaintiffs and members of the

3   Class for waiting time penalties."  SAC § 102.  Thus, Plaintiffs have sufficiently established that

4   Defendants have violated California Labor Code Sections 201-203.

### f.   Conversion of Tips

6         California Labor Code Section 351 forbids employers from collecting gratuities left for

7   employees by a patron.  The statute specifically requires an employer "that permits patrons to pay

8   gratuities by credit card shall pay the employees the full amount of the gratuity that the patron

9   indicated on the credit card slip, without any deductions for any credit card payment processing

10  fees or costs that may be charged to the employer by the credit card company."

11        There is no private right of action for the violation of California Labor Code Section 351.

12  *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592 (2010).  However, violations of section 351

13  "'are actionable as unlawful business practices.'"  *Anderson v. American Airlines, Inc.*, No. 08-

14  4195, 2011 WL 855820, at *9 (N.D. Cal. Mar. 9, 2011) (citing *Etheridge v. Reins Int'l Cal., Inc.*,

15  172 Cal. App. 4th 908 n.6 (2009)).  Plaintiffs have alleged in the SAC that Defendants took a

16  portion of class members' tips that were paid by clients by credit card and thus Defendants are

17  "liable for . . . Plaintiffs and Class members for the loss of gratuities paid by the customers."  SAC

18  ¶¶ 105-08, 111.

### g.   Unfair Competition Law

20        The UCL creates a cause of action for business practices that are: (1) unlawful, (2) unfair,

21  or (3) fraudulent.  Cal. Bus. & Profs. Code § 17200.  Its coverage has been described as

22  "sweeping," and its standard for wrongful business conduct is "intentionally broad."  *In re First*

23  *Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).  Each "prong" of the UCL provides a

24  separate and distinct theory of liability, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731

25  (9th Cir. 2007).  Plaintiffs make two UCL claims in their SAC.  First, Plaintiffs claim that

26  Defendants' violations of the other wage and hour laws create liability under the UCL.  MDJ at 10;

27  SAC ¶ 111(a).  Second, the named Plaintiffs also have additional UCL claims (which were not

28  certified as class claims) under the unfair and fraudulent prong for the "tuition" payments that

United States District Court
For the Northern District of California

13

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

**United States District Court**
For the Northern District of California

1    Defendants fraudulently induced Plaintiffs to pay to attend Minjian before they would be employed

2    by Perfect Day.  *Id.* at 112-114.

3          The unlawful prong of the UCL prohibits "anything that can properly be called a business

4    practice and that at the same time is forbidden by law."  *Cel–Tech Commc'ns, Inc. v. L.A. Cellular*

5    *Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation marks and citations omitted).  By proscribing "any

6    unlawful" business practice, Cal. Bus. & Profs. Code § 17200, the UCL permits injured consumers

7    to "borrow" violations of other laws and treat them as unfair competition that is independently

8    actionable.  *Cel–Tech*, 20 Cal. 4th at 180.  Because Plaintiffs have established Defendants'

9    violations of predicate statutes, as explained above, Plaintiffs have established liability under the

10   UCL.  SAC ¶ 111(a).

11         The UCL also creates a cause of action for a business practice that is "fraudulent" even if

12   not specifically proscribed by some other law.  In order to state a cause of action under the fraud

13   prong of the UCL a plaintiff must show that members of the public are likely to be deceived.

14   *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).  "[T]his prong of the UCL is governed

15   by the reasonable consumer test: a plaintiff may demonstrate a violation by showing that

16   reasonable members of the public are likely to be deceived."  *Rubio v. Capital One Bank*, 613 F.3d

17   1195, 1204 (9th Cir. 2010) (internal quotation marks omitted).

18         The SAC alleges that Defendants fraudulently induced Plaintiffs to pay sums of money to

19   Defendants for "tuition" by promising future employment and guaranteed high monthly income.

20   SAC ¶¶ 36-41, 48, 112.  Relying on these promises, each of the Plaintiffs paid sums for "tuition."

21   *Id.* ¶ 112.  Rather than receiving such guaranteed income, however, Plaintiffs found themselves

22   locked into low wage jobs.  *Id.*  Based on these allegations in the SAC, Plaintiffs have sufficiently

23   alleged that they were deceived into paying these tuition payments in violation of the UCL.

24                 **h.  Failure to Provide Meal Periods**

25         Plaintiffs claim for failure to provide meal periods was not certified.  Nonetheless, the five

26   named Plaintiffs seek default judgment as to their individual claims based on Defendants' failure to

27   provide meal periods.  California Labor Code Section 226.7 provides that "[n]o employer shall

28   require any employee to work during any meal or rest period. . ." Cal. Lab. Code § 226.7(a).  An

14

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

employer is required to provide employees with a meal period of not less than 30 minutes if the employee is employed for more than five hours per day.  Cal. Lab. Code § 512.  "If an employer fails to provide an employee a meal period or rest period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7(b).  The SAC adequately alleges that Plaintiffs routinely were deprived of off-duty meal periods.  SAC ¶¶ 83 ("Plaintiffs and Class members worked at least 5 hours a day, and were not provided meal periods as required by law").  Thus, the named Plaintiffs have sufficiently established a claim for failure to provide meal periods.

### i.   Failure to Indemnify Employees for Expenses

Plaintiffs' claim for failure to indemnify employees for expenses was also not certified.  Nonetheless, the five named Plaintiffs seek default judgment as to their individual claims based on Defendants' violation of California Labor Code Section 2802, which requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Plaintiffs have sufficiently alleged that "Defendants have required Plaintiffs and members of the Class to make purchases and incur work-related expenses without reimbursement."  SAC ¶ 96.  Plaintiffs have further specified that the necessary expenditures include deductions for "massage lotions, tissues, advertising flyers, [and] uniforms.  *Id.* at ¶ 51.  The named Plaintiffs have thus sufficiently established a claim for violation of Labor Code Section 2802.

### j.   Liability of Defendants

The allegations in the complaint further attach liability to each of the remaining Defendants.  Plaintiffs' well-pleaded complaint contains allegations that Defendants Ma, Tailiang Li, Qiu, Zou and Minjian are the joint employers and alter egos of Perfect Day.  SAC ¶¶ 19-20, 43.  Those well-pleaded allegations are taken as true now that default has been entered.  *Fair Hous.*, 285 F.3d at 906.  Minjian, Zou, T. Li and Ma are employers under FLSA.  SAC ¶ 68; 29 U.S.C. § 203(d) (FLSA applies to "any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (FLSA defines employer "expansively" and with a "striking breadth").

15

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

All Defendants – Minjian, Zou, T. Li, Qiu, and Ma are the alter egos of Perfect Day.  SAC

19-20, 43.  They are thus jointly and severally liable for the full amount of the judgment entered in

this case. ECF No. 389 at 41:3-43:1; *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010);

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544

(9th Cir. 1988); *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000) (citing

*Roman Catholic Archbishop v. Super. Ct.*, 15 Cal. App. 3d 405, 411 (1971)).

### 4.   Fourth *Eitel* Factor: The Sum of Money at Stake

Under the fourth factor, "the court must consider the amount of money at stake in relation

to the seriousness of Defendant's conduct."  *PepsiCo Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172,

1176 (C.D. Cal. 2002); *see also Eitel,* 782 F.2d at 1471-72.  "The Court considers Plaintiff's

declarations, calculations, and other documentation of damages in determining if the amount at

stake is reasonable."  *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594, 2007 WL

1545173, at *12 (N.D. Cal. May 29, 2007).  Default judgment is disfavored when a large amount

of money is involved or unreasonable in light of the potential loss caused by the defendant's

actions.  *See id.*

In this case, Plaintiff seeks $11,711,499.83, plus attorneys' fees and costs in the amount of

$1,422,937.72.  While the amount Plaintiff seeks is significant, Plaintiffs have conducted

significant discovery into the amount of damages owed, and have enlisted the assistance of a

damages expert that was prepared to testify at the trial on April 3.  Furthermore, the amount of

money at stake, in light of the the size of the class (127 class members), the class period (beginning

March 2006), and the number of claims brought, is not unreasonable.  Finally, the SAC alleges that

much of Defendants' conduct was willful and aimed at exploiting non-English speaking, low wage

workers.  *See, e.g.*, SAC ¶¶ 36-38.  Given these facts, the Court finds that the amount of money at

stake is reasonable under the circumstances, so the fourth *Eitel* factor weighs in favor of a default

judgment.

### 5.   Fifth, Sixth, *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.

Admittedly, in this case, there is the possibility of a material dispute of fact as is evidenced by the

16

Case No.: 10-CV-01189-LHK

ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

United States District Court
For the Northern District of California

1  fact that litigation has consumed the better part of two years.  However, in light of the procedural

2  history of this case, the Court is satisfied that the possibility of a material dispute of fact is

3  outweighed by the need to enter default judgment.  There are several reasons for this conclusion.

4  First, as the Court has detailed in several prior orders, the Defendants' main witnesses regarding

5  liability, particularly Jun Ma and Jade Li, are simply not credible.  *See, e.g.*, March 19 Order at 23-

6  24, n.18, n.19.  Second, Defendants Perfect Day and Minjian have failed to produce significant

7  discovery related to Plaintiffs' alter ego theory of liability.  The Court found in its March 19 Order

8  that "[t]he inevitable inference is that Defendants Perfect Day [and] Minjian . . . not only possess

9  documents that were never produced, but that the information contained in those documents is

10  unfavorable to Defendants' interests."   Finally, the Defaulting Defendants' evasive behavior in

11  collectively terminating defense counsel on the eve of trial further supports an inference that any

12  defense presented at trial would likely not have been meritorious.

13        The sixth *Eitel* factor considers whether failure to appear was the result of excusable

14  neglect.  There is no evidence that Defendant's failure to participate in the litigation is due to

15  excusable neglect.  Indeed, the Defaulting Defendants' conduct establishes the opposite.  The

16  Defaulting Defendants were warned that failure to appear at trial would lead to default judgment,

17  and the Defendants submitted signed declarations acknowledging that they understood the Court's

18  admonition.  Nonetheless, the Defaulting Defendants failed to appear at either the March 27 or

19  April 2 pretrial conferences, and failed to appear for the April 3 trial.  There is absolutely no

20  evidence in the record that the Defaulting Defendants' failure to appear was the result of excusable

21  neglect.

22                **6.   Seventh *Eitel* Factor: Policy Favoring Decision on the Merits**

23        While the policy favoring decision on the merits generally weighs strongly against

24  awarding default judgment, district courts have regularly held that this policy, standing alone, is

25  not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g*.,

26  *Naturemarket, Inc.*, 694 F. Supp. 2d at 1061; *United States v. Lyon*, No. 10-2549, 2011 WL

27  2226308, at *3 (E.D. Cal. June 7, 2011) (citing *Cal. Sec. Cans*, 238 F.Supp.2d at 1177).  It is clear

28  to the Court that a decision on the merits will not occur in this case.  The Defaulting Defendants

17

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1    were given every opportunity to defend themselves, yet failed to appear at trial.  In light of the

2    extraordinary circumstances presented here, the Court finds that the seventh *Eitel* factor is

3    outweighed by the other six factors that weigh in favor of default judgment.  *See United States v.*

4    *Ordonez*, No. 10-01921, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011).  The Court therefore

5    finds that default judgment is appropriate in this case.

6        **B.  Requested Relief**

7            **1.  Damages**

8        A plaintiff seeking default judgment "must also prove all damages sought in the

9    complaint."  *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld*

10   *Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Rule 55 does not require the court to conduct

11   a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages

12   awarded in the default judgment.  *Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2nd Cir.

13   1991).  In support of their request for class damages, Plaintiffs have provided the report, and

14   supplemental materials, of their damages expert Dr. Jeffrey Petersen.

15       Where an employer fails to maintain accurate payroll records, an employee carries his

16   burden under the FLSA if he shows he performed work for which he was improperly compensated

17   and produces some evidence to show the amount and extent of that work "as a matter of just and

18   reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946),

19   superseded by statute on other ground, Portal–to–Portal Act, 61 Stat. 86–87; *see also Brock v. Seto*,

20   790 F.2d 1446, 1448 (9th Cir. 1986); *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988).  The

21   Ninth Circuit has approved "approximated awards where plaintiffs can establish, to an imperfect

22   degree of certainty, that they 'have performed work and have not been paid in accordance with the

23   FLSA.'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) citing *Brock*, 790 F.2d at 1448

24   (internal quotation marks and alterations omitted).  "In such instances, the only uncertainty is the

25   amount of damage, not the fact that damages are due.  Where an approximate award based on

26   reasonable inferences forms a satisfactory surrogate for unquantified and unrecorded actual times,

27   an approximated award is permissible."  *Id.* (internal quotation marks, citations, and alterations

28   omitted).

18

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

**United States District Court**
For the Northern District of California

1    Under this burden shifting approach, both the Ninth Circuit and California courts have

2    permitted district courts to award back wages based upon evidence of damages from a

3    representative sampling of class members. *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988);

4    *Amaral*, 163 Cal. App. 4th at 1189 ("*Anderson*'s reasoning has also been applied to permit class

5    action plaintiffs to prove their damages for unpaid overtime by the use of statistical sampling.").

6    Thus, where, as here, Plaintiffs have established liability for unpaid wages (see discussion above),

7    and that Defendants have failed to maintain accurate payroll records, the court can rely on evidence

8    of a representative sampling of class members regarding the damages owed to establish liability as

9    to the class. SAC ¶¶ 50, 88.

10    Plaintiffs engaged the firm of Allman & Petersen Economics, LLC to conduct a survey of

11    the class and prepare an expert report as to the monetary compensation due to the class. That

12    survey and report are described in detail in the Declaration of Jeffrey S. Petersen. *See* Petersen

13    Decl. ¶¶ 3-26 & Ex. C.  Plaintiffs' experts, relying on data collected from surveyed class members,

14    and using generally acceptable statistical methods, calculated the average payments due to the class

15    for each of the class claims as well as PAGA penalties.  Petersen Decl. ¶¶ 17-20 & Ex. C ¶¶ 10, 14,

16    17A, 17B.  The Court is satisfied that Plaintiffs have met their burden of establishing an

17    approximate award based on reasonable inferences provided by a representative sample of the

18    class.

19                        **a.    Failure to Pay Minimum Wage Under California Law**

20    California wage law establishes that "any employee receiving less than the legal minimum

21    wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this

22    minimum wage." *See* Cal. Lab. Code § 1194 (emphasis added).  According to the applicable wage

23    order for service industry employees, "[e]very employer shall pay to each employee wages not less

24    than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007,

25    and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008 . . ."

26    IWC Wage Order 2-2001 ¶ 4.

27    In light of Defendants' failure to provide accurate records of hours worked and wages

28    earned by class members, the Court must rely upon the evidence provided by Plaintiffs.  Plaintiffs

19

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

conducted a survey by which a randomly selected subset of class members were surveyed.  The

surveyed employees estimated the number of hours worked per day, the approximate amount of

wages earned per day, and the number of hours for which each surveyed employee was not paid.

From the survey results, the expert was able to estimate the unpaid minimum wage owed to the

surveyed employees for hours worked under 40 hours a week (unpaid hours over 40 hours per

week are compensated in the unpaid overtime section below).  *See Armenta v. Osmose, Inc.*, 135

Cal. App. 4th 314, 317–18 (2d Dist. 2005); Updated Petersen Decl. ¶ 17.  The average unpaid

overtime wages for each class member is $3,269.  *Id.*  The total unpaid overtime owed to the class

of 127 is therefore $415,190.  *Id.*  The Court has reviewed the expert report and finds that the

approximated award is based on reasonable inferences and awards $415,190 in unpaid minimum

wages to the class.

Additionally, section 1194.2 entitles such employees to recover liquated damages "in the

amount equal to the wages unlawfully unpaid."  *See* Cal. Lab. Code § 1194.2(a).  The Labor Code

allows the Court to refuse to award liquidated damages if the employer establishes "that the act or

omission giving rise to the action was in good faith and that the employer had reasonable grounds

for believing that the act or omission was not a violation of any provision of the Labor Code

relating to minimum wage."  *Id.* § 1194.2(b).  The employer has made no such showing, and

therefore the class is entitled to liquidated damages in the amount of $415,190.

### b.      Failure to Pay Overtime Under California Law

California Labor Code Section 1194(a) states that "any employee receiving less than . . . the

legal overtime compensation applicable to the employee is entitled to recover in a civil action the

unpaid balance of the full amount of this . . . overtime compensation, including interest thereon,

reasonable attorney's fees, and costs of suit."  *See* Cal. Lab. Code § 1194.  "Any work in excess

of eight hours in one workday and any work in excess of 40 hours in any one workweek must be

compensated at the rate of no less than one and one-half times the regular rate of pay for an

employee."  *See* Cal. Lab. Code § 510(a).

California looks to federal law in defining and interpreting "regular rate" of pay.  *See*

*Alonzo v. Maximus, Inc.*, __ F. Supp. 2d __, 2011 WL 6396444, *6 (C.D. Cal. 2011); *Zator v.*

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

United States District Court
For the Northern District of California

*Sprint/United Mgmt. Co.*, No. 09cv0935–LAB (MDD), 2011 WL 1157527, at *3 (S.D. Cal. Mar. 29, 2011) ("California looks to the Fair Labor Standards Act to determine what ... constitutes the regular rate of pay for overtime purposes"); *Advanced–Tech Sec. Servs., Inc. v. Superior Court*, 163 Cal. App. 4th 700, 707 (2008) (California courts look to Department of Labor regulations interpreting the "regular rate" of pay under the FLSA to interpret that term as used in California Labor Code § 510); DLSE Manual § 49.1.2 ("In not defining the term 'regular rate of pay,' the Industrial Welfare Commission has manifested its intent to adopt the definition of 'regular rate of pay' set out in the [FLSA].")  Under federal law, when an employee is employed "solely on the basis of a single hourly rate, the hourly rate is his 'regular rate.'  For his overtime work he must be paid, in addition to his straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."  29 C.F.R. § 778.110(a).

Plaintiffs calculated, based on the surveyed employees, the average amount of overtime owed to each survey respondent.  To calculate overtime wages due, the expert looked to the overtime compensation rate of each respondent (1.5 times the regular rate of pay) and multiplied that rate by the number of unpaid overtime hours (number of hours per week over 40 hours worked).  *See Rivera v. Rivera*, No. 10-01345, 2011 WL 1878015 at *5 (N.D. Cal. May 17, 2011); Updated Petersen Decl. ¶ 18.  From the survey results, the expert was able to conclude that the average amount of unpaid overtime per class member is $30,468.  *Id.*  In total, the amount of unpaid overtime to all 127 members of the California class is $3,869,405.  *Id.* The Court has reviewed the expert report and finds that the approximated award is based on reasonable inferences and awards $3,869,405 in unpaid minimum wages to the class.

### c.     Failure to Pay Overtime Under the FLSA

Plaintiffs also seek an award of liquidated damages under the FLSA for Defendants' willful failure to pay overtime.  Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Section 207 prohibits any employer from employing any of his employees for a workweek longer than forty hours unless

21

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1    such employee receives compensation for those hours at a rate not less than one and one-half times

2    the regular rate at which he is employed. 29 U.S.C. § 207(a)(1).

3          Section 216(b) mandates that when overtime is not properly provided to employees,

4    liquidated damages must be additionally awarded to such employees in the amount equal to the

5    amount already owed.  29 U.S.C. § 216(b).  Section 260, however, makes liquidated damages

6    discretionary where the employer proves that the failure to pay overtime was both in good faith and

7    based upon such reasonable grounds that it would be unfair to impose liquidated damages upon the

8    employer.  29 U.S.C. § 260.  "Under 29 U.S.C. § 260, the employer has the burden of establishing

9    subjective and objective good faith in its violation of the FLSA." *Local 246 Utility Workers Union*

10   *of America v. Southern California Edison Co.*, 83 F.3d 292, 297–298 (9th Cir. 1996).

11         Here, Defendants have not established good faith or reasonable grounds for not paying

12   overtime to its workers.  As indicated above, the Court has already awarded unpaid overtime

13   wages, Plaintiffs are also entitled to liquidated damages in the same amount.  *See Rivera,* 2011 WL

14   1878015 at *6; *Seminiano v. Xyris Enter.*, 2011 U.S. Dist. LEXIS 4298, *10, 2011 WL 165377

15   (C.D. Cal. Jan. 18, 2011) (finding that plaintiffs were owed liquidated damages under FLSA in the

16   amount equal to plaintiffs' unpaid overtime wages).  Because only 59 employees have opted in to

17   the FLSA class, the amount of liquidated damages owed to the FLSA class is $1,797,612 (59 x

18   $30,468).

19                          **d.      Conversion of Tips**

20         As explained above, California Labor Code Section 351 provides the predicate statute for

21   Plaintiffs to collect restitution under the UCL.  Based on the survey data collected by the expert,

22   and using accepted principles and methods, the experts concluded that the average amount of

23   converted tips owed to each class member is $1,400.  *See* Updated Petersen Decl. ¶ 20.  The total

24   amount of unpaid tips due to the class of 127 members is $177,757.  The Court has reviewed the

25   expert report and finds that the approximated award is based on reasonable inferences and awards

26   $177,757 in unpaid tips unlawfully withheld from the class.

27                    **e.      Failure to Provide Itemized Wage Statements**

28

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

California Labor Code § 226(a) mandates that an employer "furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . ." Cal. Lab. Code § 226(a). Under subsection (e) of the same provision: "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226(a) ] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) . . . ." Cal. Lab. Code § 226(e).

Based on the survey data, and using accepted economic principles and methods, the expert determined the average penalty to each class member. *See* Updated Petersen Decl. ¶ 22. The expert applied the provisions of the California Labor Code and determined the average amount of penalties awarded to each class member for violations of this provision of the labor code. The average statutory award for failure to provide itemized wage statements is $2,560. The total penalty for failure to provide itemized wage statements due to the class of 127 members is $325,173. The Court has reviewed the expert report and finds that the approximated amount is based on reasonable inferences and awards $325,173 to the class in statutory damages for failure to provide itemized wage statements.

### f.      Failure to Pay Waiting Time Penalties

California Labor Code Section 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Upon discharge, the employees' earned and unpaid wages are due within 72 hours. Cal. Lab. Code § 201(a). Pursuant to 8 Cal. Code. Reg. Section 13520: "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203. A 'good faith dispute' that any wages are due occurs when an employer presents a

23

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

1    defense, based in law or fact which, if successful, would preclude any recovery on the part of the

2    employee."

3        Here, according to the evidence provided, some class members were not paid certain earned

4    wages at all, let alone within 72 hours of discharge as required by California statute.  Defendants

5    have not provided any justification for noncompliance or raised a "good faith dispute" that wages

6    are due to Plaintiffs.  Based on the survey data, and using accepted economic principles and

7    methods, Plaintiffs' expert determined the waiting time penalties due to the portion of the class that

8    is no longer working for Defendants.  *See* Updated Petersen Decl. ¶ 23.  Plaintiffs' expert

9    determined that 46% of class members are currently employed by Defendants, while 54% are no

10    longer working for Defendants.  *Id*.  Using the pay rate most often cited by the survey respondents

11    -- $11 per hour – the expert determined that the total amount of waiting time penalties due to the

12    percentage of the class no longer working for Defendants is $181,051.  "This amount was derived

13    by taking 54% (the percentage of class members no longer working for Defendants) of the total of

14    $11 per hour x 8 hours per day x 30 days (statutory maximum) x 127 (the size of the class).  *See*

15    *Id.*; *see also Rivera,* 2011 WL 1878015 at *7; *Seminiano*, 2011 U.S. Dist. LEXIS 4298 at *10,

16    2011 WL 165377 (awarding damages for continuing wages pursuant to Section 203).  The Court

17    has reviewed the expert report and finds that the approximated award is based on reasonable

18    inferences and awards $181,051 to the class in statutory damages for waiting time penalties.  This

19    award is only available to members of the class no longer employed by Defendants.

20               **g.**       **PAGA Penalties**

21        Plaintiffs assert a claim under the California Private Attorneys General Act of 2004,

22    California Labor Code § 2699 et seq. ("PAGA").  That section provides that "any provision of this

23    code that provides for a civil penalty to be assessed and collected by the Labor and Workforce

24    Development Agency or any of its departments, divisions, commissions, boards, agencies, or

25    employees, for a violation of this code, may, as an alternative, be recovered through a civil action

26    brought by an aggrieved employee on behalf of himself or herself and other current or former

27    employees[.]" Cal. Lab. Code § 2699(a).

28

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

The Labor Code specifically provides for such civil penalties for violation of its provisions asserted as claims in this action.  Cal. Lab. Code § 558; Wage Order 2-2001 ¶ 20.  PAGA therefore provides additional civil penalties for Defendants' violations of unpaid overtime wages, unpaid minimum wages, failure to provide meal breaks, failure to indemnify class members for business expenses, and failure to provide accurate wage statements.  These PAGA penalties are separate and apart from the actual damages that a Plaintiff may recover under other labor code sections.  *See Thurman v. Bayshore Transit Management, Inc.,* 203 Cal. App. 4th 1112, 1144-48 (2012).

The representative action authorized by the PAGA is an enforcement action, with one aggrieved employee acting as a private attorney general to collect penalties from employers who violate the Labor Code.  Class action requirements do not apply to representative actions brought under the PAGA.  *Arias v. Super. Ct.*, 46 Cal. 4th 969, 984 (2009).  The Court has reviewed the expert report and finds that the approximated award is based on reasonable inferences for establishing the penalties that are owed to Plaintiffs under PAGA.  The failure to pay minimum wage, overtime, and meal periods penalties were governed by the penalties in California Labor Code Section 558.  The Labor Code provides civil penalties of $50 for each aggrieved employee per pay period for the initial violation, and $100 per employee for each subsequent violation for minimum wage, overtime, meal break and wage statement violations.  The PAGA penalty remedies Defendants' failure to indemnify class members for business expenses and tip conversion.  Cal. Lab. Code § 2699(f).

After reviewing the Expert Report and the Tables filed in support, the Court awards the PAGA penalties identified below.  Of this amount 75% should be allocated to the California Labor and Workforce Development Agency and 25% should be allocated to the class.

- For failure to pay overtime, $411,956.

- For failure to pay minimum wage, $312,738.

- For failure to provide meal periods, $329,406.

- For the failure to reimburse expenses, $969,963.

- For the conversion of tips, $740,833.

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

Although Plaintiffs are entitled to the above PAGA penalties, they are not entitled to PAGA penalties for failure to provide accurate wage statements under California Labor Code § 226. Plaintiffs elected to receive penalties for Defendants' failure to provide accurate wage statements in violation of California Labor Code § 226. As explained above, the Court awarded such penalties. Therefore, granting *PAGA* penalties for failure to provide accurate wage statements would be duplicative recovery. Plaintiffs have provided no authority, and the Court is aware of no authority, that would permit double recovery of essentially the same penalties. Therefore, the Court declines to award PAGA penalties for the failure to provide accurate wage statements as this penalty has already been awarded.

### h. Individual Damages: Failure to Provide Meal Periods, Failure to Indemnify Employees for Expenses, and Tuition Reimbursement

As explained above, the individual named Plaintiffs have sufficiently established liability for their claims that Defendants failed to provide meal periods, failed to indemnify their expenses, and for the UCL claim related to the tuition reimbursement. Plaintiffs have supported their request for damages with sworn declarations detailing the amounts owed by Defendants. The named Plaintiffs are entitled to the following damages:

*Missed Meal Periods*

- Guifu Li's damages are $10,941. ECF No. 506-4 ¶¶ 3, 6-7.
- Meng Yang's damages are $2,398.50 ECF No. 506-6 ¶¶ 3, 6-7.
- Fang Dai's damages are $216. ECF No. 506-3 ¶¶ 3, 6-7.
- Lin Cui's damages are $2,025. ECF No. 506-5 ¶¶ 3, 6-7.
- Zhong Yu's damages are $1,185. ECF No. 506-7 ¶¶ 3, 6-7.

*Failure to Indemnify Business Expenses*

- Guifu Li's damages are $8,680.60. ECF No. 506-4 ¶ 11.
- Meng Yang's damages are $1,080.60. ECF No. 506-6 ¶ 11.
- Fang Dai's damages are $1,239.25. ECF No. 506-3 ¶ 11.
- Lin Cui's damages are $1,230. ECF No. 506-5 ¶ 11.
- Zhong Yu's damages are $573.88. ECF No. 506-7 ¶ 11.

26

*UCL Restitution for Tuition Payments*

- Guifu Li paid a total amount of $3,850 in tuition.  ECF No. 506-4 ¶ 4.

- Meng Yang paid a total amount of $4,000 in tuition.  ECF No. 506-6 ¶ 4.

- Fang Dai paid a total amount of $1,315 in tuition.  ECF No. 506-3 ¶ 4.

- Lin Cui paid a total amount of $2,300 in tuition.  ECF No. 506-5 ¶ 4.

- Zhong Yu paid a total amount of $2,330 in tuition.  ECF No.  506-7 ¶ 4.

## 2.  Interest

Plaintiffs also seek post-judgment interest.  Mot. for Default Judgment at 23.  Pursuant to 28 U.S.C. § 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court."  Accordingly, Plaintiffs shall be awarded post-judgment interest, which will be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

Additionally, it appears as though Plaintiffs also seek pre-judgment interest on unpaid minimum wages, overtime wages, and tips due.  *See* Updated Petersen Decl. ¶ 21.  California Labor Code Section 1194(a) permits recovery of interest on unpaid wages due to an employee. However, Plaintiffs have cited no authority, and the Court is aware of no authority, which authorizes the collection of prejudgment interest on restitution under the UCL in which the predicate violation is for unpaid gratuities under California Labor Code Section 351. S*ee M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 202 Cal. App. 4th 1509, 1538 (2012) ("Initially, we note that the UCL does not authorize an award of prejudgment interest.").  Accordingly, the Court declines to award prejudgment interest for the unpaid gratuities.

As to the unpaid minimum wage and overtime, Plaintiffs' expert has computed the interest accrued on the unpaid wages owed to the class.  Updated Petersen Decl. ¶ 21.  The Expert used the "midpoint formula" for computing simple interest, and assumed an interest rate of 10 percent.  *See also* Cal. Lab. Code § 218.6; Cal. Civ. Code § 3289; *Bell v. Farmers Ins. Exchange*, 135 Cal. App. 4th 1138, 1145 (2006).  The Court has reviewed the expert report, and the Tables provided in support thereof, and finds that the approximated award for interest on unpaid wages is based on

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

United States District Court
For the Northern District of California

1    reasonable inferences.  Accordingly, the Court awards $1,151,814 to the class in interest on unpaid

2    wages.

3                        **3.   Permanent Injunction**

4         Plaintiffs seek the issuance of a permanent injunction.  Plaintiffs may seek to enjoin future

5    non-compliance with state and federal wage and hour violations.  *See, e.g. Brock v. Big Bear*

6    *Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987); *Solis v. Best Miracle, Corp.*, 709 F. Supp. 2d

7    843, 859 (C.D. Cal. 2010).  A plaintiff seeking a permanent injunction must demonstrate: "(1) that

8    it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

9    are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

10   the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

11   not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

12   391 (2006).

13        Because Plaintiffs are low-wage workers, and lost wages or delays in compensation

14   "threaten or impair their ability to meet basic needs," such harms are irreparable.  *Carrillo v.*

15   *Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040, 1045 (C.D. Cal. 2011).  "'[W]ages are not

16   ordinary debts," and "because of the economic position of the average worker . . . it is essential to

17   the public welfare that he receive his pay when it is due."  *Id.* (citing *Smith v. Ceva Logistics U.S.,*

18   Inc., 2011 U.S. Dist. LEXIS 111941, *8–9 (C.D. Cal. Sept. 28, 2011) (quoting *Smith v. Superior*

19   *Court*, 39 Cal. 4th 77, 82 (2006)).  In the absence of immediate compliance with the overtime,

20   minimum wage, and other wage and hour requirements, Defendants will continue to keep from

21   these low wage workers what is due to them.

22        Additionally, with respect to the third and fourth factors, the balance of the equities favor

23   Plaintiffs.  A permanent injunction will not harm Defendants – it will merely require them to

24   comply with the law.  Finally, the public interest favors a permanent injunction here.  "California

25   courts have long recognized wage and hour laws concern not only the health and welfare of the

26   workers themselves, but also the public health and general welfare."  *Gould v. Maryland Sound*

27   *Industries, Inc.*, 31 Cal. App. 4th 1137, 1148 (1995) (citation and quotation marks omitted).

28

United States District Court
For the Northern District of California

28

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

**United States District Court**
For the Northern District of California

1    The Ninth Circuit has explained in determining whether to grant injunctive relief in a FLSA

2    case, that a district court must "weigh the finding of violations against factors that indicate a

3    reasonable likelihood that the violations will not recur." *Brock*, 825 F.2d at 1383. "A dependable,

4    bona fide intent to comply, or good faith coupled with extraordinary efforts to prevent recurrence,

5    are such appropriate factors. An employer's pattern of repetitive violations or a finding of bad

6    faith are factors weighing heavily in favor of granting a prospective injunction." *Id.* (citing

7    *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975)). It appears that Perfect Day and Minjian are

8    still ongoing concerns, and the Defendants in this action all remain, in some way, involved in the

9    management or ownership of the businesses. There is no indication that the wage and hour

10   violations have in any way abated despite this litigation. In light of this record, the Court cannot

11   say that Defendants are likely to comply with their legal obligations under either the FLSA or the

12   California Labor Code. Accordingly, the Court permanently enjoins the continuing wage and hour

13   violations identified above in Section III.A.3.a. – III.A.3.i.

14   **4. Attorneys' Fees and Costs**

15   Plaintiffs are entitled to attorney's fees under the FLSA and California law. 29 U.S.C §

16   216(b) (2006); Cal. Lab. Code §§ 218.5, 1194; *see also Newhouse v. Robert's Ilimare Tours, Inc.*,

17   708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's

18   fee."); *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (noting that

19   under California law, awarding attorney's fees is "mandatory" in unpaid wage claims).

20   Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method,

21   whereby a court multiplies "the number of hours the prevailing party reasonably expended on the

22   litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th

23   Cir. 2008) (citation omitted). A party seeking attorney's fees bears the burden of demonstrating

24   that the rates requested are "in line with the prevailing market rate of the relevant community.'"

25   *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Generally, "the relevant

26   community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citing *Barjon*

27   *v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and

28   other attorneys regarding prevailing fees in the community and rate determinations in other cases . .

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

United States District Court
For the Northern District of California

1  . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps*

2  *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

3      The Court has reviewed the records provided by Plaintiffs and finds the rates charged by

4  the attorneys and the paralegals that have been in involved in this case to be reasonable.  Moreover,

5  as the Court detailed on the record at the May 24, 2012 hearing on the final approval of the

6  Schriner settlement, Plaintiffs' attorneys' fee request is based on the fact that this was a hard fought

7  case, involving heavily litigated law and motion and discovery disputes and preparations all the

8  way up through the first day of trial before Mr. Schriner settled and the remaining Defendants

9  defaulted.  Defendants' evasiveness, discovery abuses, and document destruction policy caused

10  unnecessary litigation which increased Plaintiffs' attorneys' fees.  In light of the record in this case,

11  the requested fee award is reasonable.  *See* Olivier Decl. ¶¶ 27-35, ECF No. 506-1.  Therefore, the

12  Court awards Plaintiffs' attorneys' fee request of $1,320,593.50.  Similarly, Plaintiffs' costs and

13  expenses of $102,344.22 are reasonable, and the Court will award the requested amount of costs as

14  well.  The total in costs and fees awarded is $1,422,937.72.

15      Additionally, in the March 19 Order, the Court awarded Plaintiffs' counsel attorneys' fees

16  for successfully bringing several motions to compel.  Because Plaintiffs failed to provide an

17  accounting of hours that were expended on the successful motions to compel, the March 19 Order

18  ordered Plaintiffs' counsel to file a supplemental declaration detailing the costs and fees associated

19  with bringing the following motions: (1) Plaintiffs' Motion to Compel Responses Regarding

20  Financial Information (ECF No. 277), (2) Plaintiffs' Motion to Compel the Deposition of Anna

21  Tong (ECF No. 284), and (3) Plaintiffs' Motion to Compel Production of Documents and

22  Responses to Interrogatories (ECF No. 282); as well as an accounting of the costs associated with

23  attempting to serve a deposition subpoena on Anna Tong.  Plaintiffs filed a declaration setting forth

24  the attorneys' fees sought arising out of the motions to compel and the costs in attempting to serve

25  Anna Tong.  ECF No. 442.   Based on this declaration, the Court finds the requested award

26  reasonable and awards $23,336.35 to Plaintiffs' counsel.

27                          **IV. DEFAULT JUDGMENT ORDER**

28

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION

For the reasons detailed above, Plaintiff's motion for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiffs and against Defendants Perfect Day, Minjian Hand Healing Institute, Huan Zou, Tailiang Li, Jin Qiu, and Jun Ma, in the amount of $11,141,452.83[2] in total damages, penalties, and interest on unpaid wages.  Attorneys' fees and costs shall be awarded to Plaintiffs' counsel in the amount of $1,446,274.07.  Defaulting Defendants are jointly and severally liable for the amounts owed to Plaintiffs and Plaintiffs' counsel.  Any amount collected from the class settlement with Tom Schriner, up to $620,000, will be deducted from the amount owed by the Defaulting Defendants to the class.

The distribution of amounts recovered through collection of judgment shall be determined at a later time, with this Court's approval.  The Court shall retain jurisdiction over this case until distribution of class funds is complete.  Plaintiffs shall submit a status report as to the collection and class distribution of the judgment no later than six months from the date of this judgment.

## V.   PERMANENT INJUNCTION ORDER

Defendants are hereby permanently enjoined from treating class members as independent contractors and not W-2 employees.  Defendants are hereby permanently enjoined from failing to pay class member minimum wages, overtime and tips, failing to provide accurate wage statements, failing to pay all amounts due upon separation of an employee, failing to provide meal periods, and failing to reimburse expenses as required under California and federal law.

**IT IS SO ORDERED.**  The Clerk shall close the file.

Dated: June 14, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

---

[2]  Defendants Schriner, Perfect Day, Minjian, Tailiang Li, Jin Qiu, Huan Zou, and Jun Ma were sanctioned $4,000 for failure to publish a class notice in Chinese language newspapers as repeatedly ordered by the Court.  *See* ECF No. 436.  Defendants were jointly and severally liable for this sanction, but only Defendant Schriner paid the sanction.  Plaintiffs' counsel used the sanction award to publish the class notice as ordered by the Court.  Plaintiffs' counsel has indicated that the costs associated with the translation and publication of the class notice totaled $2,708. ECF No. 525.  The remaining amount of the sanction award – $1,292 – shall be deposited in the Duckworth, Peters, Lebowitz, Olivier LLP Client Trust Account until distribution of the funds to the class.  Because this money was a sanction against Defendants for violation of Court orders, this money will not be credited against the money owed by Schriner or the Defaulting Defendants to the class.  Instead, the $1,292 shall be distributed to the class along with the amounts collected from Schriner and the Defaulting Defendants.

Case No.: 10-CV-01189-LHK
ORDER GRANTING MOT. FOR D. JUDGMENT; GRANTING PERMANENT INJUNCTION